IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DENNIS P. RIVERO, M.D.,

    Plaintiff,

v.                                                             CV 16-318 WPL/SCY

BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO
d/b/a UNIVERSITY OF NEW MEXICO
HEALTH SCIENCES CENTER,

    Defendant.

**ORDER**

Dennis Rivero, M.D., brought suit against the Board of Regents of the University of New Mexico d/b/a University of New Mexico Health Sciences Center ("UNM") for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. and 12201 et seq. (Doc. 1.) UNM filed a motion to dismiss the Complaint, either for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted, based on Eleventh Amendment immunity. (Doc. 6.) Dr. Rivero opposes the motion (Doc. 17) and filed an opposed motion to amend the Complaint (Doc. 16). Being fully advised on these matters, I grant UNM's motion to dismiss (Doc. 6) and grant-in-part and deny-in-part Dr. Rivero's motion to amend (Doc. 16). Within ten days from the date of entry of this Order, Dr. Rivero may file an amended complaint that proceeds with Count 3 of the proposed First Amended Complaint, which alleges violations of the Rehabilitation Act.

**BACKGROUND**

The following background information is taken from Dr. Rivero's Complaint. (Doc. 1.) For purposes of the motion to dismiss, I assume that these facts are true. This Background section does not constitute any formal factual findings in this case.

Dr. Rivero is an orthopedic surgeon. He joined the medical faculty at the University of New Mexico Health Sciences Center ("HSC") in 1992 and was promoted to full professor of medicine in the Department of Orthopedic Surgery and Rehabilitation in July 2005. Within the Department of Orthopedic Surgery and Rehabilitation, Dr. Rivero served as the Chief of Adult Reconstruction. HSC is part of the University of New Mexico.

In 2003, Dr. Rivero had a dispute with Dr. David Pitcher, Chief Medical Officer, over admissions procedures for a patient. Dr. Rivero filed an official complaint with HSC about the interaction, and the results of an internal investigation required that subsequent interactions between Drs. Rivero and Pitcher required the presence of a third party.

In early 2007, Dr. Rivero reduced his employment at HSC from full-time to approximately 5% time, or roughly one day per month, in order to pursue opportunities in private practice in Oklahoma. On June 24, 2007, Dr. Rivero wrote to Dr. Robert Schenck, Chairman of the Department of Orthopedic Surgery and Rehabilitation, and stated that he wished to return to 75% time or full-time employment at HSC. Dr. Schenck told Dr. Rivero that he would be returned to full-time employment.

The return to full-time employment did not happen. From June 2007 to December 2010, HSC delayed and withheld approval for Dr. Rivero to return to full-time employment. During this period, Dr. Rivero continued to work one day per month at HSC and continued to work in private practice in Oklahoma.

Also during this period, Dr. Rivero made inquiries at HSC about the delay. He was eventually informed that "there were concerns as to his 'professionalism' . . . that . . . related to supposed impoliteness as perceived by members of the [HSC] administration, many of whom had never communicated with Dr. Rivero." (*Id.* at 4.) Dr. Rivero has never received any disciplinary or adverse employment action at HSC.

"Dr. Bailey (Associate Dean for Clinical Affairs), Dr. Pitcher, Dr. Robert Katz (Vice President of Clinical Affairs), and Dr. Paul Roth (Chancellor of [HSC]) refused to give Dr. Rivero more hours, based primarily on misinformation and hyperbole provided by Dr. Pitcher." (*Id.* at 5.)

In the fall of 2010, Dr. Rivero filed a complaint with the Academic Freedom and Tenure Committee, alleging that his request to return to full-time employment was given inadequate consideration. An investigator for this committee, Dr. Victor Strasberger, interviewed Drs. Bailey and Pitcher. Drs. Bailey and Pitcher described Dr. Rivero as "disruptive," but "all 23 of Dr. Rivero's 'departmental colleagues want him back [and] . . . he is an excellent surgeon.'" (*Id.* (alterations in original).)

