### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

**DENNIS P. RIVERO, M.D.,**

       **Plaintiff,**

**v.**                                              **Cause No. 16-cv-00318 WPL/SCY**

**BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO**
**d/b/a UNIVERSITY OF NEW MEXICO HEALTH SCIENCES CENTER,**

       **Defendant.**

### FIRST AMENDED COMPLAINT TO RECOVER DAMAGES FOR
### VIOLATION OF THE REHABILITATION ACT OF 1973

COMES NOW Plaintiff Dennis P. Rivero, M.D. ("Dr. Rivero"), by and through his attorney Eric D. Norvell, and pursuant to the Court's order granting leave to amend [Doc. 24, Order] submits this First Amended Complaint to Recover Damages for Violation of the Rehabilitation Act of 1973 ("First Amended Complaint"), filed with leave of the Court under Fed. R. Civ. P. 15(a) and relating back to the date of the initial complaint under Fed. R. Civ. P. 15(c). As grounds for this First Amended Complaint, Dr. Rivero alleges the following.

### PARTIES, JURISDICTION, AND VENUE

1.  This action presents a question of Federal law under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701 *et seq.* and 790 *et seq.*.[1]

2.  Pursuant to N.M. Const. Art XII Sec. 13 and N.Mex. Stat. Ann. § 21-7-3, Defendant Board of Regents of the University of New Mexico ("Board of Regents") manages and controls the University of New Mexico ("UNM"), a "state educational institution" under N.M. Const. Art. XII Sec. 13.  The Board of Regents further forms a body corporate with the right to be sue and be

---

[1] The claims for violations of the Rehabilitation Act have been included in this amended complaint as relating back to the original complaint per Fed. R. Civ. P. 15(c)(1)(B).

sued as and on behalf of UNM. The University of New Mexico Health Sciences Center ("UNMHSC") is part of UNM and subject to the management and control of the Board of Regents, and therefore for the purposes of prosecution and defense of this civil action constitutes one and the same. Collectively and for the purposes of clarity, Defendant shall be referred to as "Defendant" or "UNMHSC" in this Complaint.

3. Dr. Rivero is a citizen of the State of Oklahoma, and at all times material to this Complaint, Dr. Rivero was an employee of UNMHSC in Albuquerque, New Mexico.

4. UNMHSC is a "program or activity" receiving Federal financial assistance under the Rehabilitation Act, 29 U.S.C. § 794.

5. This Court has original jurisdiction over the Federal question controversies pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant resides in and a substantial part of the events or omissions giving rise to the claims occurred in the District of New Mexico.

## GENERAL ALLEGATIONS

7. Paragraphs 1 through 6 are re-alleged and incorporated as though fully set forth herein.

8. Dr. Rivero is a renowned orthopedic surgeon with more than twenty-five (25) years of experience.

9. Dr. Rivero has been board-certified (and re-certified) in the surgical sub-specialty of orthopedic surgery, having completed a residency in orthopedic surgery, plus a fellowship in orthopedic adult reconstruction.

10. Dr. Rivero became a faculty member at UNMHSC in 1992, and in July 2005 was promoted to full professor of medicine in the UNMHSC's Department of Orthopedic Surgery and Rehabilitation (hereinafter the "Department").

11. In his time at UNMHSC, Dr. Rivero also served as the Chief of Adult Reconstruction in the Department.

12. Throughout his term with UNMHSC, Dr. Rivero was under high demand by patients and colleagues alike for his work as an orthopedic surgeon, as his reputation and performance were among the highest in quality at UNMHSC.

13. Having been at UNMHSC for fifteen years, and after much consideration, in early 2007, Dr. Rivero chose to leave UNMHSC to pursue an opportunity in private practice in Oklahoma.

14. However, upon the request of UNMHSC and due to his colleagues requesting that he remain involved with the Department, rather than relinquish all involvement with UNMHSC, Dr. Rivero instead reduced his full-time employment with UNMHSC from 1.0 (or 100%) full-time employment (FTE) to .05 FTE (5%, approximately one day per month).

15. Dr. Rivero practiced in Oklahoma for about four to six months when he reconsidered his foray into private practice and desired to resume 1.0 FTE status at UNMHSC.

16. On June 24, 2007, Dr. Rivero wrote to Dr. Robert Schenck, Chairman of the Department, indicating his reasons for requesting a full-time return.  In that letter, Dr. Rivero stated among other things that UNMHSC afforded him a greater ability to perform in his specialty area of adult reconstructive surgery.  Dr. Schenck, as Chairman of the Department, was Dr. Rivero's immediate supervisor.

