IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DENNIS P. RIVERO, M.D.,

    Plaintiff,

v.                                                                                       CV 16-318 WPL/SCY

BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO
d/b/a UNIVERSITY OF NEW MEXICO
HEALTH SCIENCES CENTER,

    Defendant.

**ORDER DENYING MOTION TO DISMISS**

Dennis Rivero, M.D., with leave of Court, filed an Amended Complaint against the Board of Regents of the University of New Mexico d/b/a University of New Mexico Health Sciences Center ("UNM") for violations of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. and 790 et seq. (Doc. 28.) UNM filed a motion to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. (Doc. 33.) Dr. Rivero opposes the motion. (Doc. 39.) Being fully advised on these matters, I deny UNM's motion to dismiss.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), courts consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss under Rule 12(b)(6), courts consider "the complaint as a whole, along with the documents incorporated by reference into the complaint" and construe all well-pled allegations in the light most favorable to the plaintiff. *Nakkhumpun v. Taylor*, 782 F.3d

1142, 1146 (10th Cir. 2015) (citations omitted). "Well-pled" means that the allegations are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).

A court may resolve a motion to dismiss under Rule 12(b)(6) on the basis of an affirmative defense, such as the statute of limitations or asserted immunity, when the facts establishing the defense are apparent on the face of the complaint. *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014); *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965).

## BACKGROUND

The following background information is taken from Dr. Rivero's Amended Complaint. (Doc. 28.) For purposes of the motion to dismiss, I assume that these facts are true. This Background section does not constitute any formal factual findings in this case.

Dr. Rivero is an orthopedic surgeon. He joined the medical faculty at the University of New Mexico Health Sciences Center ("HSC") in 1992 and was promoted to full professor of medicine in the Department of Orthopedic Surgery and Rehabilitation in July 2005. Within the Department of Orthopedic Surgery and Rehabilitation, Dr. Rivero served as the Chief of Adult Reconstruction. HSC is part of the University of New Mexico.

In 2003, Dr. Rivero had a dispute with Dr. David Pitcher, Chief Medical Officer, over admissions procedures for a patient. Dr. Rivero filed an official complaint with HSC about the

interaction, and the results of an internal investigation determined that subsequent interactions between Drs. Rivero and Pitcher required the presence of a third party.

In early 2007, Dr. Rivero reduced his employment at HSC from full-time to approximately 5% time, or roughly one day per month, in order to pursue opportunities in private practice in Oklahoma. On June 24, 2007, Dr. Rivero wrote to Dr. Robert Schenck, Chairman of the Department of Orthopedic Surgery and Rehabilitation and Dr. Rivero's immediate supervisor, and stated that he wished to return to 75% time or full-time employment at HSC. Dr. Schenck told Dr. Rivero that he would be returned to full-time employment.

The return to full-time employment did not happen. From June 2007 to December 2010, HSC delayed and withheld approval for Dr. Rivero to return to full-time employment. During this period, Dr. Rivero continued to work one day per month at HSC and continued to work in private practice in Oklahoma.

Also during this period, Dr. Rivero made inquiries at HSC about the delay. He was eventually informed that "there were concerns as to his 'professionalism' . . . that . . . related to supposed impoliteness as perceived by members of the [HSC] administration, many of whom had never communicated with Dr. Rivero." (*Id.* at 4.) Dr. Rivero has never received any disciplinary or adverse employment action at HSC.

"Dr. Bailey (Associate Dean for Clinical Affairs), Dr. Pitcher, Dr. Robert Katz (Vice President of Clinical Affairs), and Dr. Paul Roth (Chancellor of [HSC]) refused to give Dr. Rivero more hours, based primarily on misinformation and hyperbole provided by Dr. Pitcher." (*Id.* at 5.)

In the fall of 2010, Dr. Rivero filed a complaint with the Academic Freedom and Tenure Committee, alleging that his request to return to full-time employment was given inadequate

consideration. An investigator for this committee, Dr. Victor Strasburger, interviewed Drs. Bailey and Pitcher. Drs. Bailey and Pitcher described Dr. Rivero as "disruptive," but "all 23 of Dr. Rivero's 'departmental colleagues want him back [and] . . . he is an excellent surgeon.'" (*Id.* (alterations in original).)

