IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DENNIS P. RIVERO, M.D.,**

    **Plaintiff,**

v.                                                      Cause No. 16-cv-00318 JB/SCY

**BOARD OF REGENTS OF THE UNIVERSITY
OF NEW MEXICO d/b/a UNIVERSITY OF NEW
MEXICO HEALTH SCIENCES CENTER,**

    **Defendant.**

**DEFENDANT UNIVERSITY OF NEW MEXICO BOARD OF REGENTS' RESPONSE
BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
COMPLAINTS PRIOR TO 2006**

COMES NOW Defendant Board of Regents of the University of New Mexico ("UNM"), by and through its Counsel of Record, Park & Associates, L.L.C. (Alfred A. Park and Lawrence M. Marcus), and hereby files this Response Brief In Opposition To Plaintiff's Motion in Limine to Exclude Complaints Prior to 2006. For its Response, UNM STATES AS FOLLOWS:

**I. PLAINTIFF'S BEHAVIOR PRIOR TO 2006 IS RELEVANT TO UNM'S ARGUMENT THAT THE PSYCHOLOGICAL EVALUATION REQUIREMENT WAS JUSTIFIED**

Contrary to Plaintiff's contentions, Plaintiff's actions prior to 2006 are relevant to UNM's reasons for requiring a psychological evaluation. As Plaintiff notes, the Federal Rules of Evidence state that "[e]vidence is relevant if:

"**(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and

**(b)** the fact is of consequence in determining the action."

    Fed. R. Evid. R. 401

In the instant case, Plaintiff was told that, as a condition of having his appointment increased to near full-time, he would be required to undergo a psychological evaluation. This was because there was substantial concern about Plaintiff's unprofessional behavior. One example of this concern was an e-mail sent by Associate Dean for Clinical Affairs, Robert Bailey, M.D., describing the following issues involving Plaintiff between 2003 and 2006:

> a. A complaint made against Plaintiff to the accreditation organization called the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO" now "the Joint Commission") alleging unprofessional behavior;
> b. Approximately 10 patient complaints alleging that Dr. Rivero made disparaging comments about a patient's inability to speak English, Dr. Rivero's focus on money and payment, his dismissing of patients because of concerns that he would not be paid, and his anger management issues;
> c. A complaint to the US Department of Health & Human Services, Office of Civil Rights, alleging discrimination against a patient because he did not speak English; an extensive response was required;
> d. Complaints from a Coalition that advocated for improved healthcare for indigent and other patients;
> e. A complaint from an Indian Health Services physician in Chinle, AZ regarding a consult with Dr. Rivero;
> f. A complaint from a physician from the organization Healthcare for the Homeless regarding a PALS consult with Dr. Rivero;
> g. A complaint from the OR director involving anger management issues;
> h. A complaint from a surgeon regarding anger management;
> i. A request from the Patient Assistance Coordinator that he not have to interact with Dr. Rivero, prompted by previous interactions with Dr. Rivero.

Robert Bailey E-mail of Nov. 5, 2007, attached to UNM's Amended Motion and Memorandum for Summary Judgment [Doc. No. 143., filed Dec. 8, 2017] (hereinafter "UNM's MSJ") as Exh. C.

These actions are relevant, at the very least, even those incidents that occurred prior to 2006, because at least one UNM physician cited these incidents to explain why he opposed Plaintiff's return to UNM. These incidents make it more probable that UNM officials were genuinely concerned about Plaintiff's unprofessional behavior, and also make it more probable that UNM had good grounds for this concern.

In addition, even the episodes of unprofessional behavior that predate those described in Dr. Bailey's e-mail are relevant to this case. Evidence of Plaintiff's lack of professionalism dates back to 1993, and provides insight into Plaintiff's pattern of behavior as a physician. For instance, in 1993, Plaintiff unleashed a stream of obscenities in an operating room, and Plaintiff later dismissed this incident as mere locker room talk, and that this sort of language was "how men talk."Deposition of Dennis Rivero, M.D., attached to UNM's MSJ as Exh. A, P. 35, ll. 10-18. Moreover, in 1994, Plaintiff adamantly refused to be tested for methicillin resistant staphylococcus aureus ("MRSA"), a drug resistant infection. Exh. 2 to Rivero Deposition. These older incidents are relevant for several reasons.

