IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DENNIS P. RIVERO, M.D.,

      Plaintiff,

v.                                       Cause No. 16-cv-00318 JB/SCY

BOARD OF REGENTS OF THE UNIVERSITY
OF NEW MEXICO d/b/a UNIVERSITY OF NEW
MEXICO HEALTH SCIENCES CENTER,

      Defendant.

**DEFENDANT UNIVERSITY OF NEW MEXICO BOARD OF REGENTS' RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW AS TO CERTAIN OF DEFENDANT BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO'S AFFIRMATIVE DEFENSES**

COMES NOW Defendant Board of Regents of the University of New Mexico ("UNM"), by and through its Counsel of Record, Park & Associates, L.L.C. (Alfred A. Park and Lawrence M. Marcus), and hereby files this Response Brief In Opposition To Plaintiff's Motion For Summary Judgment and Memorandum of Law as to Certain of Defendant Board of Regents of the University Of New Mexico's Affirmative Defenses. For its Response, UNM STATES AS FOLLOWS:

### I.  PLAINTIFF'S "UNDISPUTED MATERIAL FACTS"

1.  UNM does not dispute Plaintiff's Undisputed Material Fact No. 1.

2.  UNM disputes Plaintiff's Undisputed Material Fact No. 2. While Plaintiff was promoted to the rank of Professor, nothing in the letter attached as Exh. 14 indicated that he received "enthusiastic and often glowing recommendations from colleagues and peers." As Plaintiff, Dr. Rivero has the burden of production. Moreover, this fact is immaterial. After

Plaintiff was promoted, he began to exhibit increased incidents of unprofessional behavior. Additional Material Fact No. 1.

3.      UNM does not dispute Plaintiff's Undisputed Material Fact No. 3. However, UNM notes that this fact actually weakens Plaintiff's claims, as Plaintiff admits that he was never subjected to an adverse employment action.

4.      UNM does not dispute Plaintiff's Undisputed Material Fact No. 4. UNM adds that Plaintiff operated on patients with whom he had a pre-existing relationship, and assisted other UNM physicians. Additional Material Fact No. 2.

5.      UNM admits that Plaintiff attempted to increase his level of participation to closer to full-time. UNM disputes the inference that any agent of UNM "promised" him that he could return to full time, much less that this was contractually binding. Plaintiff merely had a conversation with Dr. Schenck and was told informally that he could return if he so desired. Moreover, this alleged Material Fact is not actually material. Plaintiff has not sued UNM for breaking a "promise," and the alleged Material Fact has no bearing on whether his claims under the Rehabilitation Act are time-barred or otherwise without merit.

6.      UNM admits that many UNM officials opposed Plaintiff's full-time return. However, UNM states that this is immaterial to his claims under the Rehabilitation Act, because this opposition was justified. *See, e.g.,* Additional Material Fact No. 1.

7.      UNM does not dispute that Dr. Rivero continued to work full-time in Oklahoma. However, UNM notes that this is immaterial to his history of unprofessional behavior at UNM. It is certainly immaterial to UNM's affirmative defenses concerning the statute of limitations.

8.      UNM does not dispute that Dr. Rivero filed a complaint with the Academic Freedom and Tenure Committee. UNM disputes that the "obstacles" to Plaintiff's return to full

time were unnecessary. Plaintiff's history of unprofessional behavior justified the opposition to Plaintiff's return to full-time work. *See, e.g.,* Additional Material Fact No. 1

9.     UNM admits Plaintiff's Undisputed Material Fact No. 9.

10.     UNM admits that Plaintiff received the Addendum described in Plaintiff's Undisputed Material Fact No. 10.

11.     UNM disputes whether the Addendum was materially different from that agreed upon by Plaintiff and Dr. Schenck. For the purposes of this lawsuit, the only relevant portion of the Addendum pertained to the four part examination by a board certified psychiatrist. Plaintiff explicitly agreed to four counseling sessions, and understood that these sessions would be carried out by a psychiatrist. Plaintiff was corresponding with a psychiatrist, Dr. Jeff Katzman, for this purpose. Additional Material Fact No. 3

12.     UNM disputes "Undisputed Material Fact No. 12." See Response to Undisputed Material Fact No. 11.

13.     UNM admits that Plaintiff would have been required to obey the terms of the Addendum had he returned to a 0.75 Full Time Equivalent ("FTE") employment. However, the only citation that Plaintiff has provided in support of this "undisputed material fact," UNM's Response to Request for Admission No. 17, provides no support for Plaintiff's claim that the Addendum was strict, draconian, and onerous. Such a claim is a matter of opinion in any event. Accordingly, that portion of Undisputed Material Fact No. 3 is disputed.