Dr. Rivero met with Dr. Schenck in December 2010 to discuss the steps needed to return to full-time employment at HSC. At this meeting, Dr. Rivero agreed to attend four counseling sessions to improve patient interactions. Dr. Schenck sent Dr. Rivero "Addendum No. 1 to Contract UNM School of Medicine Faculty by and between the University of New Mexico and Dennis P. Rivero, M.D." ("Addendum") in February 2011. According to Dr. Schenck, the Addendum reflected the agreement reached in December 2010 to increase Dr. Rivero to full-time status over the course of two years.

Rather than reflecting the agreement that Dr. Rivero attend four counseling sessions to improve patient interactions, the Addendum required Dr. Rivero, as a condition of employment, to submit to "a four-part psychiatric evaluation by a board-certified psychiatrist acceptable to the Chair of the Department of Orthopedics and Rehabilitation"—Dr. Schenck—who would have "sole discretion" over the picking the psychiatrist. (*Id.* at 6.) Dr. Rivero would be required to pay for these examinations and would be required to comply with all treatment recommendations of the psychiatrist. Additionally, the Addendum required Dr. Rivero to submit progress reports from the psychiatrist to Dr. Schenck and to the Associate Dean of Academic Affairs of HSC, and to execute a consent form or other authorization permitting the psychiatrist to provide reports and recommendations directly to Dr. Schenck and the Associate Dean of Academic Affairs of HSC. Any reports provided directly to Dr. Schenck would be kept as part of Dr. Rivero's medical staff file in the Office of Clinical Affairs. Furthermore, if HSC determined that Dr. Rivero was not in compliance with the terms of the Addendum, he would be "deemed to have resigned from his [HSC] faculty appointment and his employment with the University effective 60 calendar days" from written notice, and that this resignation would not constitute dismissal, termination, or other involuntary separation from HSC. (*Id.* at 7.)

Dr. Rivero had until April 10, 2011, to respond to the Addendum. He sought counsel and then requested access to his personnel file to determine the basis for HSC demanding the four-part psychiatric examination. After Dr. Rivero made this request, Dr. Schenck revoked the Addendum on April 5, 2011. HSC did not provide any documents to support its requirement that Dr. Rivero submit to psychiatric evaluation and treatment.

After Dr. Rivero filed suit in New Mexico state court, a state district judge found that HSC had illegally withheld the requested documents and ordered production of those documents

4

in August 2013. HSC failed to comply. HSC has been producing documents as recently as late 2015.

On January 20, 2012, Dr. Rivero filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting violations of the ADA. The EEOC did not pursue the matter, but issued Dr. Rivero a right-to-sue notice on January 29, 2016.

Dr. Rivero left HSC entirely in May 2014.

### MOTION TO DISMISS

Dr. Rivero brings two causes of action against UNM. Count 1 alleges violations of Title I of the ADA by impermissibly requiring psychiatric evaluations to be performed by an employer-approved provider, requiring Dr. Rivero to pay for them, and requiring disclosure of the confidential medical information to HSC when these requirements were not job-related and were not consistent with a business necessity. Count 2 alleges violations of Title I of the ADA because HSC regarded Dr. Rivero as a person with an unspecified mental impairment—based on the psychiatric evaluation and treatment requirement in the Addendum—and subjected Dr. Rivero to adverse treatment on the basis of this impairment, namely the revocation of the offer to increase to full-time employment and increasingly intolerable working conditions at HSC that resulted in Dr. Rivero's constructive discharge in May 2014.

UNM filed its motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or, alternatively, for failure to state a claim for which relief can be granted under Rule 12(b)(6). In both instances, UNM asserts that it is protected by the Eleventh Amendment as an arm of the state and that it has not waived this immunity.

**I.      Standard of Review**

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. When reviewing a facial attack on a complaint, courts accept the allegations of the complaint as true; when reviewing a factual attack, courts "may not presume the truthfulness of the complaint's factual allegations." *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). In the case of a factual attack, courts have "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* at 1003.

Under Rule 12(b)(6), courts consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss under Rule 12(b)(6), courts consider "the complaint as a whole, along with the documents incorporated by reference into the complaint" and construe all well-pled allegations in the light most favorable to the plaintiff. *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015) (citations omitted). "Well-pled" means that the allegations are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).