17. Dr. Rivero sought to return to three-fourths-time or full-time employment (.75 to 1.0 FTE) with UNMHSC.

18. Dr. Schenck informed Dr. Rivero that he would be returned to the requested level of full-time employment.  However, the increase in level of employment did not occur as promised.

19. From June 2007 to December 2010, UNMHSC administrators obstructed, delayed, and withheld approval of Dr. Rivero's increase back to full-time employment.

20. In the interim, Dr. Rivero continued to practice in Oklahoma and, one day per month, at UNMHSC performing high-value, complex adult reconstructive surgeries.

21. Throughout the period in which Dr. Rivero awaited a return to .75 FTE or higher with UNMHSC, he received continued reappointment with UNMHSC.   In letters that confirmed such reappointment, Dr. Rivero was informed each year that his "appointment is an acknowledgement of [his] educational and clinical achievements, the positive regard of [his] colleagues, and the endorsement of [his] Department."  Pursuant to such notice, Dr. Rivero annually or periodically executed employment contracts confirming reappointment.  (*See, e.g.,* Contract of Health Sciences Center Faculty, "Employment Contract," a true and correct copy of which is attached hereto as Exhibit 2.)

22. After several years of attempting to increase his work status, and after multiple inquiries as to why the administration was obstructing the increase, Dr. Rivero was informed that there were concerns as to his "professionalism." Dr. Rivero was informed that the "professionalism" questions related to supposed impoliteness as perceived by members of the UNMHSC administration, many of whom had never communicated with Dr. Rivero.

23. Dr. Rivero was surprised by the reason given because Dr. Rivero never received any form of discipline or adverse employment action from UNMHSC. UNMHSC never provided him

4

with any documentation regarding any complaint about his work or professionalism. He had no medical board complaints. Moreover, UNMHSC annually affirmed his regard as a desired employee through positive reappointments and never gave any reason or indication of any job- or business-related issues.

24. Upon information and belief, the perpetuation of false "professionalism" issues with Dr. Rivero stemmed from a 2003 dispute between Dr. Rivero and Dr. David Pitcher, Chief Medical Officer, regarding admissions procedures pertaining to a patient.  Dr. Rivero filed an official complaint within UNMHSC about the interaction, as was Dr. Rivero's right.  The outcome of the internal investigation required that any interactions among the two physicians would require a third party to be present.  Pitcher remained embittered and surreptitiously campaigned to denigrate Dr. Rivero's reputation from 2004 onward.

25. Concurrently, Dr. Bailey (Associate Dean for Clinical Affairs), Dr. Pitcher, Dr. Robert Katz (Vice President of Clinical Affairs), and Dr. Paul Roth (Chancellor of UNMHSC) refused to give Dr. Rivero more hours, based primarily on misinformation and hyperbole provided by Dr. Pitcher.

26. Dr. Rivero filed a complaint with the Academic Freedom and Tenure Committee ("AFT Committee") of UNM in the fall of 2010, alleging that his request to increase his FTE status was given inadequate consideration.

27. In investigative notes retained by Dr. Victor Strasburger, chair of the AFT Committee, Drs. Bailey and Pitcher, who were interviewed, described Dr. Rivero as "disruptive."  Elsewhere in the investigative notes, Dr. Strasburger stated that all 23 of Dr. Rivero's "departmental colleagues want him back [and] . . . he is an excellent surgeon."

28. Ultimately, in December 2010, Dr. Rivero met with Dr. Schenck to address the steps needed to have Dr. Rivero return to full-time employment status at UNMHSC.

29. During the December 2010 meeting, as a show of cooperation, Dr. Rivero agreed to attend four "counseling" sessions ostensibly to improve patient interactions and nothing more.

30. Dr. Schenck stated that the agreement should be "structured for success."

31. Dr. Schenck planned to reduce the agreement to writing.

32. In February of 2011, Dr. Rivero received from Dr. Schenck a document called "Addendum No. 1 to Contract UNM School of Medicine Faculty by and between the University of New Mexico and Dennis P. Rivero, M.D.," hereinafter the "Addendum," a true and correct copy of which is attached to this Complaint as Exhibit 1.  Dr. Schenck told Dr. Rivero that the Addendum reflected the agreement they reached to increase Dr. Rivero's FTE status to full-time at UNMHSC over the course of the next two years.