Dr. Rivero met with Dr. Schenck in December 2010 to discuss the steps needed to return to full-time employment at HSC. At this meeting, Dr. Rivero agreed to attend four counseling sessions to improve patient interactions. Dr. Schenck sent Dr. Rivero "Addendum No. 1 to Contract UNM School of Medicine Faculty by and between the University of New Mexico and Dennis P. Rivero, M.D." ("Addendum") in February 2011. (*Id.* Ex. 1.) According to Dr. Schenck, the Addendum reflected the agreement reached in December 2010 to increase Dr. Rivero to full-time status over the course of two years.

Rather than reflecting the agreement that Dr. Rivero attend four counseling sessions to improve patient interactions, the Addendum required Dr. Rivero, as a condition of employment, to submit to "a four-part psychiatric evaluation by a board-certified psychiatrist acceptable to the Chair of the Department of Orthopedics and Rehabilitation"—Dr. Schenck—who would have "sole discretion" over picking the psychiatrist. (Doc. 28 at 6.) Dr. Rivero would be required to pay for these examinations and would be required to comply with all treatment recommendations of the psychiatrist. Additionally, the Addendum required Dr. Rivero to submit progress reports from the psychiatrist to Dr. Schenck and to the Associate Dean of Academic Affairs of HSC, and to execute a consent form or other authorization permitting the psychiatrist to provide reports and recommendations directly to Dr. Schenck and the Associate Dean of Academic Affairs of HSC. Any reports provided directly to Dr. Schenck would be kept as part of Dr. Rivero's medical staff file in the Office of Clinical Affairs. Furthermore, if HSC determined that Dr. Rivero was not in

compliance with the terms of the Addendum, he would be "deemed to have resigned his [HSC] faculty appointment and his employment with the University effective 60 calendar days" from written notice, and that this resignation would not constitute dismissal, termination, or other involuntary separation from HSC. (*Id.* at 7-8.)

Dr. Rivero had until April 10, 2011, to respond to the Addendum. He sought counsel and then requested access to his personnel file to determine the basis for HSC demanding the four-part psychiatric examination. After Dr. Rivero made this request, Dr. Schenck revoked the Addendum on April 5, 2011. HSC did not provide any documents to support its requirement that Dr. Rivero submit to psychiatric evaluation and treatment.

After Dr. Rivero filed suit in New Mexico state court, a state district judge found that HSC had illegally withheld the requested documents and ordered production of those documents in August 2013. HSC failed to comply. HSC has been producing documents as recently as late 2015.

On January 20, 2012, Dr. Rivero filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting violations of the ADA. The EEOC did not pursue the matter, but issued Dr. Rivero a right-to-sue notice on January 29, 2016. Dr. Rivero left HSC entirely in May 2014.

Dr. Rivero brought the original complaint in this case on April 19, 2016. (Doc. 1.) For his Amended Complaint, Dr. Rivero purports to bring one cause of action against UNM for violations of the Rehabilitation Act, specifically, his constructive discharge in May 2014.

## DISCUSSION

The Rehabilitation Act prohibits "otherwise qualified individual[s]" from being "excluded from the participation in, denied the benefits of, or . . . subjected to discrimination

under any program or activity receiving Federal financial assistance" based solely on his or her disability. 29 U.S.C. § 794(a). Section 794(d) incorporates the "standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment." As such, the Rehabilitation Act prohibits an employer from requiring that an employee undergo a medical examination and from making inquiries of an employee about any disabilities or the nature and severity thereof, unless the "examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4). The remedies and procedures set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, apply to claims under § 794. 29 U.S.C. § 794a(a)(2).

Though inartfully pled, Dr. Rivero brings two separate claims within "Count One": first, he lays out the elements to allege a violation of the Rehabilitation Act when UNM attempted to require psychiatric testing without a legitimate purpose; and second, he alleges that he was constructively discharged as a result of UNM's cumulative conduct. I consider these claims separately.

UNM filed a Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted. UNM asserts that both parts of Dr. Rivero's claim are barred by the applicable statute of limitations.

The Rehabilitation Act does not identify a statute of limitations. In the Tenth Circuit, Rehabilitation Act claims are treated similarly to claims under 42 U.S.C. § 1983, and the state personal injury statute of limitations is read-in to the statute. *Levy v. Kan. Dep't of Social & Rehab. Servs.*, 789 F.3d 1164, 1172-74 (10th Cir. 2015) (holding that Rehabilitation Act claims

are most analogous with § 1983 claims and borrow the state's general personal injury statute of limitations); *see also McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011) (holding that § 1983 claims borrow the general personal injury statute of limitations from the jurisdiction in which the claim arises). In New Mexico, general personal injury claims—and thus Rehabilitation Act claims—must be brought within three years. N.M.S.A. § 37-1-8 (1978).