First, while Plaintiff appeared to have improved his behavior between 1994 and 2003, there is a possibility that Plaintiff made an effort to behave in a more professional manner in order to improve his standing at UNM, and once his position was more secure, Plaintiff began to revert to his old unprofessional ways. The fact that there is evidence of unprofessional behavior at both the beginning and later on in Plaintiff's UNM career makes this possibility more probable. The idea that Plaintiff was reverting to an unprofessional past would place UNM's concerns about Plaintiff's lack of professionalism on even more solid ground and would provide increased justification for the psychological evaluation requirement.

Second, one of UNM's concerns about returning Plaintiff to a near full-time appointment was that Plaintiff had not shown adequate contrition for his earlier unprofessional behavior. *See, e.g.,* UNM's MSJ at 7, Undisputed Material Fact No. 31. Both of these earlier incidents were raised in Plaintiff's deposition, taken in 2017, and Plaintiff staunchly defended his actions regarding each of the incidents. As noted above, when questioned about his inappropriate language in the operating room, he dismissed it as locker room talk and indicated that this language was "how men talk." Plaintiff's opinion, even years later, regarding this incident, shows that UNM officials are correct, and that he was never contrite regarding his earlier unprofessionalism.

Further, Plaintiff also trivialized his refusal to be tested for MRSA. In so doing, he equated a simple test swab in his nose with being required to drop his pants. As late as 2017, Plaintiff vehemently defended this decision, indicating that he still believed it to be proper. Deposition of Dennis Rivero, M.D., attached hereto as Exh. A, P. 26, l. 13 – P. 28, l. 25. This is despite the fact that "CDC estimates that each year, in the United States alone, antibiotic-resistant bacteria cause more than 2 million illnesses and about 23,000 deaths." U.S Dept. of Health and Human Services, Center for Disease Control, "2017 Antibiotic Use in the United States: Progress and Opportunities," attached hereto as Exh. B., at 9. Quite simply, Plaintiff's very recent deposition testimony regarding these older incidents makes it more probable that Plaintiff was not truly contrite regarding his earlier lack of professionalism. As such, they are highly relevant to UNM's case.

Moreover, contrary to Plaintiff's contentions, the fact that Plaintiff was promoted to a full professorship in 2005 does not render the pre-2006 complaints irrelevant. Plaintiff is correct in that UNM notes in its Motion for Summary Judgment that he moved beyond earlier difficulties,

and became a more reliable employee, allowing him to be promoted twice. However, as noted above, it is possible that Plaintiff's improvements were anomalous, for the purpose of obtaining a more secure position at UNM, and that he then reverted back to unprofessional behavior. Given the complaints made against Plaintiff in 2006, it is certainly reasonable for UNM to have concerns that lack of professionalism was Plaintiff's standard behavioral pattern.

Secondly, while it is true that Plaintiff was promoted to a full professorship in 2005, hospitals in general have recently increased their focus on professionalism. Perhaps even more significantly, accreditation services for hospitals have also taken unprofessional behavior more seriously in recent years. For instance, in 2008, the Joint Commission, upon which UNM relies for accreditation, released a national Sentinel Event Alert noting that unprofessional behavior "undermine[s] a culture of safety," and instituted a new Leadership Standard that addresses disruptive and unprofessional behavior. Joint Commission Sentinel Event Alert of July 9, 2008, attached as Exh. D to UNM's MSJ. All of UNM's actions after that date, including the psychological evaluation requirement made in 2011, need to be viewed in light of chnages in attitude regarding professionalism.  Because of greater awareness of professionalism concerns, it would make sense for UNM to revisit Plaintiff's history when he was trying to return to full-time employment. Accordingly, these older complaints are very relevant to the instant litigation.