14.     UNM admits that Dr. Schenck did not consult any written policies prior to giving his recommendations for Dr. Rivero's return to near full time employment. However, Dr. Schenck did consult with other individuals, including the head of the Academic Freedom and Tenure Committee, prior to meeting with Plaintiff. Additional Material Fact No. 4. Moreover, Dr.

Schenck was a aware that UNM had enlisted mental health professionals, including a psychiatrist, to assist employees with professionalism issues. Additional Material Fact No. 5. Therefore, Dr. Schenck was aware that UNM did have, at least, informal policies regarding the use of mental health providers to assist with professionalism issues. In any event, the psychological evaluation was not Dr. Schenck's idea. Additional Material Fact No. 6. Accordingly, Plaintiff's Undisputed Fact No. 14 is immaterial to the question of whether UNM followed its policies.

15. UNM admits that Dr. Schenck admitted that the Addendum was "a little draconian." However, this is immaterial, as this is a matter of opinion, and Dr. Schenck did not draft the Addendum. Additional Material Fact No. 7

16-22. Plaintiff's Facts 16-22 are immaterial to this litigation, and UNM is not required to respond to them. These facts are the subject of another action current pending in state court, styled as _Rivero v. Bd. of Regents of the Univ. of N.M., et al._, *New Mexico State Cause No. D-202-CV-2011080104.* In addition, this Court should abstain from considering them because they are immaterial to the question of whether the psychological evaluation requirement violated the Rehabilitation Act.

23. UNM does not dispute that the affidavits described in Undisputed Material Fact No. 23 were filed, attesting to complete production of documents. However, UNM states that this is immaterial, as this complete production included many documents that provide ample support for the medical evaluation requirement. Additional Material Fact No. 8.

24. UNM does not dispute that Plaintiff included the language described in "Undisputed Material Fact" No. 24 in his Complaint, his deposition testimony, and his resignation letter. However, UNM disputes the factual basis behind that language, and notes that Plaintiff has not

included any evidentiary support for the allegations that he cited in Undisputed Material Fact No. 24.

25.   UNM does not dispute that, in his Complaint, deposition testimony, and resignation letter, Plaintiff stated that he subjectively believed that UNM became an "unendurable" place to work. UNM disputes that UNM was objectively unendurable for Plaintiff, and notes that he does not include any evidentiary support for any such objective claim.

26. UNM does not dispute that Plaintiff made the statements described in Undisputed Material Fact No. 26 regarding his subjective feelings in his resignation letter. UNM states that Plaintiff has not produced any evidence that would support the objective truth of these statements. Undisputed Material Fact No. 26 is thus disputed to the extent that it is intended to demonstrate any objective statement regarding Plaintiff's working conditions.

27. UNM does not dispute that Plaintiff filed an administrative claim with the EEOC, and that the EEOC decided not to pursue the claim.

28-30. UNM does not dispute the procedural history regarding the first Motion to Dismiss, as described in Undisputed Material Facts 28-30.

31. UNM admits that the Court granted in part Plaintiff's Motion to Amend. However, the Court denied this Motion in part, as well. The proposed Amended Complaint contained four causes of action. The Court only permitted one cause of action to be included in the Amended Complaint. Order Granting Motion to Dismiss [Doc. No. 24, entered Aug. 30, 2016] at 14-16.

32-38. UNM admits the procedural history regarding the First Amended Complaint and the Motion to Dismiss, as described in Undisputed Material Facts 32-38, but states that it is immaterial. While the Court denied the Motion to Dismiss regarding the First Amended

Complaint, this Court has the discretion to revisit that decision at any time, as set forth below in this Response.

39-40. UNM admits that it filed an answer to Plaintiff's First Amended Complaint, containing the described affirmative defenses.

41. UNM admits that Plaintiff sought factual explanations for its affirmative defenses.

42. UNM admits that, in support of its affirmative defenses pertaining to Plaintiff's failure to state a claim and the time-barred nature of Plaintiff's causes of action, UNM cited its Motion to Dismiss Plaintiff's Amended Complaint. However, this is immaterial. As set forth below, the order denying the Motion to Dismiss was non-final, and this Court can thus revisit the Order at any time. Moreover, more support for UNM's statute of limitations defense was later provided by Plaintiff himself, when he admitted that, at the time of that he filed his EEOC Complaint, he believed "very strongly" that his rights were violated. Additional Material Fact No. 9. Accordingly, UNM's statute of limitations defense is well supported.