A court may resolve a motion to dismiss under Rule 12(b)(6) on the basis of an affirmative defense, such as the statute of limitations or asserted immunity, when the facts

establishing the defense are apparent on the face of the complaint. *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014); *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965).

**II.     Discussion**

Broadly, UNM argues that Dr. Rivero's claims against it are barred by the Eleventh Amendment. Dr. Rivero argues that UNM is not an arm of the state to which the Eleventh Amendment could apply, or, in the alternative, that any Eleventh Amendment immunity has been waived. The Eleventh Amendment reads, in its entirety, that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."

The Eleventh Amendment bars a suit for damages against a state in federal court, unless the state has waived that immunity. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). State agencies—termed "arms of the state"—are protected by Eleventh Amendment immunity in the same manner as the state. *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993) (en banc). To be protected by the Eleventh Amendment, UNM must show that: 1) it is an "arm of the state"; 2) the state has not waived its immunity to suit on claims like this; and 3) Congress has not expressly abrogated the state's immunity for claims like this.

**A.     "Arm of the State"**

In the Tenth Circuit, courts conduct "two general inquiries" to determine whether an entity is an "arm of the state." *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996). First, the court must examine "the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state." *Id.* (quoting *Haldeman v. State of Wyo. Farm Loan Bd.*, 32 F.3d 469, 473

(10th Cir. 1994)). Second, courts "examine[] the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing." *Id.* at 574-75 (quoting *Haldeman*, 32 F.3d at 473). The Tenth Circuit has "consistently found state universities are arms of the state." *Id.* at 575 (citing *Mascheroni v. Bd. of Regents of the Univ. of Cal.*, 28 F.3d 1554, 1559 (10th Cir. 1994) (University of California); *Seibert v. State of Okla.*, 867 F.2d 591, 594 (10th Cir. 1989) (University of Oklahoma); *Prebble v. Brodrick*, 535 F.2d 605, 610 (10th Cir. 1976) (University of Wyoming); *Brennan v. Univ. of Kan.*, 451 F.2d 1287, 1290 (10th Cir. 1971) (University of Kansas and University of Kansas Press); and *Korgich v. Regents of N.M. Sch. of Mines*, 582 F.2d 549, 551-52 (10th Cir. 1978) (New Mexico School of Mines)); *see also Ross v. Bd. of Regents of the Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 2010) (holding that all of the defendants, including UNM, are state agencies or state employees sued in their official capacities).

The New Mexico Constitution established UNM. *See* N.M. CONST, art. XII, § 11 (confirming UNM as a state educational institution); N.M. STAT. ANN. § 21-7-1 (West 2016) (naming UNM as "the state university"). Additionally, the New Mexico Constitution dictates that UNM be governed by a seven-member Board of Regents, where all seven members are appointed by the governor with consent of the state senate. N.M. CONST. art. XII, § 13(D). Indeed, the Supreme Court of New Mexico affirmed in *Regents of University of New Mexico v. New Mexico Federation of Teachers*, 962 P.2d 1236 (N.M. 1998), that UNM "is a state institution whose management and control are placed by the New Mexico Constitution into the hands of a seven-member Board of Regents." *Id.* at 1239. Much like the Tenth Circuit found in *Watson* as to the University of Utah, and affirmed with respect to UNM in *Ross*, UNM is a state-controlled entity.

Turning to the second prong, I must consider the degree of state funding and the likelihood that a judgment against UNM might be paid from state funds. *Watson*, 75 F.3d at 574. Like the University of Utah in *Watson*, UNM participates in the New Mexico Risk Management Division, which provides, in part, insurance against money judgments. *See* N.M. STAT. ANN. §§ 15-7-2 to -3; *see also* University of New Mexico Regents' Policy Manual § 7.14(1): Risk Management and Insurance, https://policy.unm.edu/regents-policies/section-7/7-14.html (last accessed Aug. 29, 2016). UNM also "maintains a reserve fund for its self-insured health, prescription drug, and dental benefits covering active employees and eligible retirees," but this fund may also be used for other, limited, purposes. University of New Mexico Regents' Policy Manual § 7.14(2.1-2.2): Risk Management and Insurance, https://policy.unm.edu/regents-policies/section-7/7-14.html. This suggests that the state might be responsible for funding a judgment against UNM.  Although UNM maintains "management and control" over all "disbursements and expenditures of all money" under the supervision of the Board of Regents, N.M. STAT. ANN. § 27-1-3, funding for UNM comes, in part, from New Mexico legislative appropriations. *See* University of New Mexico Office of Planning, Budget and Analysis, FY16-17 Summary of Legislative Appropriations, budgetoffice.unm.edu/assets/documents/budget/hsclegisapprop.pdf (last accessed Aug. 29, 2016) (showing approximately $96 million in legislative appropriations to HSC for Fiscal Year 2016-2017); budgetoffice.unm.edu/assets/documents/budget/mc-appropriation-17.pdf (last accessed Aug. 29, 2016) (showing approximately $196 million in legislative appropriations to UNM's main campus for Fiscal Year 2016-2017). It appears that any judgments against UNM might be satisfied, at least indirectly, from state resources.