33. The Addendum did not reflect the basic agreement reached in December 2010.  Instead, as a condition of employment, the Addendum required Dr. Rivero to submit to a medical examination, namely "a four-part psychiatric evaluation by a board-certified psychiatrist acceptable to the Chair of the Department of Orthopedics and Rehabilitation," namely Dr. Schenck, who was Dr. Rivero's immediate supervisor and who was to have had "sole discretion" over the choice of the psychiatrist.  (Addendum ¶ 2.)  Notably, the December 2010 agreement referred to counseling sessions, not psychiatric evaluations.

34. The Addendum further conditioned Dr. Rivero's employment as follows:

   a.  Specifying a timeline for completion of the psychiatric examinations (Addendum ¶ 2(a));

b.  Requiring that Dr. Rivero personally pay for the psychiatric examinations (Addendum ¶ 2(b));

c.  Requiring that Dr. Rivero comply with all treatment recommendations of the employer-approved psychiatrist (Addendum ¶ 2(c), stating "[a]ll treatment recommendations made by the psychiatrist performing the Psychiatric Evaluation shall be deemed to be mandatory to be performed by Rivero, and Rivero must fully comply with and complete the program");

d.  Requiring that Dr. Rivero submit "progress reports" from the psychiatrist to Dr. Schenck ("Department Chair") and to the Associate Dean of Academic Affairs of UNMHSC "attesting to [Dr. Rivero's] continued participation in the Psychiatric Evaluation, setting forth any recommendations by the psychiatrist performing the Psychiatric Evaluation, and compliance with those recommendations and/or requirements" (Addendum ¶ 2(c)); and

e.  Requiring that Dr. Rivero execute "consents and/or authorizations" to permit the psychiatrist to provide "reports and other recommendations in respect of Rivero (arising out of the Psychiatric Evaluation)" directly to Dr. Schenck and the Associate Dean of Academic Affairs.  (Addendum ¶ 2(d).)

35. The Addendum also provided that a copy of the reports from the psychiatrist would be maintained in "Rivero's confidential medical staff file in the Office of Clinical Affairs." (Addendum ¶ 2(d).)

36. According to the Addendum, if UNMHSC were to determine that Dr. Rivero was not in compliance with the terms of the Addendum, then Dr. Rivero was to have been "deemed to have resigned his SOM faculty appointment and his employment with the University effective 60

7

calendar days" after written notice. (Addendum ¶ 3.) The Addendum further stated that such "resignation" was not to "constitute a dismissal, termination or constructive termination, or other involuntary separation from employment or from faculty status." (*Id.*)

37. Dr. Rivero does not have a mental impairment or disability.

38. Dr. Rivero expressed his shock and concern with the content of the Addendum to Dr. Schenck.

39. Dr. Schenck allowed Dr. Rivero until April 10, 2011 to respond to the Addendum. Notably, the Addendum included a clause that stated that Dr. Rivero was to have been able to seek legal counsel with respect to the Addendum. Dr. Rivero stated he would seek such counsel.

40. However, when Dr. Rivero sought advice of counsel and legally requested access to his own personnel files to determine the basis for UNMHSC demanding an extensive and invasive four-part psychiatric examination, Dr. Schenck revoked the Addendum on April 5, 2011.

41. Defendant refused to provide any documents in support of its requirement that he undergo extensive psychiatric evaluation and mandatory treatment. Dr. Rivero had to file a petition for writ of mandamus in New Mexico State District Court seeking production of the documents, which resulted in protracted litigation. Eventually, the State District Court found that UNMHSC illegally withheld the documents and in August 2013 ordered production of the documents as well as sanctions against UNMHSC. UNMHSC failed to produce all documents as ordered, and Dr. Rivero was forced to continue litigation to obtain production of withheld documents. As recently as late 2015, UNMHSC continued to produce additional documents.

42. UNMHSC had no legitimate basis for demanding a psychiatric evaluation as a condition of employment.

43. The psychiatric evaluation that was demanded was not job-related or consistent with business necessity.

44. UNMHSC regarded Dr. Rivero as having a mental disability or impairment that he does not have and refused to increase his hours because of this regard.

## COUNT I

## VIOLATION OF THE REHABILITATION ACT

45. Paragraphs 1 through 44 are re-alleged and incorporated as though fully set forth herein.

46. UNMHSC violated the Rehabilitation Act, 29 U.S.C. § 794(a), which states, "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

47. The standards to determine whether a violation of the Rehabilitation Act under § 794 occurred are the standards applied under Title I of the Americans with Disabilities Act, 42 U.S.C. 12111 *et seq.* 29 U.S.C. § 794(d).