"Ordinarily, a 'limitations period commences when the plaintiff has a complete and present cause of action.'" *Green v. Brennan*, --- U.S. ---, ---, 136 S. Ct. 1769, 1776 (2016) (quoting *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 418 (2005)). "A cause of action does not become complete and present for limitations purposes until the plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

The relevant question at this stage of the case is when Dr. Rivero's claim under the Rehabilitation Act accrued. UNM contends that Dr. Rivero's claim accrued between February and April 2011, when HSC required Dr. Rivero to undergo psychiatric testing as a condition precedent to increasing his employment status. (*See* Doc. 33 at 6-8.) Dr. Rivero counters that his claim accrued on May 21, 2014, when he resigned because his resignation constituted the final element to his constructive discharge claim. (Doc. 39 at 4-8.)

As to the psychiatric testing portion of the claim, neither party provided particularly helpful briefing. However, this much is clear: UNM contends that the claim accrued no later than April 5, 2011, when UNM revoked the offer; and Dr. Rivero asserts that the claim accrued on May 21, 2014, when he formally resigned from UNM and was, according to him, constructively discharged. Both parties are wrong.

Section 794(d) incorporates the standards applied under the ADA, specifically 42 U.S.C. § 12112(d)(4), which prohibits an employer from requiring an employee to undergo a medical examination unless the examination "is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4). Here, UNM did require Dr. Rivero to undergo medical testing—psychiatric testing, to be precise—as a condition of increased employment. Additionally, Dr. Rivero did not find out that UNM had no business necessity for these requirements until affidavits were filed by Drs. Trotter and Bailey in the state case which averred that all of the documents had been produced, and Dr. Rivero was able to determine that UNM had no evidence or documentary support to substantiate its requirement of psychiatric testing. (*See generally* Doc. 28 at 10-11.) The affidavits were filed, respectively, on January 15 and January 24, 2014. (*Id.*) Given that a plaintiff must prove that his employer had no business necessity for the required medical testing, Dr. Rivero's claim under § 794 for the psychiatric testing was not complete and cognizable until January 2014. Given that the Rehabilitation Act prohibits an employer from requiring medical testing only when the employer lacks a business necessity for that testing, 42 U.S.C. § 12112(d)(4), the lack of business necessity is an element of the claim. Dr. Rivero only had access to information sufficient to establish this element beginning in January 2014. The statute of limitations has not yet run.

Dr. Rivero's constructive discharge claim presents a more complicated question. "Constructive discharge occurs when an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit." *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1281 (10th Cir. 2005) (citing *Muller v. U.S. Steel Corp.*, 509 F.2d 923, 929 (10th Cir. 1975)). "A finding of constructive discharge depends upon whether a reasonable person would view the working conditions as intolerable, not upon

the subjective view of the employee-claimant." *Id.* (citing *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 (10th Cir. 1982)) (footnote omitted). While "[t]he bar is quite high" for proving constructive discharge, *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002), the employee's resignation based on the discriminatory conduct by the employer is an essential—indeed, the defining—element of a constructive discharge claim, *Green*, 136 S. Ct. at 1777. The statute of limitations did not begin running until Dr. Rivero in fact terminated his employment in May 2014.

UNM also argues that Dr. Rivero failed to state a claim for constructive discharge because constructive discharge is viewed from an objective standpoint and the bar is quite high. While UNM is correct that constructive discharge is viewed from an objective standpoint, it has not pointed out any case nor made any persuasive argument that a reasonable professional would not remain working to resolve an issue such as this and would feel that they had no choice but to quit upon learning that their employer had no basis for ordering psychiatric testing. Based on the facts alleged, a reasonable jury could conclude that Dr. Rivero's working conditions became intolerable to the point of constructive discharge in early-to-mid 2014. Accordingly, I reject UNM's contention that Dr. Rivero failed to state a claim for constructive discharge.

## CONCLUSION

As explained herein, I find that the statute of limitations has not run on Dr. Rivero's claims for violations of the Rehabilitation Act based on psychiatric testing and constructive discharge. Additionally, I disagree with UNM and instead conclude that Dr. Rivero alleged sufficient facts to state a claim for relief based on constructive discharge. UNM's motion to dismiss is denied and UNM will file an answer or other appropriate responsive pleading to the Amended Complaint within fourteen days from the date of entry of this Order.

IT IS SO ORDERED.

_William P. Lynch_
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.