## II. THE PROBATIVE VALUE OF THE OLDER COMPLAINTS IS NOT OUTWEIGHED BY THE DANGER, IF ANY, OF UNFAIR PREJUDICE

Finally, contrary to Plaintiff's contention, the probative value of the older complaints described above is not substantially outweighed by any danger of unfair prejudice. The Federal Rules of Evidence state that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence." Fed. R. Evid. Rule 403. Significantly, in order to be excluded, the danger of unfair prejudice of the evidence in question must not only outweigh the evidence's probative value, it must *substantially* outweigh the prejudice: "it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. The United States Court of Appeals for the Tenth Circuit has reminded district courts that they should be mindful that exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." S.E.C. v. Goldstone, 233 F. Supp. 3d 1149, 1166 (D.N.M. 2017).

In Goldstone, this Court held that "[e]vidence is not unfairly prejudicial merely because it damages a party's case. Rather, to be unfairly prejudicial, the evidence must have an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Id. at 1166. In the instant case, UNM seeks to demonstrate that its psychological evaluation requirement was justifiable because Plaintiff has shown a pattern of unprofessional behavior during his medical career, and that he shows no contrition for this behavior. This is certainly a proper basis for decision. This pattern of unprofessional behavior is to be considered as a whole. Accordingly, any evidence that exemplifies this behavioral pattern, even if it is fairly old evidence, suggests decision on a proper basis. Conversely, information regarding Plaintiff's personality and behavior outside of his medical practice, while perhaps tangentially relevant, may possibly create the risk of unfair prejudice, because it could influence the finder of fact's emotional view of Plaintiff himself.[1] However, all of the evidence that Plaintiff seeks to exclude in the instant Motion concerns old Complaints regarding Plaintiff's unprofessionalism in the

---

[1] However, UNM does not concede that evidence of Plaintiff's personality outside of his employment should be excluded. While perhaps only tangentially relevant to the issue of UNM's liability, this evidence is entirely relevant to Plaintiff's claim for psychological damages.

6

context of his medical practice. Accordingly, they do not create the risk of undue prejudice, and any such risk is outweighed by the probative value of the evidence. Accordingly, it should not be excluded.

Moreover, Plaintiff's concerns that the pre-2006 complaints will confuse the jury are misplaced. "The danger of 'confusion of the issues' and 'misleading the jury' arise when circumstantial evidence would tend to sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue in the current case." Goldstone, 233 F. Supp. 3d at 1168 (citations omitted). As noted above, in the instant case, the facts at issue pertain to Plaintiff's history of unprofessional behavior and his lack of contrition. These pre-2006 complaints, as well as Plaintiff's more recent attitudes regarding those complaints, are more than tangentially related to this question; they are directly related to it. Accordingly, they should not be excluded pursuant to Rule 403.

### III. CONCLUSION

Contrary to Plaintiff's contention, complaints made against Plaintiff prior to 2006 are highly relevant to the reasonableness of UNM's requirement that Plaintiff undergo a psychological evaluation in order for his appointment to be increased. These complaints provide evidence of a pattern of unprofessional behavior on the part of Plaintiff, as well as a lack of contrition on his part. Moreover, any risk of unfair prejudice is outweighed by the probative value of this evidence. Accordingly, the Board of Regents of the University of New Mexico respectfully requests that this Honorable Court deny Plaintiff's Motion in Limine to Exclude Complaints from Prior to 2006.

PARK & ASSOCIATES, LLC

/s/Lawrence M. Marcus
Alfred A. Park
Lawrence M. Marcus
*Attorneys for Defendant Board of Regents of the University of New Mexico*
6100 Uptown Blvd., Suite 350
Albuquerque, NM 87110
(505) 246-2805

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF filing system to all counsel of record on this 12th day of January, 2017.

/s/Lawrence M. Marcus
Lawrence M. Marcus