43. UNM admits that it withdrew certain affirmative defenses. This is immaterial, because these defenses are not at issue in the instant motion.

44.  UNM admits that it responded to Interrogatory No. 2, with respect to Affirmative Defense No. XIII, with reference to its concerns about professionalism. However, UNM further discussed its policies concerning professionalism in response to Interrogatory No. 4, which contained a detailed description of professionalism issues and how it approaches them. Additional Fact No. 10. UNM further discussed the professionalism requirements instituted in or around 2008 by the Joint Commission, upon which UNM relies for accreditation. Additional Fact No. 11. Therefore, policy requires UNM to address professionalism concerns. UNM has provided evidence that, on a number of occasions, it determined that a psychological evaluation

is an appropriate means of addressing professionalism issues.   Additional Fact No. 12. Accordingly, Undisputed Material Fact No. 44 is technically true but immaterial, as UNM has provided substantially more information than Plaintiff implies.

45. UNM admits that it stated that it has no *set* policy regarding mental examinations. However, this is immaterial because UNM has strong policies regarding professionalism and has a history of using psychological evaluations to address concerns about professionalism. Additional Material Facts 10-12.

46. UNM admits that it answered Interrogatory No. 2, as it pertained to Affirmative Defense No. XIV, in the manner described by Plaintiff. However, this is immaterial because, as noted above, its Response to that Interrogatory, as it pertains to various other affirmative defenses, demonstrated that the psychological evaluation was job related and consistent with business necessity, given UNM's concern for professionalism. Accordingly, UNM acted consistently with its applicable statutory and contractual obligations, which allow medical examinations that are job related and consistent with business necessity.

47.     UNM admits Undisputed Material Fact No. 47, and does not plan to argue any previously unidentified affirmative defenses, unless additional affirmative defenses become known or available during trial based on unknown or unexpected witness testimony.

## II. ADDITIONAL MATERIAL FACTS

1.     After Plaintiff was promoted to full professor, he began to exhibit increased incidents of unprofessional behavior. *See, e.g.,* UNM's Amended Motion for Summary Judgment [Doc. No. 143, filed Dec. 8, 2017] at 4-6.

2.     While Plaintiff was working at a 0.05 FTE at UNM, he generally operated on patients with whom he had a pre-existing relationship, or else assisted other UNM physicians. Deposition of Dr. Dennis Rivero, attached hereto as Exh. A, P. 175, 1. 25- P. 176, 1. 20.

3.     After meeting with Dr. Robert Schenck in December, 2010, for the purpose of returning to full-time employment, Dr. Rivero began corresponding with a psychiatrist, Dr. Jeff Katzmann, for the purpose of meeting with him for counseling. Id., Exh. 13.

4.     Dr. Schenck consulted with other individuals, including Dr. Victor Strassburger of UNM Hospital's Academic Freedom and Tenure Committee, prior to meeting with Plaintiff to discuss his return to near full-time employment. Deposition of Dr. Robert Schenck, attached hereto as Exh. B, P. 105, l. 1 – P. 106, l. 16.

5.     Dr. Schenck was aware that UNM had previously enlisted mental health professionals, including a psychiatrist, to assist employees with professionalism issues. Id., P. 80, ll. 8-22.

6.     The psychological evaluations at issue were not Dr. Schenck's idea. Id., P. 119, ll. 7-10.

7.     Dr. Schenck did not draft the addendum at issue. Id., P. 113, ll. 7-16.

8.     The documents produced by UNM provided ample support for the psychological evaluation requirement. See, e.g., UNM's Amended Motion for Summary Judgment [Doc. No. 143, filed Dec. 8, 2017] at 4-6, and documents cited therein.

9.     At the time that he filed his EEOC Complaint, in January 2012, Plaintiff felt "very strongly" that his rights were violated. Rivero Deposition, P. 268, ll. 8-19.

10.     UNM's responses to Plaintiff's Interrogatory No. 4 contain a detailed discussion of the importance of professionalism, and demonstrate that unprofessional behavior is not tolerated

under UNM's policies. UNM's Second Supplemental Responses to Plaintiff's First Set of Interrogatories, Requests for Production, and Requests for Admission, attached hereto as Exh. C, at 4-8.

11.     UNM's answers to Interrogatory No. 4 also indicate that the Joint Commission, which provides accreditation to UNM, takes unprofessional behavior very seriously. Id.