9

While the parties agree that federal courts, including the District of New Mexico, have routinely held that state universities are "arms of the state" (*see* Doc. 17 at 7), Dr. Rivero urges that UNM's status as an arm of the state is subject to review and warrants limited discovery. Dr. Rivero contends that UNM's status as an arm of the state comes from "deference" given to a footnote in *Buchwald v. University of New Mexico School of Medicine*, 159 F.3d 487, 494 n.3 (10th Cir. 1998). (Doc. 17 at 8.) Further, Dr. Rivero argues that the appropriate test is "vulnerability of the state treasury" to satisfy judgments, as discussed in *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994). (Doc. 17 at 8.) Dr. Rivero is incorrect.

*Hess* is distinguishable. In *Hess*, the Court addressed whether a bistate entity—the Port Authority Trans-Hudson Corporation, or PATH—enjoyed Eleventh Amendment immunity. The Court found that "[b]istate entities . . . typically are creations of three discrete sovereigns: two States and the Federal Government . . . [whose] mission is to address 'interests and problems that do not coincide nicely either with the national boundaries or with State lines,'" specifically interests that "'may be badly served or not served at all by the ordinary channels of National or State political action.'" *Hess*, 513 U.S. at 40 (citation and footnote omitted). Further, the voters and political powers of one state cannot and do not unilaterally control a bistate entity, rendering bistate entities like PATH inappropriate for Eleventh Amendment immunity. *Id.* at 42-43.

Unlike PATH, UNM is entirely a creation of the State of New Mexico. *See* N.M. CONST, art. XII, § 11 (confirming UNM as a state educational institution); N.M. STAT. ANN. § 21-7-1 (West 2016) (naming UNM as the "state university"). The appropriate test comes from *Watson*, discussed above. Not only is UNM a state agency, but I have found that money judgments against UNM may be satisfied, at least indirectly, from state resources.

UNM is an arm of the state and entitled to Eleventh Amendment immunity, unless that immunity has been waived by the state or abrogated by Congress. *See Mascheroni*, 28 F.3d 1554, 1559 (10th Cir. 1994); *Ward v. Presbyterian Healthcare Servs.*, 72 F. Supp. 2d 1285, 1289-90 (D.N.M. 1999).

### B. Waiver of Immunity

The next question is whether New Mexico has waived its immunity for suits under Title I of the ADA.

The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)). Courts generally find a waiver if a state voluntarily invokes federal-court jurisdiction, *see Clark v. Barnard*, 108 U.S. 436, 447 (1883) (state intervened as a claimant and thus voluntarily appeared); *McLaughlin v. Bd. of Trs. of State Colls. of Colo.*, 215 F.3d 1168, 1170-71 (10th Cir. 2000) (state waives immunity by voluntarily removing a case to federal court), or if the state "makes a 'clear declaration' that it intends to submit itself" to federal-court jurisdiction, *Coll. Sav. Bank*, 527 U.S. at 676 (quoting *Great N. Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)). A state's consent to be sued in its own courts does not constitute consent to suit in federal court, nor does a state waive immunity by stating its intention to "sue and be sued." *Id.* (quoting *Florida Dept. of Health & Rehabilitative Servs. v. Florida Nursing Home Assn.*, 450 U.S. 147, 149-50 (1981) (per curiam)). "The state's consent must be unequivocally expressed." *Ward*, 72 F. Supp. 2d at 1291 (quotation omitted).