48. Therefore, in violation of the Rehabilitation Act, governed by the standards applied to and by 42 U.S.C. § 12112(d)(4), by requiring execution of the Addendum in exchange for giving Dr. Rivero more hours, UNMHSC impermissibly required medical examinations (psychiatric evaluations) to be performed by an employer-approved provider, at Dr. Rivero's expense, and required disclosure of confidential medical information to UNMHSC.

49. Such requirements were not job-related and were not consistent with a business necessity, as Dr. Rivero continued to receive recommendations for reappointment to the surgical staff of UNMHSC and to perform complex adult reconstructive surgeries at .05 FTE without any issue whatsoever until leaving UNMHSC in May 2014.

50. Also in violation of the Rehabilitation Act, UNMHSC regarded Dr. Rivero as a person with a disability, namely an unspecified mental impairment, that he in fact did not have, and refused to permit Dr. Rivero to work more hours than .05 FTE.

51. Defendant's only articulated reason for the adverse treatment was the unspecified mental impairment.

52. In April 2011 when Dr. Rivero objected to the illegal medical inquiry, UNMHSC acted on its belief that Dr. Rivero had a mental disability which prevented him from working more than .05 FTE by revoking the offer to increase his FTE entirely.

53. The decision to revoke the offer of more hours was also motivated by retaliation because Dr. Rivero objected to the illegal medical inquiry.

54. No legitimate business reason was ever offered for the adverse action.

55. Furthermore, upon filing of affidavits by Dr. John Trotter (Vice Chancellor Emeritus of UNMHSC) on January 15, 2014 and by Dr. Bailey on January 24, 2014, each attesting to complete production of documents, Dr. Rivero discovered that UNMHSC had no documents to substantiate its perception of a mental impairment and subsequent adverse treatment of him. Concurrently, Dr. Rivero ascertained that the required psychiatric evaluation in the Addendum was a vehicle to obtain a basis to illegally terminate him at any moment because of a perceived mental impairment and/or failure to get care for a condition he does not have, to harass him based on a perceived mental impairment, to stigmatize him, to cast doubt on his mental fitness for duty,

and to illegally invade his innermost privacy, no reasonable person could tolerate working in these unlawful conditions.

56.     The working conditions at UNMHSC having become irreparably intolerable, Dr. Rivero cleared out his locker at UNMHSC on January 31, 2014, and he never again returned to UNMHSC.   Dr. Rivero was constructively discharged, and he submitted a formal letter of resignation to Dr. Schenck on May 21, 2014.

57. Dr. Rivero has experienced anger, frustration, upset and other compensable damages because of Defendant's adverse action in violation of the Rehabilitation Act.

58. As a result of Defendant's illegal actions, Dr. Rivero has been damaged, experienced financial losses, and suffered emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons stated above, Dr. Rivero respectfully requests that the Court:

A.  enter a judgment in favor of Dr. Rivero and against Defendant for illegal medical inquiry and discrimination and retaliation under the Rehabilitation Act;

B.  award past and future lost wages and benefits;

C.  award past and future emotional distress, general, and compensatory damages to Dr. Rivero to be proven at trial;

D.  award special damages for damage to reputation, loss of opportunity, and loss of earnings;

E.  award reasonable attorneys' fees and costs pursuant to the Rehabilitation Act or any other authority permitting such award;

F.   award pre- and post-judgment interest;

G.   award injunctive relief to prevent Defendant from acting on its illegal regard of Dr. Rivero as disabled in the course of credentialing or providing employment references for Dr. Rivero in the future; and

H.   award such other relief as the Court deems just and proper.

## DEMAND FOR TWELVE-PERSON JURY

Pursuant to Fed. R. Civ. P. 38, Dr. Rivero demands trial by a twelve-person jury of all issues so triable, the court-required fee for which was paid upon filing of the original complaint in this matter.

Respectfully submitted,

ERIC D. NORVELL, ATTORNEY, P.A.

 */s/ Eric D. Norvell*
Eric D. Norvell
500 Marquette Ave. NW, Suite 1200
Albuquerque, NM 87102
(505) 717-2857
enorvell@norvellfirm.com
*Attorney for Dennis P. Rivero, M.D.*

## CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY that on September 9, 2016, I caused the foregoing First Amended Complaint to Recover Damages for Violation of the Rehabilitation Act of 1973 to be served via the Court's CM/ECF filing system to all parties entitled to receive notice and service in this case.

 */s/ Eric D. Norvell*
Eric D. Norvell