12.     UNM's answers also show that it has a history of referring physicians exhibiting unprofessional behavior to mental health professionals for evaluation. Id. at 2-3.

### III.  PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO AFFIRMATIVE DEFENSES I-III

Contrary to Plaintiff's contention, this Court is not bound by the earlier Order [Doc. No. 43, entered Dec. 22, 2016] denying UNM's Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 33, filed Oct. 7, 2016], regarding Affirmative Defenses I-III. These Affirmative Defenses were as follows:

I.     Plaintiff failed to state a claim for which relief can be granted.

II.     Plaintiff's claims are barred by the statute of limitations.

III.     Plaintiff's claims are barred by the doctrine of laches and waiver.

UNM's Motion to Dismiss concerned these affirmative defenses, which collectively state that Plaintiff's claim for the allegedly improper psychological evaluation was time-barred, and that Plaintiff did not state a claim for constructive discharge. The federal Rehabilitation Act, which does not require exhaustion of administrative remedies, incorporates New Mexico's three year personal injury statute of limitations. Plaintiff based his Complaint on his claim that UNM violated the Rehabilitation Act by requiring him to undergo a psychological evaluation in early 2011, as a condition of an increase in his hours from 0.05 Full Time Equivalent ("FTE") to 0.75 FTE. When he refused to undergo the psychological evaluation, he remained employed at UNM,

at 0.05 FTE but without further difficulties, until he left UNM in May of 2014. Plaintiff alleges that he was constructively discharged when he received affidavits from two UNM employees stating that they had no further documents pertaining to his employment. These two UNM employees submitted these documents in January of 2014 in response to a mandamus action brought by Plaintiff seeking the release of all files pertaining to his employment. Plaintiff claimed that he then "became aware" that UNM supposedly had no justification for the psychological evaluation, and that this "awareness" caused his constructive discharge.

UNM moved to dismiss on statute of limitations grounds, noting that Plaintiff was aware of the psychological evaluation requirement no later than March 2011, at which time Plaintiff's claim accrued. Because Plaintiff did not bring the instant litigation until April 2016, Plaintiff's claims were time barred. The Court denied UNM's Motion to Dismiss Plaintiff's Amended Complaint. In so doing, it determined that Plaintiff's Complaint, while only explicitly claiming one cause of action, was best considered as two causes of action: one for the allegedly improper medical examination itself, and one for the constructive discharge. The Court stated that these causes of action accrued at two different times.

The Court held that the cause of action for the medical examination claim accrued in January 2014, when the affidavits were submitted, and that the cause of action for the constructive discharge accrued in May 2014, when Plaintiff actually resigned his employment. Order Denying Motion to Dismiss [Doc. No. 43, entered Dec. 22, 2016] at 8-9. However, as set forth below, this Court can and should reconsider that decision. Accordingly, summary judgment in Plaintiff's favor is inappropriate as to Affirmative Defenses 1-2, at least concerning Plaintiff's claim regarding the medical evaluation.

In its Order, the Court also stated that Plaintiff had stated a claim for constructive discharge, and that this claim was not time-barred, because his cause of action accrued when he resigned. Id., at 9. While it is clearly established that a claim for constructive discharge accrues when an employee resigns, this Court can and should overturn the portion of the Order that held that Plaintiff had stated a claim for constructive discharge. Accordingly, Plaintiff should not be granted summary judgment as to Affirmative Defense No. 1, concerning Plaintiff's claim for constructive discharge.

### A. THIS COURT IS NOT BOUND BY THE "LAW OF THE CASE" DOCTRINE REGARDING AFFIRMATIVE DEFENSES I-III; IT CAN AND SHOULD RECONSIDER EARLIER, NON-FINAL DECISIONS IN THE CASE

Contrary to Plaintiff's contention, this Court has the discretion to reconsider parts of the Order denying UNM's Motion to Dismiss, and to hold that Plaintiff's medical examination claims are barred by the applicable statute of limitations. In addition, the Court has the discretion to hold that Plaintiff failed to state a claim for constructive discharge upon which relief can be granted. The denial of UNM's Motion to Dismiss was a non-final order. Motions to reconsider final orders are only valid under certain circumstances, but when a court enters a non-final order, as is the situation in the present case,  it is free to reconsider that order for any reason at any time prior to the entry of a final order.