Dr. Rivero argues that UNM has waived its immunity from suit by publishing policies that "specifically lean[] upon Federal civil rights laws, of which the ADA is certainly a part"

(Doc. 17 at 5), and by stating in student manuals that UNM is "committed to the recognition and the proactive pursuit of compliance with the [ADA]" (*id.* at 6 (quotation omitted)). These examples, claims Dr. Rivero, show that UNM waived its immunity by "unequivocal statements of adherence to and promotion of Federal law, with an expectation that violations are actionable." (*Id.*)

Dr. Rivero does not cite a single case or statute to support his argument that a state agency's declaration that it complies with, or strives to comply with, federal civil rights law constitutes an Eleventh Amendment waiver of immunity. In fact, Dr. Rivero seems to ignore that the Supreme Court rejected a similar argument on constructive waiver in 1974. *Edelman*, 415 at 673-74. In *Edelman*, the Court held that Illinois had not waived immunity even though it accepted federal money, agreed to participate in a federal program, and agreed to administer state and federal funds in compliance with federal law. *Id.*

The facts cited by Dr. Rivero are less compelling than those in *Edelman*. In *Edelman*, the state accepted federal money after an agreement with the federal government that the state would administer the funds in compliance with federal law. Here, UNM promulgated an anti-discrimination policy and affirmatively represented that it complies, or attempts to comply, with federal civil rights law. A state's compliance with federal law does not operate as a waiver of immunity from suit in federal court under those laws. *See id.*; *Chittister v. Dep't of Cmty. & Econ. Dev.*, 226 F.3d 223, 226-27 (3d Cir. 2000) (holding that an administrative policy of the state was insufficient to waive Eleventh Amendment immunity, even though the policy required posting notices required by the Family and Medical Leave Act).

Dr. Rivero's contention that UNM waived its immunity by publishing these policies does not give rise to a clear or unequivocal waiver of immunity. I find that New Mexico has not

clearly and unequivocally waived its Eleventh Amendment immunity to suit in federal court for claims under Title I of the ADA.

### C.  Abrogation

The parties agree that Congress has not abrogated the state's immunity for claims under Title I of the ADA. (Doc. 17 at 4 (citing *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) (holding that Congress did not abrogate Eleventh Amendment immunity for claims under Title I of the ADA)).)

### D.  Rule 12(b)(1) or Rule 12(b)(6)

Having determined that UNM is an arm of the state, the state has not waived immunity for suits like this, and Congress has not expressly abrogated the state's immunity, I find that UNM is entitled to Eleventh Amendment immunity in this case. The remaining question is esoteric, but nonetheless important: Should this case be dismissed under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, or under Rule 12(b)(6), for failure to state a claim upon which relief can be granted?

The Supreme Court has not decided whether Eleventh Amendment immunity divests a court of subject matter jurisdiction or provides a defense to federal action. *Wisc. Dep't of Corr. V. Schacht*, 524 U.S. 381, 391-92 (1998) ("Even making the assumption that Eleventh Amendment immunity is a matter of subject-matter jurisdiction—a question we have not decided. . . ."). In the Tenth Circuit, however, "Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

The present motion to dismiss constitutes a facial attack under Rule 12(b)(1): even assuming all of the allegations in the Complaint are true, UNM is still entitled to Eleventh

Amendment immunity. In the Tenth Circuit, UNM's immunity divests this Court of subject matter jurisdiction. Accordingly, I grant UNM's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.

Even if Eleventh Amendment immunity were not a matter of subject matter jurisdiction, it would constitute a complete defense to Dr. Rivero's claims under Title I of the ADA, such that it would be appropriate to grant UNM's motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### MOTION TO AMEND

Dr. Rivero seeks leave under Federal Rule of Civil Procedure 15(a)(2) to file his First Amended Complaint. (Doc. 16.) The First Amended Complaint would include Counts 1 and 2, discussed and dismissed above, and would add two additional causes of action. Count 3 alleges violations of the Rehabilitation Act, 29 U.S.C. § 794(a), by impermissibly requiring psychiatric evaluations to be performed by an employer-approved provider, requiring Dr. Rivero to pay for these evaluations, and requiring disclosure of the confidential medical information to HSC, when these requirements were not job-related and were not consistent with a business necessity. Count 4 alleges breach of contract and breach of the implied covenant of good faith and fair dealing by depriving Dr. Rivero of the benefit of his employment contract through the creation of intolerable working conditions that resulted in Dr. Rivero's constructive discharge in May 2014.