"A motion to reconsider any order that is not final is a general motion directed at the Court's inherent power to reopen any interlocutory matter in its discretion." Pedroza v. Lomas Auto Mall, Inc., 258 F.R.D. 453, 462 (D.N.M. 2009). As such, "district courts generally remain free to reconsider their earlier interlocutory orders. As Rule 54(b) states, if a court does not enter final judgment as to particular claims or parties in a multi-party or multi-claim case, then any order or other decision, however designated, that adjudicates fewer than all the claims or the

11

rights and liabilities of fewer than all of the parties *does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."* Id. (citations omitted) (emphasis added).

The Order denying the Motion to Dismiss was entirely interlocutory: it provided a final judgment as to none of the rights and liabilities of any of the parties. Accordingly, Plaintiff's claim that UNM's statute of limitations defenses are barred by the "law of the case" doctrine is without merit. The cases cited by Plaintiff in support of his "law of the case" claims are entirely immaterial to the instant case. Both of those cases concerned the question of whether an earlier appellate ruling could be overturned; neither discussed interlocutory district court orders. In U.S. v. Monsisvais, 946 F.2d 114, 115 (10th Cir. 1991), a criminal defendant appealed the denial of a motion to suppress evidence.  The Tenth Circuit reversed, holding that the evidence should have been suppressed. Id. On remand, the government moved for a supplemental hearing, requesting that it be permitted to introduce the evidence, and the district court granted this request, contrary to the Tenth Circuit's mandate. Id. The Tenth Circuit held that this was improper, based on the law of the case doctrine, holding that the district court "was obligated to follow *this court's* determination." Id. at 118 (emphasis added) The Tenth Circuit went on to state that "a different result would allow the district court to substitute its opinion for that of this court, which is what the law of the case doctrine is intended to avoid." Id. Quite simply, the law of the case doctrine is meant to require that district courts remain consistent with earlier *appellat*e rulings. It is not applicable to a district court's own non-final orders.

Similarly, in U.S. v. Alvarez, 142 F.3d 1243 (10th Cir. 1998), the Tenth Circuit considered another motion to suppress that had previously generated an appellate ruling. In that case, the district court had granted the motion to suppress, but that decision had been overturned

by another Tenth Circuit panel. Alvarez, 142 F.3d at 1246. On remand, the defendant brought a second motion to suppress, but the district court, in accordance with the Tenth Circuit's ruling, refused to revisit the issue. Id. The defendant appealed to the Tenth Circuit, which affirmed the district court's decision, as it was consistent with that of the earlier panel. Id., at 1246-48 Again, the law of the case doctrine was correctly invoked because of an earlier appellate decision, rather than an interlocutory district court ruling.

In fact, the Tenth Circuit has already considered the question of whether the law of the case doctrine, as stated in Monsisvais and Alvarez, is applicable to interlocutory district court rulings, and has already distinguished those two cases from those pertaining to interlocutory orders. Allison v. Bank One-Denver, 289 F.3d 1223, 1247 (10th Cir. 2002). In Allison, the Tenth Circuit upheld a district court decision on a cost award that appeared, at first glance, to contradict an earlier, oral ruling by the district court.  In so doing, the Court stated:

> Bank One claims that this ruling became the law of the case and, as a result, the district court could not "reverse" the ruling in the same case. Bank One's argument relies on cases that are relevant where a district court attempts to avoid a decision of a higher court in the same case, or perhaps where an appellate panel deviates from the decision of a prior panel. *See, e.g.,* United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir.1998) (reviewing exceptions in determining whether to depart from a prior panel decision);United States v. Monsisvais, 946 F.2d 114, 115-16 (10th Cir. 1991) (discussing law of the case in terms of district court adherence to appellate decisions). A lower court's ability to depart from its own prior decisions is discretionary.

289 F.3d at 1247.

Just as the district court in Allison had the discretion to overturn a prior trial court ruling, this Court has the discretion to overturn the Order denying UNM's Motion to Dismiss. Accordingly, summary judgment is inappropriate.