### I.     Standard of Review

After a responsive pleading has been served, a party may amend its pleadings only by leave of court or with written consent from the opposing party. FED. R. CIV. P. 15(a)(2). "The court should freely give leave [to amend] when justice so requires." *Id*. A court may refuse to grant leave to amend when the opposing party shows undue delay, undue prejudice, bad faith or

dilatory motive, failure to cure deficiencies by previously granted amendments, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). It is well settled in the Tenth Circuit "that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Id.* at 1365-66 (citations omitted). Further, "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'rs Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

**II.     Discussion**

UNM contends that the First Amended Complaint would be futile, but addresses only Counts 1, 2, and 4. (*See* Doc. 20.) I agree with UNM that allowing Dr. Rivero to amend his claims under Title I of the ADA would be futile because UNM's Eleventh Amendment immunity still applies. UNM also contends that Count 4—a state-law claim for breach of contract and breach of the implied covenant of good faith and fair dealing—is futile because it is barred by the Eleventh Amendment. UNM does not address Count 3.

As to Count 4, UNM argues that this Court lacks jurisdiction over the state law claim because the Eleventh Amendment precludes supplemental jurisdiction over state law claims. (Doc. 20 at 4 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120-21 (1984)).) Generally, federal courts that obtain jurisdiction over a federal claim may adjudicate related claims over which the court would not otherwise have jurisdiction. 28 U.S.C. § 1367. However, "[t]he Eleventh Amendment is an explicit limitation on the judicial power of the United States." *Pennhurst State Sch.*, 465 U.S. at 119 (quoting *Missouri v. Fiske*, 290 U.S. 18, 25 (1933)).

I have already decided that UNM is an arm of the state. There is no contention that Congress somehow abrogated Eleventh Amendment immunity for state-law claims. So the only

15

possible way that the Eleventh Amendment would not apply is if New Mexico waived immunity from suit in federal court for breach of contract claims. It has not.

Dr. Rivero attempts to save Count 4 by arguing that it forms part of the same case or controversy as Count 3, rendering the exercise of supplemental jurisdiction appropriate. I cannot agree. Even though it would be in the interest of judicial economy to hear both claims at the same time, the Eleventh Amendment bar is stringent. Because UNM is protected by Eleventh Amendment immunity, I find that I lack subject matter jurisdiction to hear Count 4. It is unnecessary to decide whether the statute of limitations period has run on this claim.

Because UNM does not object to the addition of Count 3, and it is not obvious from the face of the First Amended Complaint that Count 3 would be subject to dismissal, I grant-in-part and deny-in-part Dr. Rivero's motion for leave to file an amended complaint. Within ten days from the date of entry of this Order, Dr. Rivero may file an amended complaint including Count 3. Counts 1, 2, and 4 of the proposed First Amended Complaint are rejected.

## CONCLUSION

As explained herein, UNM is an arm of the state entitled to Eleventh Amendment immunity, absent a specific waiver by the state or clear abrogation by Congress. UNM is entitled to immunity on Dr. Rivero's claims under Title I of the ADA. Accordingly, UNM's motion to dismiss (Doc. 6) for lack of subject matter jurisdiction is granted. In the alternative, UNM's motion to dismiss (Doc. 6) is granted under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Dr. Rivero's motion for leave to file an amended complaint (Doc. 16) is granted-in-part and denied-in-part. Dr. Rivero's claims under Title I of the ADA are barred by the Eleventh Amendment. Additionally, Dr. Rivero's state-law claim for breach of contract is barred by the

Eleventh Amendment. *See Pennhurst State Sch.*, 465 U.S. at 121. Within ten days of the date of entry of this Order, Dr. Rivero may file an amended complaint that proceeds with Count 3 under the Rehabilitation Act.

    IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.