**B. PLAINTIFF FAILED TO STATE A CLAIM THAT WAS NOT BARRED BY THE STATUTE OF LIMITATIONS: BASED ON THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT, PLAINTIFF'S CAUSE OF ACTION BASED ON THE ALLEGEDLY IMPROPER MEDICAL EXAMINATION ACCRUED IN 2011**

Accordingly, this Court has the discretion to revisit the denial of the Motion to Dismiss, and to alter that decision so that it is more consistent with applicable law. For instance, in denying the Motion to Dismiss as to both of Plaintiff's causes of action, the Court held that the cause of action for the medical examination claim accrued in January of 2014. However, the weight of authority actually demonstrates that the claim accrued in March of 2011. Plaintiff alleges that he received the Addendum with this requirement at that time. It is true that the general rule states that a claim accrues when the plaintiff has a "complete and present cause of action," this occurs "when the plaintiff can file suit and obtain relief." Wallace v. Kato, 549 U.S. 384, 388 (2007). As noted above, in the context of a civil rights claim, the cause of action accrues, indicating a "complete and present cause of action" when the plaintiff finds out about the injury, not when the plaintiff obtains all relevant facts. *See, e.g.,* Baker, 991 F.2 at 632. Moreover, it is not even necessary for the plaintiff to be aware of facts that would indicate that an action violated his constitutional rights. For instance, an individual subject to an illegal search and seizure "had a complete and present cause of action" on the date of the seizure itself, not the date on which a court ruled that the seizure was illegal. Filer v. Polston, 886 F. Supp. 2d 790, 796 (S.D. Ohio 2012). This is because "the discovery rule hinges upon actual, as opposed to legal, injury." Id., citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1391, n.9 (3rd Cir. 1994).

The instant case is closely analogous to Filer. As noted above, the standard for accrual is the same for all civil rights cases. Therefore, just as a §1983 claim for an allegedly illegal search accrues on the date of the search rather than on the date of the discovery of the illegality, a

Rehabilitation Act claim for an allegedly improper medical examination requirement accrues on the date that the plaintiff was informed of the requirement rather than on the date that the plaintiff determines that the requirement was supposedly improper. It is undisputed that Plaintiff received the Addendum, and expressed concerns about its supposedly egregious language, no later than March of 2011. Accordingly, it is time-barred, so Plaintiff is not entitled to summary judgment as to the statute of limitations defense regarding that cause of action.

### C. FACTS OF THE CASE REVEALED THROUGH DISCOVERY INDICATE THAT PLAINTIFF'S MEDICAL EXAMINATION CLAIM ACCRUED IN JANUARY OF 2012

Moreover, even assuming, *ad arguendo*, that the allegations in plaintiff's complaint indicate that his medical examination claim accrued in January of 2014, the facts revealed through discovery demonstrate that Plaintiff's cause of action actually accrued at least two years earlier, in January of 2012. In his deposition, Plaintiff authenticated a charge of discrimination that he had submitted to the EEOC claiming that the psychological evaluation violated his rights under the Title I of Americans with Disabilities Act, in the same manner that his current Complaint alleges a cause of action under the Rehabilitation Act. This Charge did not toll the statute of limitations, as UNM is immune to claims under Title I of the ADA, and claims made under the Rehabilitation Act do not require that a plaintiff bring a prior administrative action. Rather, the charge demonstrates that, as of January 20, 2012, Plaintiff was not only aware of the psychological evaluation requirement, but he also believed that this requirement violated his rights. When questioned about this at his deposition, Plaintiff admitted that, at the time, he believed "very strongly" that his rights were violated. Additional Material Fact No. 9. Quite simply, it is clear from Plaintiff's own testimony as well as his Complaint that he had a complete and present cause of action no later than January 20, 2012, more than three years before he

brought his original complaint in the instant action. Accordingly, Plaintiff is not entitled to summary judgment as to UNM's statute of limitations affirmative defense.

## C. PLAINTIFF FAILED TO STATE A CLAIM FOR CONSTRUCTIVE DISCHARGE, SO SUMMARY JUDGMENT IS INAPPROPRIATE AS TO AFFIRMATIVE DEFENSES I & III

Moreover, while UNM concedes that Plaintiff's cause of action for constructive discharge did not accrue until Plaintiff actually resigned, it is clear that neither Plaintiff's complaint nor facts developed through discovery establish a claim for constructive discharge. While the undisputed material facts of the case certainly demonstrate that UNM is entitled to summary judgment regarding Plaintiff's constructive discharge claim, UNM also maintains that Plaintiff never stated a claim for constructive discharge. The Court denied UNM's motion to dismiss this issue. However, as noted above, the Court is free to revisit this interlocutory decision at any time.

In general, "[c]onstructive discharge occurs when an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit. A finding of constructive discharge depends upon whether a reasonable person would view the working conditions as intolerable, not upon the subjective view of the employee-claimant." MacKenzie v. City and County of Denver,  414 F.3d 1266 (10th Cir. 2005). "The bar is quite high" for proving constructive discharge. Garrett v. Hewlett–Packard Co., 305 F.3d 1210, 1221 (10th Cir.2002). Thus, Plaintiff must show that UNM took a deliberate action. Moreover, Plaintiff must also show that this deliberate action affected his actual working conditions, not his subjective view of those conditions.

In his Complaint, Plaintiff's sole claim regarding constructive discharge concerned the filing of affidavits by two UNM officials, in a state mandamus action, indicating that all

documents had been submitted. This convinced Plaintiff that UNM had no grounds for the psychological evaluation that it ordered Plaintiff to undergo as a condition of increased hours of employment. As a consequence, Plaintiff alleged that conditions had become intolerable. However, Plaintiff does not allege that the affidavits that UNM submitted actually affected his working conditions.  Rather, he only alleges that they affected his subjective view of those working conditions. Moreover, the submission of the affidavits was not a deliberate act by UNM, but an action ordered by the state Court, in response to an action brought by Plaintiff. Quite simply, the only deliberate act at issue in the instant case was the requirement that Plaintiff undergo a psychological evaluation. As described in UNM's Motion for Summary Judgment, this was not sufficient to allow for a constructive discharge claim.

However, even assuming for the purposes of the instant motion that the psychological evaluation requirement was sufficient to allow for a constructive discharge claim, Plaintiff simply waited too long to resign. If an employee does not leave his employment "within a reasonable time after last being the subject of discrimination, [the employee] cannot prevail under a constructive discharge theory." Smith v. Bath Iron Works Corp., 943 F.2d 164, 167 (1st Cir. 1991). Generally, courts have found no constructive discharge where there was a gap of several months between discriminatory conduct and resignation, and one court held that a two-week gap was sufficient to foreclose a claim. Id (collecting cases).

While the Court stated that "[w]hile UNM is correct that constructive discharge is viewed from an objective standpoint, it has not pointed out any case nor made any persuasive argument that a reasonable professional would not remain working to resolve an issue such as this and would feel that they had no choice but to quit upon learning that their employer had no basis for ordering psychiatric testing." However, as noted above, this Court can revisit that ruling. As

noted above, a claim for constructive discharge requires that working conditions become "so intolerable that the employee has no other choice but to quit." Order Denying Mot. to Dismiss, at 9. The fact that Plaintiff remained at UNM for three years after being given this supposedly onerous Addendum demonstrates that he clearly did not find the conditions so terrible that he felt he had no choice but to quit. Further, even assuming, *ad arguendo*, that it was the filing of the affidavits that supposedly rendered Plaintiff's working conditions intolerable, these affidavits were filed in January of 2014, yet Plaintiff did not resign his employment until May of that year. As noted in <u>Smith</u> and other cases, even that four-month gap is too long to allow for a claim of constructive discharge.

Moreover, while Plaintiff is correct in that his claim for constructive discharge is not barred by the statute of limitations, it could be said that he waived his claim by remaining at his position for over three years. Plaintiff correctly notes that, under <u>Green v. Brennan</u>, 136 S. Ct. 1769 (2016), a cause of action for constructive discharge accrues on the date of the plaintiff's resignation. However, this does not mean that a prospective plaintiff can toll a statute of limitations indefinitely by staying at a position that he later claims to be intolerable. Quite simply, Plaintiff failed to state a claim for constructive discharge, and clearly cannot argue that a position at which he remained for three years was intolerable. Accordingly, Plaintiff is not entitled to summary judgment as to affirmative defenses I-III.

## IV.  PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO AFFIRMATIVE DEFENSE XIII: UNM HAS SUBSTANTIAL FACTUAL SUPPORT FOR THIS DEFENSE

Moreover, contrary to Plaintiff's contentions, UNM has ample factual support for its Affirmative Defense No. XIII. This Affirmative Defense states that UNM "acted in accordance with its policies and regulations, and applied such policies and regulations consistently and

fairly." UNM has produced substantial evidence in support of that defense. It is true that UNM has no formal *set* policies pertaining to requiring physicians to undergo mental evaluations. However, UNM does have policies indicating that unprofessional behavior be addressed swiftly and decisively. Additional Material Fact No. 10. Moreover, the Joint Commission, upon which UNM relies for its accreditation, also requires that medical facilities address unprofessional behavior. Additional Material Fact No. 11. It is well settled that an employer can use psychological evaluations to determine the cause of unprofessional behavior without violating the Americans With Disabilities Act.  "Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims...." Lanman v. Johnson Cnty., Kan., 393 F.3d 1151, 1157 (10th Cir. 2004). Moreover, "[p]ersonality conflicts among coworkers (even those expressed through the use (or misuse) of mental health terminology) generally do not establish a perceived impairment on the part of the employer." Plaintiff had demonstrated episodes of severe unprofessional behavior, which UNM was required to address pursuant to its policies and those of its accreditation body. Additional Fact No. 8. Accordingly, UNM was acting consistently with those policies when it required the psychological evaluations at issue.

Moreover, it is irrelevant that UNM has no set formal policies governing when a physician exhibiting unprofessional behavior is referred to a mental health evaluation. It is sometimes hard to determine whether a pattern of unprofessional behavior is sufficiently severe to warrant such an evaluation, so developing a formal policy, covering all foreseeable contingencies, would be practically impossible. There is evidence, however, that psychological examinations are a reasonable part of UNM's arsenal for determining the causes of unprofessional behavior, as physicians have been referred to such examinations in the past.

Additional Fact No. 12. It is also irrelevant that Dr. Schenck did not consult any such policies. Dr. Schenck did not draft the Addendum, and did not suggest that Plaintiff undergo a psychological evaluation. On balance, it is clear that the psychological evaluations were consistent with UNM's policies concerning unprofessional behavior. Accordingly, Plaintiff is not entitled to summary judgment as to Affirmative Defense No. XIII.

### V.  PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO AFFIRMATIVE DEFENSE XIV: UNM HAS SUBSTANTIAL FACTUAL SUPPORT FOR THIS DEFENSE

Finally, contrary to Plaintiff's contentions, UNM has ample factual support for its Affirmative Defense No. XIV.  This affirmative defense states that "UNM fulfilled any and all obligations it had to Plaintiff under contract or statute." In its responses to Plaintiff's Interrogatories, UNM simply referred to the other affirmative defenses. Plaintiff now moves to strike this affirmative defense on the grounds that this is an insufficient response. However, the facts supporting the other affirmative defenses clearly also support UNM's defenses that it fulfilled its obligations under contract or statute. Plaintiff has not argued that UNM violated its contractual duties to him. Plaintiff continued to work at his 0.05 FTE appointment, for which his contract provided, until his resignation.

Accordingly, Plaintiff's cause of action rest of his allegations that UNM violated the Rehabilitation Act's prohibition of medical examinations by requiring him to undergo a psychological evaluation as a condition of increased hours. However, the Rehabilitation Act, like the Americans with Disabilities Act, allows medical examinations that are "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). UNM listed several affirmative defenses that are based on this exception. For instance, Affirmative Defenses V & VI state that "Defendant's alleged actions were motivated by legitimate business purposes" and that "[T]he

examinations in question were job-related, consistent with business necessity, and concerned Plaintiff's ability to perform the functions of his job," respectively. Answer to Plaintiff's First Amended Complaint [Doc. No. 45, filed Jan. 5, 2017]. Plaintiff's Motion seeks summary judgment as to Affirmative Defenses I,II,III,XIII, XIV, and XV, and confirmation that UNM has withdrawn Affirmative Defenses IV, and VIII. Plaintiff does not seek summary judgment as to Affirmative Defenses V and VI, as UNM has provided ample factual support for those defenses. Accordingly, UNM also has ample factual support for Affirmative Defense No. XIV, that UNM acted in accordance with its statutory obligations. Therefore, summary judgment is inappropriate as to that affirmative defense.

## VI. CONCLUSION

This Court has the discretion to revisit the earlier Order denying UNM's Motion to Dismiss Plaintiff's Amended Complaint and to find that Plaintiff's causes of action are barred by the statute of limitations and waiver. Moreover, Plaintiff admitted facts in his deposition that demonstrate that his claims are time-barred. Moreover, UNM has produced more than adequate evidence to support its affirmative defenses pertaining to its policy and its adherence to its statutory responsibilities. Accordingly, Defendant Board of Regents of the University of New Mexico respectfully requests that this Honorable Court deny Plaintiff's Motion for Partial Summary Judgment.

PARK & ASSOCIATES, LLC

  /s/Lawrence M. Marcus
Alfred A. Park
Lawrence M. Marcus
*Attorneys for Defendant Board of Regents of the University of New Mexico*
6100 Uptown Blvd., Suite 350
Albuquerque, NM  87110

21

(505) 246-2805

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF filing system to all counsel of record on this ___12th___ day of January, 2018.


 /s/Lawrence M. Marcus
Lawrence M. Marcus