1              IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF NEW MEXICO

3

4    DENNIS P. RIVERO, M.D.,

5         Plaintiff,

6         VS.                        NO. CV 16-0318 JB

7    BOARD OF REGENTS OF THE
     UNIVERSITY OF NEW MEXICO,
8
          Defendant.
9

10

11
          Transcript of Motion Proceedings before
12   The Honorable James O. Browning, United States
     District Judge, Albuquerque, Bernalillo County,
13   New Mexico, commencing on June 26, 2018.

14

     For the Plaintiff:  Mr. Eric Norvell
15
     For the Defendant:  Mr. Lawrence Marcus; Ms. Emma
16   Rodriguez

17

18

19

20
              Jennifer Bean, FAPR, RDR, RMR, CCR
21              United States Court Reporter
               Certified Realtime Reporter
22               333 Lomas, Northwest
              Albuquerque, NM  87102
23            Phone:  (505) 348-2283
               Fax:  (505) 843-9492
24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            THE COURT:  Good morning everyone.  I
2    appreciate everyone making themselves available to me
3    this morning.
4            All right.  The Court will call Dennis P.
5    Rivero, M.D. versus Board of Regents of the
6    University of New Mexico, Civil Matter No, 16-0318
7    JB/SCY.
8            If counsel will enter their appearances for
9    the plaintiff.
10           MR. NORVELL:  Eric Norvell for Dr. Dennis
11   Rivero, who is here today, Your Honor.
12           THE COURT:  All right.  Mr. Norvell, Dr.
13   Rivero, good morning to you.
14           And for the defendant.
15           MR. MARCUS:  Lawrence Marcus, your Honor.
16   And with me is Emma Rodriguez for the Board of
17   Regents for the University of New Mexico.
18           THE COURT:  Mr. Marcus, good morning to
19   you.  And what is your name?
20           MS. RODRIGUEZ:  Emma Rodriguez, Your Honor.
21           THE COURT:  Ms. Rodriguez, good morning to
22   you.
23           All right.  We're here on a number of
24   motions which have a number of issues.  So unless
25   somebody wants to introduce the issues we have today

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    a different way, I was going to suggest we just start

2    with the motion for summary judgment.  What I was

3    going to propose is each one of you sort of make a

4    little bit of an opening statement, and then let's

5    take these one issue at a time.  But if somebody

6    wants to do something different, we can do that.

7            Mr. Marcus, it's your motion, if you wish

8    to argue in support of it.

9            MR. MARCUS:  Thank you, Your Honor.

10            THE COURT:  Mr. Marcus.

11            MR. MARCUS:  This case concerns a former

12    surgeon at UNM, who admitted was a technically

13    proficient surgeon, but he had some issues with his

14    professionalism, some serious issues with his

15    professionalism and his interaction with patients,

16    nurses, and other members of the medical staff.

17            And he had left.  Dr. Rivero, the

18    plaintiff, had left UNM while these issues were

19    becoming more severe, which I will get into later.

20    This is a quick opening statement, so I assume you

21    don't want me to get into too much detail.  But he

22    left UNM, although he stayed -- he kept a .05

23    full-time equivalent at UNM after he moved to

24    Oklahoma.  But he came back one day a month to assist

25    with various surgeries that UNM needed his help with.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    He wanted to come back full-time, but then

2    the issues of his professionalism became a much

3    bigger problem.  Because if he was only there one day

4    a month, he wasn't running into the same problems

5    that he would have run into had he been full-time.

6    So when he wanted to come back full-time this raised

7    some issues.  And these professionalism issues caused

8    many meetings of the UNM, many members of the UNM

9    medical staff to have some serious reservations about

10   allowing him to come back full-time.

11   As a result, Dr. -- this went on for a few

12   years, a few years after he first attempted to come

13   back full-time.  Dr. Rivero met with Dr. Schenck to

14   try to come up with some sort of compromise, some

15   sort of method of resolving his professionalism

16   issues.  And Dr. Schenck and Dr. Rivero came to this

17   agreement that Dr. Rivero would have -- Dr. Schenck

18   is the chair of the orthopedics department, so it

19   was -- so he was very much involved with these

20   issues.  Dr. Schenck and Dr. Rivero agreed that the

21   plaintiff would attend four counseling sessions.  And

22   Dr. Rivero contacted a psychiatrist at UNM to set up

23   these counseling sessions.  This agreement was

24   memorialized with an addendum, which Dr. Rivero was

25   to attend a four-part psychiatric evaluation.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Dr. Rivero refused to sign this addendum because he

 2    felt this was -- even though it was basically what he

 3    had agreed to, he refused to sign it because he felt

 4    that it was a medical inquiry that was barred by the

 5    Rehabilitation Act.

 6              And after he refused to sign it, he then

 7    attempted to get his records.  And he continued to

 8    get -- he continued to work at UNM for the next three

 9    years after that, while he was attempting to get the

10    records.  When he finally received all -- what

11    appeared to be all of his records, he then quit, and

12    claimed that he was constructively discharged,

13    despite the fact that he had been working at UNM for

14    three years with no problems.  And he had been

15    working for one day a month, actually go back to

16    seven years, he'd been working one day a month for

17    seven years, and no one gave him any problems

18    whatsoever, he claimed that he was constructively

19    discharged.

20              Dr. Rivero brought the lawsuit as a result.

21    In this lawsuit he accuses UNM of requiring him to

22    undergo medical inquiry that was not permitted by the

23    Rehabilitation Act, and also that he was

24    constructively discharged when he quote/unquote

25    discovered that UNM didn't have any reason, in his

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    mind, in his subjective interpretation of his records

2    he felt that UNM did not have any reason to require

3    this inquiry.

4         Plaintiff's lawsuit has several major

5    issues, which I will get into in more detail later.

6    The first cause of action for his illegal medical

7    inquiry, for the allegedly illegal medical inquiry

8    was -- is barred by the statute of limitations

9    because he received the addendum, requesting that he

10   submit this inquiry as a condition of having his

11   hours raised.  He received this addendum in 2011, and

12   did not bring the litigation until 2016.  So there is

13   a three-year statute of limitations.  It's completely

14   time barred, Your Honor.

15        In addition, the allegedly illegal medical

16   inquiry was not actually illegal, because it was job

17   related and consistent with business necessity.  This

18   was an attempt to have plaintiff resolve his issues

19   with professionalism.

20        Regarding his claim for constructive

21   discharge, plaintiff was never deemed to have a

22   disability, and that's a prerequisite for any claim

23   for constructive discharge under the Rehabilitation

24   Act.  You can't be discriminating against a person

25   with disability if you don't believe -- the person

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   doesn't have a disability -- which he doesn't -- and
 2   if the person doesn't -- if the person isn't deemed
 3   to have disability.  And UNM never deemed him to have
 4   a disability.
 5          And secondly, plaintiff was never
 6   constructively discharged.  He did not have -- there
 7   was no harassment of any sort.  He came to UNM every
 8   month, one day a month.  He continued to work.  His
 9   work continued to be valued by UNM.  And no one ever
10   gave him any problems.  A constructive discharge is
11   when your actual working conditions are so
12   intolerable that you can't bear to attend work
13   anymore, you can't bear to come in.  And he didn't
14   have that problem, Your Honor.
15          And, therefore, both the plaintiff's causes
16   of action are without merit, and UNM is entitled to
17   summary judgment, as we will get into in great deal
18   later in this hearing.
19          Thank you, Your Honor.
20          THE COURT:  Thank you, Mr. Marcus.
21          Mr. Norvell, do you want to give me an
22   overview of where you're going with this motion for
23   summary judgment?
24          MR. NORVELL:  Yes, Your Honor.
25          MR. MARCUS:  In response to the motion for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    summary judgment, UNM would have the Court believe

2    that Dr. Rivero was broadly regarded as a problem

3    employee, a problem physician; that he was completely

4    unprofessional, and his job suffered because of it.

5    That's completely untrue.  Evidence presented to the

6    Court shows that his relationships with colleagues

7    and his work was unparalleled as a physician, as an

8    orthopaedic surgeon.  He was highly regarded as an

9    orthopaedic surgeon, one of the best in the

10   southwest.

11           His relationships with his nurses, with

12   staff, with patients, all of that has been shown with

13   evidence presented to the Court to be true; that he

14   was not, in fact, suffering from professionalism

15   issues.

16           Dr. Rivero has brought these claims against

17   UNM for an illegal medical inquiry, for constructive

18   discharge, and also for an unaddressed retaliation

19   claim based on the fact that the agreement referenced

20   by Mr. Marcus that was reached between his department

21   chair and himself, between Dr. Rivero and his

22   department chair in December of 2010, the agreement

23   did warrant four counseling sessions and was

24   structured for success.

25           Dr. Rivero received the addendum, which was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1 starkly different from that agreement.  It required

2 psychiatric examinations, which the defendant itself

3 admits, in response to one of the motions in limine,

4 to indicate a severe mental impairment.  These were

5 not counseling sessions.  This was an overly broad

6 document that sought to invade Dr. Rivero's privacy.

7 It was not tailored toward any aspect of counseling

8 that the parties had agreed upon, which Dr. Rivero

9 agreed to as a condition in December 2010, of

10 returning.  It was, frankly, just to improve patient

11 interactions.

12         When Dr. Rivero received the addendum, he

13 was shocked by it, and did not understand why it was

14 so broad and so invasive and without any limitation,

15 and why it was a requirement that he take -- that he

16 submit to psychiatric examinations; that he pay for

17 it; and that he waive all of his rights under the

18 addendum, all of his rights, including constitutional

19 rights.

20         So he undertook an endeavor to find out the

21 basis for this.  He sought to review the documents

22 that were in his credentialing file, which he felt

23 made -- if there was anything there to substantiate

24 it, that would be a place to start.

25         He was stonewalled by UNM.  They interfered

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   with his ability to access his own files.  They went

 2   silent.  Dr. Schenck withdrew the addendum.  And Dr.

 3   Rivero had to file an action in state court to access

 4   those files.  That litigation, which was ultimately

 5   deemed to have been wrongfully defended by UNM

 6   ultimately resulted in the court issuing the order to

 7   release those documents, and to certify that all

 8   documents had been released.

 9          When the certification was received from

10   physicians Dr. John Trotter and Dr. Bailey,

11   administrators at UNM, Dr. Rivero realized there was

12   nothing there to substantiate that oppressive

13   addendum, and therefore, he felt as though, you know,

14   there is no basis for it.  That's when the claim

15   accrued under the statute of limitations for the

16   illegal medical inquiry, for the discrimination under

17   that particular statute.

18          He left UNM in January, never returned, and

19   he tendered his formal resignation, constructive

20   discharge in May of 2014.  As argued in the response

21   for the motion for summary judgment, with respect to

22   the statute of limitations, Judge Lynch had ruled

23   during motion to dismiss stage that the statute of

24   limitations was adequately -- that the claims were

25   filed timely.

SANTA FE OFFICE                                                         MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                       1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                               e-mail: info@litsupport.com

1           Nothing has changed.  Through discovery no

2     facts have changed.  There has been nothing

3     introduced to change that.  There has been no change

4     in the law.  There has been no change in factual

5     evidence presented.  Nothing.  And the Law of the

6     Case Doctrine would warrant that Judge Lynch's logic

7     proceed forward.

8           Additionally, under the Green case, Green

9     versus Brennan, it's very clear that the two-step

10    process of filing a discrimination claim, and then

11    returning to amend to include a constructive

12    discharge claim is not the process that the Supreme

13    Court adheres to under these types of claims under

14    the Rehabilitation Act, under a constructive

15    discharge claim.

16          With respect to the constructive discharge

17    claim itself, there is a question of fact as to

18    "regarded as."  It is not as Mr. Marcus has said

19    deemed to be disabled; it is regarded as.  And the

20    actions of UNM, taking the addendum on its face, in

21    its breadth and its overbreadth and its lack of

22    narrowness, which is required for a so-called fitness

23    for duty or any other examination that would be

24    proper, it's overly broad.

25          Defendant would have the Court believe that

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    that single instance is not enough to give rise to a

2    discriminatory action.   However, in the cases that

3    they cited, there is no indication of the type of

4    examination submitted in any of their cases resembles

5    the breadth and invasiveness of this.

6              Additionally, Dr. Schenck in his statements

7    of deposition stated that stress was a consideration,

8    and that Dr. Rivero -- he was concerned that Dr.

9    Rivero's reaction to stress was a disabling condition

10   that would make it more difficult for him to succeed

11   in returning to UNM.   Those give rise to a question

12   of fact as to the "regarded as disabled" aspect of

13   constructive discharge.

14             Let me check my notes, Your Honor, I

15   apologize.

16             Real quickly, with regard to the illegal

17   medical inquiry within the addendum, a review of the

18   addendum shows its broad oppressiveness, and shows

19   that, really, it's too general to be permissible

20   under the Rehabilitation Act and the Americans with

21   Disabilities Act, which is incorporated into the

22   Rehabilitation Act.

23             With respect to the unbearable working

24   conditions, the conditions under which Dr. Rivero had

25   suffered relate initially to a dispute from 2003 with

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Dr. Pitcher, and proceeded forward throughout the

2    years, from the time that he reduced his time to go

3    into private practice to a .05, and then to return

4    to -- attempt to return to .75.  These administrative

5    vendettas continued.  Dr. Schenck, who claimed to be

6    his advocate, was misleading him and flip-flopped in

7    his position of being an advocate for Dr. Rivero's

8    return.

9            Additionally, the withholding and the

10   frivolous defenses submitted in litigation made it

11   very difficult for Dr. Rivero, especially given that

12   there was no basis for the addendum, made it very

13   difficult for Dr. Rivero, and unbearable for anyone

14   in a similar situation to possibly return.

15           That's my overview, Your Honor.  And I'm

16   willing to submit to questions at your leisure.

17           THE COURT:  All right.  I'll have some in a

18   moment.  Thank you, Mr. Norvell.

19           Mr. Marcus, anything else you want to say?

20   And then I'd like to go into the facts, unless you

21   have something else you want to say from an overview

22   or summary standpoint.

23           MR. MARCUS:  Everything I was going to say,

24   Your Honor, we can discuss in the factual portion.

25           THE COURT:  All right.  Let's get into the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    facts.  I haven't mastered these facts because there

2    are a lot of them.  But my sense is that, at least on

3    your statement of the facts, there were not a lot of

4    disputes about your statement of the facts.  There

5    was a lot of contentions that some of them are

6    irrelevant, immaterial, those sort of things, but not

7    a lot of disputes.  How would you characterize the

8    response on the factual record that you received to

9    your statement of the facts?

10          MR. MARCUS:  I would characterize the

11   response as consisting largely of arguments of

12   counsel rather than actual substantive disputed

13   facts.

14          THE COURT:  Let's go to the large number of

15   facts that the plaintiff then put into the record in

16   his response.  I haven't really mastered your

17   response back.

18          Are you disputing a lot of what he's

19   putting into the record as facts or, again, are you

20   just characterizing many of them as irrelevant?

21   What's your posture with the large number of facts

22   that he put into the record?

23          MR. MARCUS:  I'm disputing most of them as

24   irrelevant.  He cited many statements made by people

25   who did like Dr. Rivero, saying that -- sort of

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                   1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE                        e-mail: info@litsupport.com

```
1    praising him.  But at the same time, most of those
2    statements -- just because some people like somebody,
3    that doesn't mean that he wasn't running into lots
4    and lots of trouble with other people, and that this
5    trouble could have jeopardized his surgical career,
6    could have jeopardized his relationship with UNM and
7    UNM's legal status.
8            And, Your Honor, I think most of the
9    statements brought in from people who liked him, yes,
10   of course, they're friends.  I think that it's
11   irrelevant to his overall professionalism.
12           THE COURT:  You're saying they're
13   irrelevant, but you're not disputing them either?  Is
14   that a fair characterization of most of these facts
15   that he's putting in?
16           MR. MARCUS:  I'm not disputing that these
17   people said -- made these statement at their
18   depositions.
19           THE COURT:  All right.  Thank you,
20   Mr. Marcus.
21           Mr. Norvell, what do you see as -- do you
22   see factual issues really blocking the ability of the
23   Court to reach the legal issues, or do you see some
24   genuine issues of material fact that are going to
25   preclude the Court from getting to the legal issues
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    here?
 2              MR. NORVELL:  When you say the Court --
 3    preclude the Court from getting to legal issues --
 4              THE COURT:  Yeah, I mean, are there some
 5    factual issues here that are so important that
 6    they're going to keep the Court from getting to the
 7    legal issues that these motions raise?
 8              MR. NORVELL:  I think that the factual
 9    issues that the -- the defendant cherry-picks
10    particular emails in order to portray Dr. Rivero as
11    having acted unprofessionally.  I attempt to flesh
12    that out in my response by saying, look, that's not
13    the entire context of things.
14              Dr. Rivero was never disciplined.  He was
15    never suspended.  All of these so-called complaints
16    from people have a fuller story, none of which
17    resulted in a finding of fault, harm, or other blame
18    to Dr. Rivero.  He was exonerated in every instance.
19              UNM is attempting to have their cake and
20    eat it too here with respect to, in particular,
21    complaints from a patient advocate named Willie
22    Barela for example.  I'm sure the Court has reviewed
23    those.  On the one hand, UNM is saying, Well, you're
24    just looking at Dr. Rivero's response to Willie
25    Barela as being problematic.  Two issues there.  One,
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                 1-800-669-9492



 1   Willie Barela was a patient advocate, and similar to

 2   the Fritch (phonetic) case that's cited by the

 3   defendant, an advocate should be able to withstand

 4   the conflict that arises in that position.

 5             Secondly, while it says that it's only

 6   looking at the responses to Willie Barela, it's

 7   emphasizing that these complaints -- and attempting

 8   to persuade the Court that these complaints, which

 9   were not investigated and not substantiated, had

10   grounding and were the reason for these

11   professionalisms that gave rise to this notion of

12   this overly broad addendum that UNM attempted to

13   impose on him.

14             So the facts of professionalism, I think,

15   are very much in dispute.  I don't think that it's

16   the type of clear-cut factual issue that could be

17   decided at the summary judgment stage, and should be

18   preserved for a jury.

19             With respect to the statute of limitations,

20   those are -- the Court would -- if it would please

21   the Court, our position is that has already been

22   decided, and nothing has changed with respect to the

23   legal analysis the facts presented, or any other

24   aspect of it.  Green versus Brennan is the most

25   recent case.  And that's the consideration for the

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                   1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                              e-mail: info@litsupport.com

```
 1   case.

 2           With respect to constructive discharge, I

 3   believe there are questions of fact as to whether UNM

 4   regarded Dr. Rivero as disabled.  And from our

 5   position, the working environment was unbearable for

 6   a person in Dr. Rivero's position, a man whose

 7   reputation was unparalleled in the community as an

 8   orthopaedic surgeon, and suddenly is being subjected

 9   to slander.  He's getting impeded from determining

10   whether there is any merit to the addendum.  His

11   so-called advocate, Dr. Schenck, flip-flopped on him.

12   You know, those sorts of facts; the litigation

13   impediment, that which, from a legal standpoint could

14   be seen as an almost equitable estoppel position, in

15   that Dr. Rivero was precluded from really making a

16   determination of discrimination, until such time as

17   all of that played out.  I think those are facts that

18   are also up in the air for a jury to determine.

19           Additionally, there is really no clarity as

20   to what professionalism means.  UNM has made that a

21   moving target.  And it would seem that a jury would

22   be in a position to determine the veracity and

23   credibility of their position as to professionalism.

24           Dr. Rivero has never -- his work -- his

25   essential job functions had never been at issue.  He
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    continued to perform his job as an orthopaedic

2    surgeon, not only at UNM, but full-time in Oklahoma

3    as well, without any sort of complaint, without any

4    deterioration.  UNM can present no evidence that they

5    ever did, in fact, find any deterioration of his

6    essential job duties.  They can also not cite

7    necessarily that -- and it's a question of fact

8    whether the professionalism claim constitutes an

9    essential job function.  I think that's a

10   determination to be made by a fact finder at trial.

11           Furthermore, the facts of the extent of the

12   overbreadth of the addendum is something that is

13   certainly preserved for trial, because there are

14   questions as to its reasonableness and its

15   overbreadth, when looked at in the context of the

16   legal requirement that it be more narrow to befit the

17   particulars of an approach to what, ostensibly,

18   defendant wanted to do, which was improve

19   professionalism.  That's not the case.  And we argue

20   that it's clearly not the case.

21           So we think that there are -- those are

22   essentially the issues of fact that -- when you say

23   preclude the Court, I'm presuming you mean yourself,

24   Your Honor, at the summary judgment stage.  I think

25   that there are issues of fact that we have presented

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    that would preclude summary judgment at this stage,

2    and should be preserved for trial in front of the

3    jury.

4              THE COURT:  Well, what do you think is the

5    biggest issue of fact?  What is it that, when you

6    look at their facts, the defendant's facts, your

7    facts, all the facts that are being presented, what

8    do you think is an issue of fact that precludes the

9    Court from deciding the legal issues that are in this

10   motion?  Can you think of one where y'all simply

11   don't agree that that occurred?

12             MR. NORVELL:  Well, Mr. Marcus would

13   present any number of the complaints submitted by

14   Willie Barela.  For example, there is a fact

15   presented by UNM with respect to Dr. Rivero and a

16   patient, an intravenous drug user, claiming that Dr.

17   Rivero compared him to a monkey.  And there was an

18   interaction in which Dr. Rivero attempted to explain

19   the power of addictiveness, and explained in

20   deposition his hesitancy to perform surgery on

21   recovering addicts, due to the potential for

22   infection on prosthetic limbs.  Is there a fact --

23   there are several of them frankly along those lines,

24   where they're just not fleshed out by defendant, and

25   the fuller story indicates that Dr. Rivero did

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   nothing wrong, did not act unprofessionally.  He was
 2   simply -- the complaint was made.  Willie Barela made
 3   it.  UNM took it at face value.  It was never
 4   investigated.  And Dr. Rivero's defense was never
 5   followed.  Therefore, how can there be a truly
 6   sensible determination of an unprofessional action,
 7   if all the complaints that were made were
 8   unsubstantiated?
 9              THE COURT:  All right.  Thank you, Mr.
10   Norvell.
11              Anything else you want to say on the facts,
12   Mr. Marcus?
13              MR. MARCUS:  Thank you, Your Honor.
14              I'd like to discuss the statute of
15   limitation issue first.
16              THE COURT:  All right.
17              MR. MARCUS:  I'd like to do a quick
18   timeline, Your Honor.
19              THE COURT:  Okay.
20              MR. MARCUS:  Plaintiff received the
21   addendum -- I think it's best to consider this case
22   as two different causes of actions, the way Judge
23   Lynch did.  First, for the medical inquiry itself,
24   and secondly, for the alleged constructive discharge.
25              Regarding the medical inquiry, I think the

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                            FAX (505) 843-9492
                                                                                    1-800-669-9492
                                                                          e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    statute of limitations argument is very simple and

2    pretty clear.  Plaintiff received the addendum in

3    March of 2011.  And around that time -- and he

4    testified at his deposition that at about that time

5    he believed very strongly that his rights were

6    violated.  At that point for the allegedly illegal

7    medical inquiry, he had a complete and present cause

8    of action as described in the Green versus Brennan

9    case where Justice Sotomayor said when a plaintiff

10   can file suit and receive relief.  He had everything

11   he needed to do to file the complaint regarding the

12   allegedly illegal medical inquiry.  However, he did

13   not file the complaint for the allegedly illegal

14   medical inquiry until 2016, I think April or May of

15   2016, more than five years after he received the

16   addendum.  And the case law is clear, Baker versus

17   Board of Regents of the State of Kansas, and any

18   number of other cases, the cause of action accrues

19   when the action takes place.  And apparently,

20   plaintiff believed that he had a cause of action, he

21   believed his rights -- he believed very strongly, he

22   said at deposition, that his rights were violated.

23          So, Your Honor, I think he filed a

24   Rehabilitation Act claim five years after he received

25   the addendum.  That is -- that's a clear time bar,

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                         1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1    Your Honor.  Absolutely no question about that.

2              And regarding the constructive discharge, I

3    think --

4              THE COURT:  Well, let's take that first

5    issue.  What did Judge Lynch do with -- it tested me

6    to get through all the filings for today's motions,

7    so I didn't get to go back and look at his opinion.

8    What did he do with that issue?  And why did he not

9    dismiss it earlier in the case on that ground?

10             MR. MARCUS:  Well, of course, it was based

11   simply on the allegations of the complaint.  And what

12   he said was that the cause of action for the

13   allegedly medical inquiry did not accrue until

14   January of 2014, which would make it not time-barred.

15   And the reason for that decision was it wasn't until

16   January 14 that plaintiff received his entire file,

17   and received an affidavit stating that he had his

18   entire file.  But that's not necessary.

19             First of all, as you know, you can -- this

20   Court can revisit an old decision of a district court

21   at any time.  It was not a final decision, it was not

22   an appellate decision.  The Court has the ability to

23   do that.

24             And the law of the case -- the plaintiff

25   has misinterpreted the Law of the Case Doctrine,

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                   1-800-669-9492
                          
                                                            e-mail: info@litsupport.com
                    BEAN
                  & ASSOCIATES, Inc.
                 PROFESSIONAL COURT
                   REPORTING SERVICE

1   which generally only applied to appellate decisions.

2   Let's say this case were appealed and the Tenth

3   Circuit said something, the district court could then

4   go against what the Tenth Circuit said.  And that's

5   the issue.  It was a nonfinal order, an interlocutory

6   order, which the district court can revisit at any

7   time.  And we have some new evidence -- we have

8   plaintiff's deposition in which he said prior to --

9   more than three years prior to bringing up this

10  litigation, he believed very strongly -- in his

11  deposition he stated that, that his rights were

12  violated.  And --

13          THE COURT:  What was it about getting all

14  his medical records that caused Judge Lynch to think

15  that was the date that his cause of action accrued?

16          MR. MARCUS:  He seemed to -- Your Honor, it

17  was actually his employment file.  And he seemed to

18  think that he didn't have a complete and present

19  cause of action until that time.

20          And frankly, with all due respect, and I

21  sincerely apologize for making this statement about

22  another member of the bench, but I think that Judge

23  Lynch made a mistake, he made an error in that

24  regard.  And Your Honor, with all due respect to him,

25  I think that error should be reversed.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            THE COURT:  All right.  Anything else on

2   that cause of action and the statute of limitations?

3            MR. MARCUS:  On the statute of limitations,

4   no.

5            THE COURT:  All right.  Let me hear from

6   Mr. Norvell on that aspect, then.  Mr. Norvell.

7            MR. NORVELL:  Yes, Your Honor.

8            Mr. Marcus is accurate in that Judge Lynch

9   ruled --

10            THE COURT:  You know, I'll say this:  One

11   thing is to talk about a motion to dismiss, the

12   statute of limitations, is the plaintiff is usually

13   in control of the pleading.  And oftentimes, it's

14   difficult for a defendant to get a complaint

15   dismissed on statute of limitations, because if you

16   don't put any dates in there, you don't want to make

17   it easy for them.  I've held that you don't have to

18   make it easy for them.  So it's tough in this

19   circuit, and particularly with me, to get statute of

20   limitations issues decided at the motion to dismiss

21   stage, unless the plaintiff wants to tee it up and

22   find out early on whether they've got a time problem.

23            MR. NORVELL:  Dates were certainly part of

24   the motion to dismiss.  Judge Lynch -- contrary to

25   what Mr. Marcus says, Judge Lynch had in his order
```



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                                1-800-669-9492
PROFESSIONAL COURT                          e-mail: info@litsupport.com
REPORTING SERVICE

BEAN
& ASSOCIATES, Inc.

1    denying the motion to dismiss considered all of the

2    aspects that Mr. Marcus just stated.

3              The EEOC complaint was not some new piece

4    of evidence that came out in discovery.  All that Dr.

5    Rivero did was confirm that that was filed.  Judge

6    Lynch considered the filing of the EEOC complaint in

7    2012.  He considered the timeline that discovery

8    simply confirmed.  There have been no new facts that

9    would change the arguments with respect to the

10   statute of limitations.

11             In fact, the law, as of May of 2016, under

12   Green versus Brennan, very clear supports the

13   position that Judge Lynch found that they were timely

14   filed.

15             January 2014, when UNM signed the

16   affidavits certifying that complete production had

17   occurred, and Dr. Rivero was unable to determine that

18   there was any basis for addendum, Judge Lynch said,

19   Well, that's when it accrued.

20             Nothing has changed.  Those facts remain

21   consistent and supported by evidence of record now.

22   May 2014, Dr. Rivero resigned; that's the

23   constructive discharge, that fact has never changed.

24   The timeline is simply straightforward, supported by

25   all of the facts that were present and assumed to be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

27

```
1    true at the motion to dismiss stage.  They're
2    confirmed by record evidence now.  Dr. Rivero did not
3    have a complete picture of the reason for the
4    addendum.  Judge Lynch acknowledged that.  Nothing
5    has changed.  There have been no changes at all.
6              And so the motion to dismiss, I think,
7    withstands any attempt for revisitation by
8    defendants.  All the law cited by the defendant
9    predates Green.
10             Additionally, Dr. Rivero may have believed
11   there was a cause of action, but he did not know.
12   And Judge Lynch took that into consideration in his
13   determination during the motion to dismiss stage.
14             THE COURT:  Well, I guess I'm struggling a
15   little bit to figure out why him getting his
16   employment file, getting all the records in the
17   employment file would be the triggering date for a
18   cause of action for the medical inquiry claim.  It
19   seems to me that unless you're trying to get some
20   tolling doctrine, the production of the employment
21   file is not going to be a particularly important
22   date.  What would be important is -- what you're
23   saying is the wrong, and when the harm occurred.  And
24   that would be much earlier, at the time the addendum
25   was presented.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. NORVELL:  It's not simply an employment
 2    file.  It's a credentialing file that would contain
 3    all of the -- any supporting document that would give
 4    a basis for the presentation of the addendum, and the
 5    imposition of a broad psychiatric examination.
 6              When Dr. Rivero challenged UNM on the basis
 7    for it, to seek documents that would support their
 8    position that he needed to submit to this invasive
 9    psychiatric, four-part battery of psychiatric
10    examinations, they refused him access.  They blocked
11    him.  Litigation had to be commenced.  UNM posited
12    frivolous defenses.  They were sanctioned with
13    attorneys' fees by the state court.  To the extent
14    that we're looking at an equitable estoppel argument,
15    I think that we have some aspect of that, in that UNM
16    attempted to preclude Dr. Rivero from finding out and
17    from seeking what he was entitled to as an employee
18    at UNM.
19              That information would have been -- if
20    Dr. Rivero had found some basis for the psychiatric
21    examination, that would have changed the whole
22    picture.  But there was none.  UNM certified that all
23    documents had been produced.  There was no basis for
24    it.  And the value of those documents was a
25    confirming factual basis -- not only a legal basis, a
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                         1-800-669-9492



PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

1    confirming factual basis -- that there was no

2    underlying rationale behind presenting the

3    psychiatric examination.

4              THE COURT:  All right.  Thank you, Mr.

5    Norvell.

6              Anything else you want to say on that --

7    statute of limitations, on that claim, Mr. Marcus?

8              MR. MARCUS:  Yes, Your Honor.

9              First of all, Mr. Norvell never raised a

10   tolling argument in his briefing.  He never raised

11   any sort of equitable tolling argument in his

12   briefing.

13             Secondly, there is no equitable tolling

14   argument because plaintiff had every -- had all that

15   he needed to know to file a cause of action.  As

16   plaintiff's counsel pointed out, he filed an EEOC

17   complaint.  Now, this EEOC complaint was for the

18   Americans With Disabilities Act, which doesn't apply

19   to UNM as a state entity.  But it didn't toll the

20   proceedings, because an administrative procedure is

21   not a prerequisite for a claim under the

22   Rehabilitation Act.  So, therefore, it doesn't toll

23   the claim under the statute of limitations of the

24   Rehabilitation Act.  That's a straight three years,

25   Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            Secondly, as stated before, plaintiff did
 2    strongly believe that his rights were violated.  He
 3    could have filed a suit back in 2011, or early 2012.
 4    He could have filed it then.  And then he could have
 5    engaged in discovery to get his file.  The mandamus
 6    action that plaintiff's counsel describes, that I
 7    think is somewhat irrelevant to these proceedings,
 8    and I think it's covered by a current pending action,
 9    which I -- it's a little tricky to deal with, but I
10    believe that the reason why UNM didn't provide his
11    file at the time, they were concerned about ROIA.
12    But if he had filed a lawsuit, he could have --
13            THE COURT:  They were worried about what?
14            MR. MARCUS:  The Review Organizations
15    Immunity Act, which makes it -- provides penalties
16    for providing a peer review file at a medical
17    institution to the wrong people.  And plaintiff and
18    his lawyers, they were concerned -- they were
19    concerned that they were going to be violating this
20    act.
21            And if plaintiff had filed a lawsuit, on
22    the other hand, he could have obtained all these
23    documents in discovery.  He could have filed a
24    lawsuit upon information and belief they had no
25    reason to do this, upon information.  And plaintiffs
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    do that all the time.  As we point out, you don't

2    have to make it easy, you don't have to add all of

3    the details in there.

4            So there was no equitable tolling, because

5    you don't have an equitable tolling argument if the

6    defendant does take some affirmative steps to prevent

7    the plaintiff from finding out that they did

8    something that the plaintiff believed to be illegal.

9    And plaintiff knew that he had -- he believed it to

10   be illegal.  We don't believe it to be illegal, but

11   he had a medical inquiry in March of 2011, Your

12   Honor.  And at the time he believed that his rights

13   were violated.  That's all he needed, Your Honor, to

14   bring the instant litigation.

15           Nothing that UNM did prevented him from

16   bringing the litigation within the three year statute

17   of limitation.  And, therefore, there is no tolling.

18   The cause of action accrued in 2011.  The claim for

19   the allegedly illegal medical inquiry is clearly

20   time-barred.

21           THE COURT:  All right.  Do you want to go

22   to the statute of limitations on the constructive

23   discharge claim?

24           MR. MARCUS:  Your Honor, we don't have a

25   statute of limitations argument on the constructive

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   discharge claim.
 2              THE COURT:  All right.
 3              MR. MARCUS:  Plaintiff is trying to confuse
 4   the two issues, because they bring in Green versus
 5   Brennan; it concerns a constructive discharge only.
 6   And in that case we do understand that that is the
 7   law, so we don't have a statute of limitation
 8   argument on the constructive discharge.
 9              Thank you, Your Honor.
10              THE COURT:  All right.  Let's go ahead
11   then, and do you want to start tackling the merits of
12   the medical examination claim?
13              MR. MARCUS:  Yes, Your Honor.  Should I
14   come to the lectern?
15              THE COURT:  Oh, you bet.  Wherever you want
16   to be.
17              MR. MARCUS:  Thank you, Your Honor.
18              Your Honor, as you're aware, an employer is
19   allowed to require an employee to submit to a medical
20   inquiry, if the medical inquiry is job related and
21   consistent with business necessity.  In this case,
22   the medical inquiry was clearly job related and
23   consistent with business necessity.
24              Plaintiff is, admittedly, a very
25   technically proficient surgeon:  Great hands, great
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    technical know-how.  But he fell short in the area of

2    professionalism.  And this professionalism problem

3    was creating substantial issues with his patients and

4    with nurses and with other members of the medical

5    staff.

6            There is substantial case law, Your Honor,

7    particularly Lanman versus Johnson County Kansas,

8    Tenth Circuit, in which case a person who is acting

9    in a fairly unprofessional manner -- in this case, it

10   was a former deputy sheriff, and the person was

11   acting in sort of an unusual manner, and was creating

12   some issues with her coworkers.  And no one ever

13   assumed that she had a serious psychological problem

14   of any sort, but they required her to have a

15   psychological/psychiatric fitness for duty

16   evaluation.

17           THE COURT:  Well -- and I don't know the

18   law well enough in this area, so you both will have

19   to educate me.  But when you -- let's take the

20   police, because it's one that seems to be apt.  If

21   you require all the police to undergo some

22   psychological examination on a periodic basis or

23   screening at the beginning or something like that,

24   that is certainly job related and consistent with the

25   department's necessity of having sound police

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  officers.  But can they just pick out one police

2  officer and say:  We want you to have it without

3  deeming that person to have a psychological problem?

4  Once they single out a single person and impose that

5  requirement, aren't they implicitly saying that

6  person has a psychological problem that has to be

7  addressed?  I mean, isn't it one thing to do it

8  across the board, and is it another to single out an

9  employee and impose a particular requirement on them?

10          MR. MARCUS:  According to Lanman, the

11  Lanman case, singling out a person for a psychiatric

12  evaluation does not necessarily mean that the

13  employer deems the person or regards the person as

14  disabled.  It says here, "personality conflicts among

15  coworkers, even those expressed through the use or

16  misuse of mental health terminology, generally do not

17  establish a perceived impairment on the part of the

18  employer."

19          Now, plaintiff might argue that several

20  coworkers were joking around that this particular

21  employee was nuts or crazy, but they also require a

22  fitness for duty exam.  And it says, look --

23          THE COURT:  Of just that single employee.

24          MR. MARCUS:  Just that single employee.

25  And the Tenth Circuit noted, "Employers need to be

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                     201 Third NW, Suite 1630
Santa Fe, NM 87501                             Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                                                          1-800-669-9492
                                           e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  able to use reasonable means to ascertain the cause

2  of troubling behavior without exposing themselves to

3  ADA claims.  This is especially true in professions

4  like law enforcement, where employees are responsible

5  for the care and safety of others."  In medicine

6  employees are also responsible for the care and

7  safety of others.  So they can single out a

8  particular person if the person's behavior is

9  troubling and they're trying to correct a

10  professionalism issue, rather than -- and it doesn't

11  necessarily mean that the person has a psychiatric

12  disorder.

13          THE COURT:  All right.  Anything else you

14  want to say on the imposition of the condition?

15          MR. MARCUS:  Well, I think that there is

16  substantial evidence that there was substantial

17  examples of unprofessionalism issues that plaintiff

18  exhibited.  There were approximately 10 patient

19  complaints alleging that Dr. River made disparaging

20  comments about a patient's inability to speak

21  English, and -- or his focus on money and payments,

22  patients, concerns he would not be paid, and anger

23  management issues.  Maybe they didn't have proof,

24  enough proof for each one of them.  But in the

25  aggregate, that's a troubling picture, Your Honor.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    There was a complaint made to the Office of Civil

2    Rights alleging discrimination against the patient

3    who didn't speak English.

4              And then you have the emails that plaintiff

5    sent out to Willie Barela.  These emails clearly show

6    someone who is not behaving properly, essentially.

7    He was using all caps.  Essentially, it was a blame

8    the messenger type of email, where he tells the guy:

9    You're wrong, wrong, wrong, in all caps, merely for

10   forwarding a patient complaint to him, Your Honor.

11   That's all he did.  And in his email he told them,

12   "I'm going to not show up at the general ortho clinic

13   anymore."  There is probably another email he sent to

14   Mr. Barela.  There were several scathing emails.  But

15   in one he said, "I'm not going to show up at the

16   general ortho clinic anymore.  And I'm not going to

17   speak Spanish to people anymore, despite the fact I'm

18   fluent in Spanish, because these patients are the

19   ones that cause me the most trouble."  And that's in

20   an email that's not disputed.

21             And, yes, a patient did come away from

22   interaction with Dr. Rivero thinking that he was

23   being compared to a monkey.  Whether that was Dr.

24   Rivero's intention or not that's -- if a patient

25   comes away from interaction with you thinking that

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                      1-800-669-9492
                                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   the doctor just compared him to a monkey, then the
 2   doctor really needs to work on his skills with
 3   interacting with his patients.
 4          And with all due respect, I mean, Dr.
 5   Rivero did -- he was well known for being a very
 6   skilled surgeon.  No one disputes that.  But what was
 7   UNM to do?  You have someone who is a skilled
 8   surgeon, he's great at doing what he does, this high
 9   level of orthopaedic surgery, and -- but the
10   professionalism is a big problem.
11          And in more recent years, medical
12   accreditation organizations have added a renewed
13   focus on professionalism.  There is no more like,
14   "Surgeons will be surgeons."  You have to learn how
15   to interact better with people.  And there has been
16   sentinel med alerts:  What do you do?  And Dr.
17   Schenck, the chairman of the orthopaedic department,
18   sat down with him, and they suggested counseling
19   sessions.  And then this resulted in an addendum
20   later on, not written by Dr. Schenck, but written by
21   other members, by probably other people at UNM.  But
22   this -- try to have some sort of a psychological
23   evaluation to determine the cause of Dr. Rivero's
24   troubling behavior, just as has been allowed by
25   Lanman versus Johnson County Kansas.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              So this medical inquiry was clearly job
 2     related, consistent with business necessity,
 3     consistent with UNM's continued accreditation,
 4     frankly.  They couldn't bring him back if he
 5     continued to act in this manner.
 6              And they wanted to bring him back, but they
 7     couldn't.  So this was a way of dealing with it.  UNM
 8     attempted to compromise, to set up some way of
 9     dealing with the situation.  Its reward?  Three
10     lawsuits.
11              Thank you, Your Honor.
12              THE COURT:  Thank you, Mr. Marcus.
13              Mr. Norvell, do you want to address the
14     psychological requirement?
15              MR. NORVELL:  Yes, Your Honor.
16              And I'd like to emphasize, as it relates to
17     one of the motions in limine, again -- and I've said
18     this previously at this hearing -- the requirement
19     was a psychiatric examination, and all the
20     implications that come with the admittedly severe
21     implications of a mental disorder.
22              With respect to Mr. Marcus' statements that
23     there were quote/unquote issues with patients and
24     issues with staff that were severe enough to warrant
25     the imposition of a battery of psychiatric
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    examinations, that's just not supported by the

2    evidence.  As I said previously, when you flesh out

3    the complaints that are presented to the Court as a

4    basis for this, they were all unsubstantiated.

5         The reference to the Office of Civil Rights

6    complaint, that had to do with the failure --

7    ultimately it was decided that the failure of UNM to

8    provide translators was the fundamental cause there.

9    Dr. Rivero was not found to be at fault in any way.

10   He did not jeopardize UNM in any way.  A complaint to

11   the Joint Commission which governs credentialing Dr.

12   Rivero was exonerated by his own department chair for

13   the alleged complaint.

14        The interactions with Willie Barela, Willie

15   Barela was a patient advocate.  There are no

16   physician advocates to defend people like Dr. Rivero

17   at UNM.  He had to defend his reputation and his

18   position.

19        Moreover, in order to impose a psychiatric

20   examination for what UNM would characterize as a

21   fitness for duty exam, there has to be a

22   particularized approach, we call it possibly narrowly

23   tailored approach, and a showing that Dr. Rivero was

24   unable to perform his essential job functions.  There

25   has been no showing of that whatsoever.  There has

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                   1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                          e-mail: info@litsupport.com

1   been no evidence presented that accreditation by

2   JCAHO was jeopardized.  There has been no showing

3   that Dr. Rivero did anything but continue to perform

4   at the highest level as an orthopaedic surgeon during

5   the entire period in question.

6          With respect to the interaction that again

7   was brought up with respect to the intravenous drug

8   user, we have presented evidence that a fellow -- a

9   resident on duty signed a letter that said there was

10  no unprofessionalism on Dr. Rivero's part.  So UNM is

11  creating, essentially, an excuse for what was an

12  improper act.  And they know that it was improper, so

13  they have to reconstitute a rationale based on these

14  unsubstantiated complaints.

15         I think I've retreaded a lot of what we've

16  already talked about.  And at the core of it -- I

17  don't know if the Court has had the opportunity to

18  review the addendum itself, which is central to this

19  dispute.  But it is very oppressive.  It is not

20  designed to address the so-called issues of

21  professionalism that UNM is here stating that it is

22  meant to.  It requires waiver of all of his rights.

23  It forces him to submit to these onerous

24  requirements.

25         Additionally, in comparing any of the cases

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that the defendant cites as a basis, looking at the

2    details of those cases is important.  Dr. Rivero has

3    never threatened anyone.  Dr. Rivero has defended

4    himself from false accusations.  Dr. Rivero has not

5    presented any sort of potential violent threat or

6    threat to loss of business.

7           In fact, when asked at deposition, each

8    witness on behalf of UNM:  Did Dr. Rivero present any

9    sort of threat to safety, to you, to others, to

10   anyone?  No, there was never a concern of that.  He

11   continued to operate, without complaint, both at UNM

12   and in Oklahoma, from 2006 on, until his resignation

13   in 2014.  There simply isn't a basis for the notion

14   that professionalism issues gave rise to this.

15          He is singled out.  This fitness for

16   duty -- it's not even a fitness for duty; it's simply

17   an oppressive tool.  And it's illegal under the

18   Rehabilitation Act and the Americans With

19   Disabilities Act.

20          Furthermore, to clarify something that

21   Mr. Marcus referred to:  There has never been

22   clarification on who drafted this addendum.  They

23   admit that it was drafted by UNM, but Dr. Schenck

24   presented it; he was responsible for it.  He was the

25   agent of UNM who was able to make the decision as to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the return of Dr. Rivero.  I believe it was drafted

2   by UNM's legal department creating an insularity that

3   would be difficult to pierce in a litigation context.

4           And I would ask, as a final note, that the

5   Court consider, when looking at this illegal medical

6   inquiry, where is the line drawn with respect to

7   these types of examinations?  It seems to me that UNM

8   would have the Court allow any sort of mental

9   examination, no matter how invasive or onerous, to

10  force employees to submit to whatever employment

11  practices they have.  That's simply not the way the

12  law is designed.  That's not good policy.  And I

13  would ask that the Court consider that, given all of

14  those facts, this illegal medical inquiry was

15  wrongfully presented and creates and presents

16  liability for UNM, is preserved for trial by jury.

17          THE COURT:  Well, let me explore with you

18  what I was exploring with Mr. Marcus.  Let's use the

19  police context.  Would you agree that APD, for

20  example, could take an officer and say:  We've got

21  this many citizen complaints out here.  We want you

22  to submit to psychological examination three or four

23  times a year.  We don't want to have any excessive

24  force cases or lawsuits resulting from your actions.

25  Could they do that without in any way deeming the

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    person or regarding that person as disabled or having

 2    psychological problems?  They simply say:  We're

 3    doing this as a precautionary measure with a single

 4    officer?

 5              MR. NORVELL:  It would depend on the

 6    veracity of those complaints.  You know, doctors,

 7    like police officers, interact with how many people

 8    on a yearly basis, right?  I mean, Dr. Rivero in the

 9    record it's shown that, with his nurse Arisele

10    Martinez, interacted with thousands and thousands of

11    patients over the years.  Similarly, police officers

12    will interact with the public in dozens of

13    interactions per day.

14              It would behoove, and be incumbent upon APD

15    to investigate the veracity of those complaints

16    before presuming that someone is necessarily ripe for

17    some fitness for duty exam, much less some

18    psychiatric examination.  Given the sort of general

19    societal climate of contentiousness between police

20    officers and the public, I think that there would be

21    an even more heightened level of concern and caution

22    before cherry-picking a single officer.

23              In Dr. Rivero's case, there was never an

24    allegation of deterioration of care.  UNM itself has

25    said that Dr. Rivero was a superiorly proficient
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                    e-mail: info@litsupport.com

44

```
 1    physician.  There has been no substandard care that
 2    had been alleged.  And, therefore, there have been no
 3    complaints that have been substantiated.  Therefore,
 4    there is really no basis to present this type of
 5    psychiatric examination.
 6              THE COURT:  Well, if I hear what you're
 7    saying, you're agreeing that APD can do that.  You're
 8    just saying that they have to exercise some care in
 9    how they do it.  But there is nothing wrong, per se,
10    with picking out one police officer and somehow
11    getting to the point of requiring that one police
12    officer to be examined -- psychological examination
13    three or four times a year.  There is nothing per se
14    that keeps them from singling one person out.  They
15    can leave the rest of the officers out of that
16    requirement, that they do it right, single one out.
17              MR. NORVELL:  I'm hesitant to agree with
18    the term "single one out."  I mean, there would have
19    to be a real legal basis, a fundamental basis for it
20    that --
21              THE COURT:  So what, then, is the test?
22    What is the test then for imposing it on one officer
23    and not the other?
24              MR. NORVELL:  The test would be -- in a
25    general sense, Your Honor, I believe it would be a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

45

1   threat to the public, as police officers are servants

2   of the public and interact with the public, and wield

3   some level of real authority and power.  If those

4   actions, upon substantiation, created an

5   unjustifiable threat -- because there is going to be

6   force used by police officers -- if it created an

7   unjustifiable use of force or a direct threat of

8   safety -- and that's in the law, a direct threat of

9   safety -- is what is required to be shown.

10          If there is no showing that the essential

11  job functions are not being met, then you go to

12  whether there is a direct threat to safety of

13  those -- to whom the police officer is being served.

14  And I think you show either he's deteriorating in his

15  ability to serve as an officer or he presents a

16  direct threat.  I think that's written in the law.

17  And it applies across professions.  That's there.

18  But without that substantiation, without that

19  showing, it doesn't get the employer anywhere to

20  simply willy-nilly submit somebody to a four-part

21  battery of psychiatric examinations.

22          THE COURT:  Well, what is the standard here

23  for a doctor?  What is the standard by which we judge

24  whether a condition that's being imposed is job

25  related and consistent with the job?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. NORVELL:  The standard is whether Dr.

2   Rivero has shown indications of the inability to

3   perform essential job functions or presents a direct

4   threat.  The job relatedness is also tenuous because

5   there has been no suffering of job performance.

6   There have been no complaints after 2006.  Remember,

7   this goes on for years, and he operates without any

8   sort of complaints.  Yet, when it comes around that

9   there is an opportunity to increase his full-time

10  employment, UNM points back in time at

11  unsubstantiated complaints.  Here, it's whether he is

12  unable to perform his essential job functions or

13  creates a direct threat.  There is no evidence that

14  shows that either of those have been compromised in

15  any way by Dr. Rivero.

16          THE COURT:  All right.  Anything else you

17  want to say on this job condition, this psychological

18  examination condition, Mr. Norvell?

19          MR. NORVELL:  Again, I would emphasize that

20  the Court consider strongly where the line is drawn

21  with respect to these psychiatric examinations.  An

22  examination of the cases cited by defendant show real

23  physical threats:  The drawing of a gun, the

24  insinuation that someone had a gun -- not the drawing

25  of a gun -- the insinuation of physical threats, the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

1     insinuation of acting aggressively in front of

2     children; you know, those who are unable to perform

3     job duties.

4             That is simply not the case here.  Dr.

5     Rivero has performed without parallel for many years,

6     without complaint, from that time that he asked to

7     return, all the way until he left.

8             So that's all I have, Your Honor.

9             THE COURT:  All right.  Thank you, Mr.

10    Norvell.

11            Mr. Marcus, I'll give you the final word on

12    this psychological examination requirement.

13            MR. MARCUS:  Your Honor, I think it's

14    pretty clear that plaintiff's professionalism was an

15    impediment to his performing part of his job duties,

16    essentially.  For instance, he was refusing to see

17    patients in the general ortho clinic.  And then he

18    said that he wasn't going to speak Spanish to them.

19            Now, if UNM is accused of failure to

20    provide translators for people, when you have a

21    doctor who is known to be fluent in Spanish, and is

22    refusing to speak Spanish, that's not really good for

23    UNM's standing with the Office of Civil Rights.

24            And secondly, the Joint Commission has made

25    it clear, the Joint Commission which provides

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    accreditation for medical institutions, has made it

2    clear that they are focusing on professionalism; that

3    perhaps in the old days, physicians could do --

4    surgeons could do more what they wanted to.  They

5    could be unprofessional, they could be gruff, they

6    could be difficult to deal with.  But now they're

7    putting their foot down.  This is the body that

8    provides UNM Hospital with its accreditation, Your

9    Honor.  And they're saying that we need to do

10   something when people like Dr. Rivero act in certain

11   ways.

12           And his actions were clearly -- I mean, in

13   many ways they overstepped the bounds.  Yes, there is

14   a patient advocate and there is no physician

15   advocate.  But there is a right way and a wrong way

16   for a physician to respond to complaints.

17           Dr. Rivero -- he threatened Mr. Barela's

18   livelihood.  He threatened to report him to his

19   supervisor.  He wrote in all caps in an email, which

20   as you know, is the electronic equivalent of

21   screaming at somebody.  And he overreacted.  He gets

22   one complaint from the general ortho clinic, and

23   says, "I'm not going to talk to the patients in the

24   general ortho clinic anymore."  That's an

25   overreaction and that's an issue that needs to be

SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                  Albuquerque, NM 87102
(505) 989-4949                                                                                  (505) 843-9494
FAX (505) 843-9492                                                                      FAX (505) 843-9492
                                                                                              1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1    dealt with.

2          So I think that he has failed consistently.

3    One portion of his -- maybe he was stellar in all the

4    other areas.  He knows exactly how to operate on

5    somebody.  He's great with his hands, an excellent,

6    excellent surgeon.  But being able to interact with

7    your patients before and after and be able to

8    interact with staff, that's also important.  And if

9    you can't do that, I think that does create a danger,

10   because these are people coming to the hospital with

11   medical issues, serious medical issues that they're

12   trying to get resolved.  And when they're treated

13   poorly by the physician, by the surgeon prior to the

14   surgery, that's -- I mean, that can have an effect on

15   the person's recovery even.

16          And yes, the -- and by the way, the -- and

17   these emails that were sent to Barela, these are

18   completely undisputed.  Plaintiff admits, for

19   instance, that the IV drug user who -- by the way,

20   had been clean for a year prior to this; that he --

21   that this former IV drug user did come away from the

22   interaction thinking he'd been compared to a monkey.

23   This was the email from Mr. Barela.  And instead of

24   trying to deal with it, instead of trying to explain:

25   This is not what I meant, et cetera, he blames the

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                        1-800-669-9492

**BEAN
& ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                      e-mail: info@litsupport.com

1    messenger.

2           So there are some -- this case is clearly

3    indistinguishable from many of the other cases that

4    I've cited.  For instance, in the Lanman case all

5    that happened was that a sheriff's deputy had been

6    transferred, and that she sort of behaved in -- I'll

7    a call it a weird manner.  She kissed someone on the

8    cheek inappropriately; said I'm going to miss working

9    with you, and she basically made some people she

10   worked with uncomfortable.  She never threatened

11   anybody.  She never pulled a gun.  She never

12   insinuated she had a gun.  Yet they required her to

13   take a fitness for duty exam.

14          Similarly, and Owusu -- I'm sorry about

15   butchering the name -- an Eleventh Circuit case --

16   Owusu-Ansah versus the Coca-Cola Company -- you had a

17   guy who, one time, banged his hand on a table and

18   said someone was going to pay, but he didn't specify

19   in any concern about a violent manner, and he had to

20   do a multipart -- the case law clearly implied there

21   was a multipart test, because he had to do Minnesota

22   Multiphasic Personality Inventory, which is only one

23   part of fitness for duty examine, as the case says.

24   And he -- this was someone who worked at a call

25   center at a soda company.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          How much worse is it when you have a
2     surgeon responsible for people's lives showing this
3     type of difficulty with his interactions?  How much
4     worse?  This case is not only -- it's actually worse
5     than Owusu-Ansah and Lanman.  There was actually more
6     justification for fitness for duty evaluation.  It
7     was a pattern of difficulty.  It went back his entire
8     career, but mostly -- it was getting worse in 2006,
9     but plaintiff -- for instance, at one point plaintiff
10    refused to get tested for MRSA.  And this is someone
11    who supposedly is concerned about hospital-acquired
12    infections, yet he, himself, refused to be tested for
13    an infection.
14         So he has a whole history of making things
15    difficult, of having problems with his professional
16    interactions.
17         And finally, yes, it's true UNM had no
18    complaints about him after 2006.  But think about it,
19    he's only been going to UNM to work one day a month.
20    So for all practical purposes, you have to -- maybe
21    he was there seven years after that.  You have to
22    divide that number by 30 to get the effective length
23    of time.  And that's just a couple of months.  And so
24    there was no -- that's not surprising.  Plus, when
25    you're there one day a month, you're not really

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                            1-800-669-9492
                                                                    e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  interacting much with conscious patients.  You're

2  performing surgery, you're assisting other surgeons

3  with the surgeries, or you're working on patients

4  with whom you have a preexisting relationship.

5  You're not taking the lead on surgeries on total

6  strangers.  So there is the big difference -- the

7  fact that he didn't have any complaints after 2007 is

8  irrelevant.

9          Finally, just one final point, if plaintiff

10  believed that he was acting professionally, why did

11  he agree to the four counseling sessions in the first

12  place?  And why did he contact a psychiatrist and set

13  up these counseling sessions?

14          Thank you, Your Honor.

15          THE COURT:  All right.  Do you want to go

16  to constructive discharge?

17          MR. MARCUS:  Yes, Your Honor.

18          Your Honor, plaintiff's claim for

19  constructive discharge is completely without merit,

20  and UNM is entitled to summary judgment as to that

21  claim.  As you know, in order to establish a claim

22  for constructive discharge several prongs must be

23  met, and each one of them has to be met.  The absence

24  of one of them is absolutely fatal to the claim.

25          The first prong is that there has to be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    either a disability or a perception of disability.

2    And there is no evidence that UNM -- well, the

3    plaintiff denies he has a disability, and there is no

4    evidence that UNM perceived him or regarded him as

5    having a disability.  Every year plaintiff's

6    privileges were renewed, with a statement saying that

7    he does not have a disability.

8            And as we discussed earlier, a requirement

9    to take a fitness for duty evaluation does not imply

10   a disability.  It's not -- it doesn't mean that he's

11   regarded to have a disability.  And plaintiff makes

12   no -- provides no other evidence.  You need to have

13   something corroborating that to indicate that UNM

14   perceived him to have a disability.

15           And plaintiff brought up a couple of

16   issues, but none of them support his claim.  First,

17   he claimed that one compromise that Dr. Schenck

18   agreed to was that he would not have to take call.

19   But that does not mean that Dr. Schenck thought he

20   had a disability.  It just meant that he had trouble

21   with one aspect of one job.  And that's not enough

22   for someone to be substantially impaired in the

23   essential life activity of working.  And the creation

24   of an accommodation isn't necessarily an indication

25   that you regard the person as being disabled.  As

SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                         (505) 843-9494
FAX (505) 843-9492                                                               FAX (505) 843-9492
                                                                                      1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                      e-mail: info@litsupport.com

1    Judge Easterbrook put it, "Decent managers try to

2    help employees cope with declining health without

3    knowing or caring whether they fit the definition of

4    some federal statute.  Managers may also respond to

5    state laws, local regulations, collective bargaining

6    agreements, and other norms that go beyond federal

7    law," Your Honor.

8            So the fact that Dr. Schenck was allowing

9    plaintiff to avoid taking call, that's not an

10   indication that they he thought he had disabilities.

11   He was just trying to help him out.  And they were

12   friends, they were friends before this, and he was

13   just trying to help him out, trying to find a way

14   that he could perform surgery in a manner that he had

15   been performing, but full-time, allowed to come back

16   full-time, and not have to -- and maybe avoid some of

17   these professionalism issues.

18           Dr. Schenck was trying to do him a favor.

19   And this is how he's rewarded, Your Honor.

20   Dr. Schenck was being a decent manager, as Judge

21   Easterbrook put it.  By the way, this was the Cigan

22   versus Chippewa Falls School District, Seventh

23   Circuit.  So that's all Dr. Schenck was doing.  He

24   was being a decent manager.

25           And there is no other evidence that UNM

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                           1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    considered the plaintiff to have a disability.  As a

2    matter of fact, as you heard from plaintiff's counsel

3    earlier today, plaintiff claims that he had a

4    personality conflict with another doctor at the

5    hospital, Dr. Pitcher.  And that this personality

6    conflict was the cause of his tension.  Well, Your

7    Honor, which is it?  It is a perception of disability

8    or a personality conflict?  Because if it's a

9    personality conflict, well, there is no -- it's

10   clear, a mere personality conflict does not indicate

11   constructive discharge, Turnwall versus Trust Company

12   of America.  There is no -- there is no evidence that

13   Dr. Pitcher had this -- even if he did have this

14   personality conflict, that he had this personality

15   conflict because he thought that Dr. Rivero was

16   disabled.  There is absolutely no evidence.  And as

17   you know, under Celotex, you need to have -- it's the

18   plaintiff's duty to produce sufficient evidence to

19   survive summary judgment.  And plaintiff hasn't done

20   that.

21          Secondly, there must be action complained

22   of; must have been motivated by a perception of

23   disability.  And there is no evidence of that.  There

24   is no -- as noted, they didn't perceive him to have a

25   disability.  And this was -- plaintiff, supposedly he

SANTA FE OFFICE                                                                              MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                 Albuquerque, NM 87102
(505) 989-4949                                                                                  (505) 843-9494
FAX (505) 843-9492                                                                      FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   was discharged -- which he wasn't, but suppose he

2   was -- it was based on a personality conflict with

3   Dr. Pitcher, as he claimed.  So the motivation wasn't

4   there either.  It was something other than a

5   perception of disability.

6          And finally, and most importantly perhaps,

7   plaintiff was not constructively discharged.  In

8   order to be constructively discharged, the working

9   conditions must be so bad, so horrendous, Your Honor,

10  that the plaintiff can't come in -- a reasonable

11  person would not want to come in to work.

12         And secondly, a constructive discharge

13  cannot solely be based on one discriminatory act.

14  There must be aggravating factors.  That was Bennett

15  versus Quark, which was implicitly overruled on the

16  grounds that -- it's still good law on that issue,

17  Stubbs versus The McDonald's Corporation.  And it's

18  clear that just because an act -- there was a

19  discriminatory act made at one point, doesn't

20  indicate -- that does not lead to a constructive

21  discharge.

22         And so, in this case, plaintiff is basing

23  his constructive discharge solely on this allegedly

24  illegal medical inquiry, and his quote/unquote

25  discovery that there was supposedly no basis for it.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    So that's one -- let's assume that it was an illegal

2    medical inquiry for a second, just for argument's

3    sake.  That's one discriminatory act; that's not a

4    whole pattern.  Plaintiff was coming in to work

5    every -- just one day a month, but he was coming in

6    every month, just like -- I think it was since 2007.

7    And then after the addendum, since 2011, for three

8    years, just kept coming into supposedly intolerable

9    working conditions.  And he kept coming in.  And he

10   admitted in his deposition that nobody did anything

11   inappropriate to him.  And then he gets this

12   affidavit saying, Well -- and in his subjective

13   mind -- and by the way, a constructive discharge

14   claim must be objective.  In his subjective

15   interpretation of these documents he said, Oh, they

16   had no reason for it, no reason for the exam.  So he

17   felt that his working conditions were somehow

18   affected.  But they weren't.  He admitted that no one

19   harassed him on the job, no one made things difficult

20   for him to perform his surgeries.  There was no

21   discharge.  He chose of his own accord to stop coming

22   to UNM, which was his choice.  I mean, it's his life.

23   But I mean, he cannot argue that he was

24   constructively discharged because no one did anything

25   to him, Your Honor, other than this one supposedly

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                          1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                      e-mail: info@litsupport.com

```
 1    illegal medical inquiry.  But one discriminatory act
 2    cannot constitute a constructive discharge.
 3             So UNM is clearly -- UNM is clearly
 4    entitled to summary judgment as to plaintiff's claim
 5    for constructive discharge because he has not met any
 6    of the prongs for a constructive discharge claim.
 7             Thank you, Your Honor.
 8             THE COURT:  All right.  Thank you,
 9    Mr. Marcus.
10             Mr. Norvell, do you want to respond on the
11    constructive discharge claim?
12             MR. NORVELL:  Yes, Your Honor.
13             THE COURT:  Mr. Norvell.
14             MR. NORVELL:  Mr. Marcus is very adamant
15    that one act of discrimination does not constitute
16    grounds for constructive discharge.  I don't believe
17    my reading of the law comports with that directly.  I
18    believe that the case from which he draws that is a
19    little looser than that, saying that generally
20    speaking.  However, that particular case -- and I
21    can't recall which one it was, Your Honor, I
22    apologize -- does not have facts such as the
23    addendum, which is a very severe, very invasive, very
24    broad and per se discriminatory medical inquiry.
25             THE COURT:  But that's your one act that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    you're saying created the hostile environment that

2    constitutes the constructive discharge?

3         MR. NORVELL:  I'm not saying it's the only

4    act.  But I'm saying if it were taken in isolation,

5    that it would give rise to a question as to whether

6    that singular act was severe enough to give rise

7    to -- regarded as status for Dr. Rivero.

8         Defendant admits, again, for the third time

9    in this hearing that the term "psychiatric" implies

10   severe mental impairment.  Their words, not mine.

11   And so, by presenting the psychiatric examination,

12   they're insinuating a severe mental impairment.

13        Couple that with Dr. Schenck's testimony

14   regarding stress; he wanted to reduce the on call, he

15   said, for Dr. Rivero, because stress brought about

16   some disabling factor.  This is a question of fact

17   for the jury:  Did Dr. Schenck truly perceive Dr.

18   Rivero as being disabled due to reaction to stress?

19   Now, mind you, Dr. Schenck does not take into account

20   the stress involved with Dr. Rivero working full-time

21   without complaint at another hospital, and one day a

22   month traveling across state lines to perform his

23   obligations for UNM.

24        Moreover, with those aspects together,

25   coupled with an environment, yes, there was a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    conflict between Dr. Pitcher and Dr. Rivero related

2    to a transfer of a patient in 2003.  That underpinned

3    an environment of hostility, not necessarily as to

4    the legal term of art, but it underpins the intent

5    and later gives ground to the perception of Dr.

6    Rivero having potentially being regarded as disabled.

7         Dr. Schenck -- well, those are the grounds

8    by which we are basing the discriminatory acts.  The

9    constructive discharge, the unbearable working

10   conditions, it's accumulation of several factors

11   related to this perception, is regarded as status of

12   Dr. Rivero as being disabled.  The dispute with

13   Dr. Pitcher laid the groundwork.

14        Dr. Schenck, his attitude and treatment of

15   Dr. Rivero throughout, as evidence presents, was one

16   of flip-flop.  He went from being his friend to being

17   manipulative, creating a very difficult environment,

18   where Dr. Rivero was unable to trust his own

19   supervisor.

20        Then, when he asked -- with legal basis,

21   when he went to review his documents, he was refused

22   access to them.  Dr. Schenck admitted that that was

23   legal, but ultimately he withdrew the addendum,

24   because he felt as though that was an act of

25   aggression, when it was a completely legal act.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            This environment continued to spiral out of

2    control.

3            The ROIA defenses that Mr. Marcus posited

4    earlier, he said, Well, he could have just filed a

5    lawsuit and gotten the documents.  He did file a

6    lawsuit.  It was a mandamus action.  It sought the

7    documents.  They were refused.  The ROIA defense was

8    deemed to be frivolous and without merit by the state

9    court.

10            All of these things created an environment

11   of hostility and viciousness toward Dr. Rivero, until

12   such time as a certification by Dr. Trotter and

13   Dr. Bailey said that there were no -- essentially

14   demonstrated there were no documents underpinning the

15   addendum.  How could he continue to work in an

16   environment like that, where the addendum -- when

17   he's perceived as being -- possessing a severe mental

18   impairment.  Again, defendant's words, not mine.  How

19   could he continue when there is no basis for

20   presenting -- subjecting Dr. Rivero to psychiatric

21   examinations?

22            So that's all I have, Your Honor.

23            THE COURT:  All right.  Thank you, Mr.

24   Norvell.

25            All right.  Mr. Marcus, anything else than

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

62

1    the constructive discharge?

2              MR. MARCUS:  I just have a couple of

3    things, Your Honor.

4              First of all, plaintiff's alleged success

5    in Oklahoma is irrelevant.  We do not know the

6    details of his career in Oklahoma.  So I think that

7    that should not be considered.  We're considering his

8    behavior and what happened to him in New Mexico.

9              Secondly, the mandamus action should not be

10   considered.  That's a subject of a prior pending

11   action.  So there is no -- what UNM did regarding the

12   documents, well, that's being dealt with by the state

13   court, and I don't think it has any relevance.  It

14   certainly wasn't an act of constructive discharge.

15   UNM was simply acting out of abundance of caution.

16   The plaintiff has no evidence they were doing this to

17   try to get him to quit or discharged in any way.

18             Secondly, yes, we did use the word

19   perceived as having a severe mental impairment.  But

20   we said he wasn't perceived as having a severe mental

21   impairment.  Plaintiff's counsel is twisting

22   everything around.

23             We did raise the issue in the motion in

24   limine -- maybe that's what plaintiff's counsel is

25   discussing -- but we're discussing how the word

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                     FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    "psychiatric" -- the connotations of the word

 2    "psychiatric" would be received by the general

 3    public, by a jury; not by people who understand the

 4    issues well, people who are in the business of

 5    psychiatry and psychology.  They're not that

 6    different from each other regarding the evaluations.

 7            So there was no --

 8            THE COURT:  Mr. Marcus, I don't want to

 9    rush this, but I do need to give Ms. Bean a break to

10    rest her fingers.  Can we take about a 15-minute

11    break, and then I'll let you finish up on your

12    motion.

13            MR. MARCUS:  Thank you, Your Honor.

14            THE COURT:  All right.  We'll be in recess

15    about 15 minutes.

16            (The Court stood in recess.)

17            THE COURT:  All right.  Mr. Marcus, do you

18    wish to continue your thoughts on the constructive

19    discharge?

20            MR. MARCUS:  Thank you, Your Honor.

21            Where I left off, I believe that he was

22    saying that Dr. Schenck was -- he claimed that he was

23    manipulative.  Where is the evidence of that?  There

24    is no evidence anywhere.  There is nothing in the

25    briefing that Dr. Schenck was being manipulative.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    There is no evidence of any of that.  The addendum

2    was revoked after he got one -- Dr. Schenck gave him

3    one extension, and then eventually revoked the

4    addendum after he continued to refuse to sign it.

5    And all of that was in 2011.  And the plaintiff

6    stayed -- he stayed in his position for the three

7    years after that, Your Honor.

8            And there is substantial case law that for

9    there to be constructive discharge, there is no

10   statute of limitations argument, because of Green v.

11   Brennan.  But you can't just stay in position for

12   more than a reasonable amount of time, and then claim

13   constructive discharge.  And usually this reasonable

14   amount of time is a month or even less than a month.

15   There is no precedent, Your Honor, for allowing a

16   claim of constructive discharge for somebody who had

17   been where the last quote/unquote act of

18   discrimination took place three years prior to him

19   leaving.  Yet, he continued to show up for work for

20   three years after that.  And admitted that no one did

21   anything inappropriate to him.

22           Plaintiff is simply basing his claim for

23   constructive discharge on this one alleged act, which

24   even if it were improper -- which it's not -- it's

25   clear that Bennett versus Quark, the case law is



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    clear on this, there is no fussiness.  A

2    discriminatory act can be part of an act of a

3    constructive discharge, but it cannot constitute the

4    whole thing.  And plaintiff is essentially basing his

5    one claim of constructive discharge on this one act

6    and his subjective interpretation of that act years

7    after the fact, after he received the documents.  If

8    things were so bad, why did he stay for three years?

9    And then he ended up staying four months after, by

10   the way.  He didn't show up, but he didn't tender his

11   resignation.  He stayed on the payroll for another

12   four months.

13           So there is just no evidence, Your Honor,

14   of any improper act that would be sufficient to

15   constitute a constructive discharge.

16           Thank you, Your Honor.  I have nothing

17   other than that.  Thank you very much.

18           THE COURT:  Let me ask you, on the premise

19   of, I think, the plaintiff's constructive discharge

20   is that, you know, you're labeling him as disabled.

21   You're saying you didn't, because the FTE, the

22   documentation said he was not disabled.  But when you

23   come in and require a psychological exam, aren't you

24   saying a person has a problem?  I mean, to start

25   requiring as part of their job -- and you're saying

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                     FAX (505) 843-9492
                                                                              1-800-669-9492



1    it's a business necessity and it's job related, when

2    you single out this person and say they've got to go

3    to a psychological examination, aren't you in some

4    way saying that person is disabled in a psychological

5    way?

6              MR. MARCUS:  Well, I think you're saying

7    that there is a problem, certainly; I agree with

8    that.  But there is a difference between a problem

9    and a problem that limits or substantially limits a

10   major life activity.  And that's the standard for

11   disabled.

12             THE COURT:  But isn't that a very fine line

13   to draw, the university saying that this is -- this

14   psychological examination is job related, it's a

15   business necessity, and yet say he's not disabled and

16   it's not impacting or impairing life activities?

17   That's a thin line to draw, isn't it?

18             MR. MARCUS:  It may be a fairly thin line,

19   but I think it certainly comes along -- in this case

20   it falls on the side they realize he had a problem

21   with his professionalism, but it's not a limitation

22   of a major life activity.  Because even an inability

23   to do a certain job, that doesn't necessarily mean

24   that you're substantially limited, or limited in the

25   life activity, major life activity of working, Your



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Honor.

2           THE COURT:  All right.  I've chopped up

3    your argument on your motion.  Anything else you want

4    to say on your motion?

5           MR. MARCUS:  I think that's it.  Thank you.

6           THE COURT:  All right.  Mr. Norvell, I've

7    chopped up your arguments on this motion as well.  Do

8    you have anything else you want to say on this

9    motion?

10          MR. NORVELL:  Yes, Your Honor.

11          Are we talking about constructive

12   discharge?

13          THE COURT:  Well, anything on the motion.

14   If you want to talk about constructive discharge.  I

15   just chopped everybody's up to try to get a handle on

16   all the parts of it.  But I want to give you a chance

17   to say anything you want to on this motion, even if

18   it doesn't fit into my questions or scheme.

19          MR. NORVELL:  Sure, I appreciate that, Your

20   Honor.

21          One of the points that I first mentioned,

22   was that UNM would portray Dr. Rivero as a consummate

23   unprofessional, to coin a non word.  But he's a

24   consummate professional.  His colleagues -- record

25   testimony from colleagues he worked with for 15 years

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    plus state that he never acted unprofessionally; that

2    patients loved him and ask for him to this day; that

3    he was a fantastic mentor to -- for example,

4    Dr. Deana Mercer, who is now senior faculty at UNM in

5    this department; that he saw thousands of patients

6    over a 15-year period before he reduced his time, and

7    then continued to see patients who were awake and

8    interactive with him when he was operating on high

9    value surgeries during his one day a month

10   obligations after 2007.

11          There is no allegation of unprofessional

12   behavior prior to an assertion by Dr. Schenck, which

13   was unsubstantiated in 2009.  He's never been sued.

14   He's never been reported to the Medical Board.  If he

15   was such a problem as to warrant a psychiatric

16   examination, why did UNM continue him to allow to

17   operate on anyone?  This one day a month argument,

18   are those patients not as available as those that

19   might be around during the rest of the week?  It just

20   doesn't stand.  His professionalism is consummate.

21          He is -- the arguments that these

22   complaints had merit fails.  They were never

23   investigated.  And they just do not have merit.  I'd

24   also like to point out, and this is in the record,

25   when Dr. Rivero left UNM and reduced his time to .05



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    full-time employment, one day a month, Dr. Schenck

2    didn't want him to go.  His colleagues -- 23 of his

3    colleagues also emphasized they didn't want him to

4    go.  He was highly valued.  And they're purporting --

5    UNM is purporting that this is at the same time that

6    so many complaints were coming in that warranted a

7    psychiatric examination.  It simply does not hold

8    water.

9              Finally, Mr. Marcus' statement that UNM

10   does not know what other hospitals were doing, that's

11   untrue.  Every two years his hospital at which he was

12   working in Oklahoma would provide information as to

13   his status, as to his credentials, to UNM.  And there

14   was nothing, nothing that would give rise to these

15   arguments of unprofessionalism.

16             Emphasize again, the complaints -- certain

17   of the complaints from patients were rebutted in

18   writing by physicians who were present.  So none of

19   these arguments really hold water as to his

20   professionalism.  And I would just like to emphasize

21   that.

22             And finally, on the end of the Green versus

23   Brennan, discrimination aspect of it, I would hope

24   that the Court would review that case one more time.

25   Because constructive discharge stemming from the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                                1-800-669-9492
                    BEAN
                    & ASSOCIATES, Inc.
                    PROFESSIONAL COURT
                    REPORTING SERVICE          e-mail: info@litsupport.com

1   discriminatory act states that the two-step process

2   is no longer one that's to be used, where a case is

3   filed on discrimination, and then amended to include

4   constructive discharge, when constructive discharge

5   is filed the discrimination claim is incorporated.

6   And that plays into the statute of limitations

7   argument.

8           THE COURT:  Is the standard for -- I have

9   less experience with these Rehabilitation Act claims

10  than I do with just standard Title VII claims, which

11  I have many of those.  Is the definition and are the

12  cases the same for constructive discharge?  Is the

13  standard the same for Title VII as it is for

14  rehabilitation claims?

15          MR. NORVELL:  The Title VII claims, Title

16  VII claims differ with respect to exhaustion of

17  administrative remedies, and you'll see that in Green

18  versus Brennan.

19          THE COURT:  Right.

20          MR. NORVELL:  In terms of the general

21  applicability of the standard, it's more -- it's the

22  same.

23          THE COURT:  The standard is the same.  I

24  know that the administrative procedures are

25  different, but --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. NORVELL:  Right.

 2              THE COURT:  All right.  Let me follow up

 3     then.

 4              My impression, though, is that it's got to

 5     be an intolerable situation.  Isn't it difficult to

 6     make that standard when you just have this sort of

 7     single condition that is floating around over three

 8     years, that they're wanting him to have a

 9     psychological examination, but yet he continues to

10     work?

11              MR. NORVELL:  I don't think it's a single

12     condition.  I think there are aggravating

13     circumstances surrounding the presentation of the

14     addendum, the conduct of the administrators with

15     respect to Dr. Rivero's request for documents, their

16     impeding his access, his legal access to his own

17     personnel file, his credentialing file, the

18     obstruction through frivolous litigation, the

19     accusations by Dr. Schenck of unprofessional conduct,

20     the pervasiveness of that throughout UNM, I think,

21     that aggravates the circumstances of the presentation

22     of the psychiatric examinations, and the other

23     elements with respect to Dr. Schenck's belief that

24     stress was hindering Dr. Rivero's performance of his

25     work.  Dr. Rivero's -- the stress of call was
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    creating an impediment to the major life activity of

2    working for UNM.

3              THE COURT:  All right.  Anything else, Mr.

4    Norvell?

5              MR. NORVELL:  No, Your Honor.

6              THE COURT:  Thank you, Mr. Norvell.

7              I'll give you the last word on this motion,

8    Mr. Marcus.

9              MR. MARCUS:  Thank you, Your Honor.

10             A consummate professional doesn't respond

11   to notice of criticism by attacking the messenger.  A

12   consummate professional doesn't threaten this

13   messenger's employment by threatening to report him

14   to his supervisors.  A consummate professional

15   doesn't overreact and say he's not going to speak

16   Spanish anymore to anybody or see patients of a

17   particular clinic, and put it in writing.  A

18   consummate professional doesn't refuse to be tested

19   for antibiotic resistant bacteria.  These are just a

20   few of the issues that UNM had concerns about

21   regarding Dr. Rivero.  And UNM was absolutely correct

22   in requiring the plaintiff as a condition of his

23   increased hours to submit to a psychological

24   evaluation.

25             Secondly, the patients that -- in his

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                    1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

1  deposition Dr. Rivero stated that the patients that

2  he operated on one day a month, he was either

3  assisting another surgeon or patients with whom he

4  had a preexisting relationship, who he got along

5  with.

6          No one disputes that Dr. Rivero didn't have

7  some friends in the department.  But he did some

8  troubling actions, and UNM wanted to figure out what

9  was going on before allowing him to be there

10 full-time.

11         And Green versus Brennan, it continues the

12 idea -- it continues to state the circumstances must

13 be so intolerable that a reasonable person would

14 resign.  And his staying there for three years, it

15 strains credibility, Your Honor.

16         And I don't really see the issue that you

17 can't amend the complaint, that you can't bring a

18 complaint first for an act of discrimination,

19 especially when the constructive discharge is based

20 on the same act of alleged discrimination.  It just

21 appears to me that plaintiff is attempting to use a

22 constructive discharge as an end run around the

23 statute of limitations problem, with his claim for

24 the allegedly illegal medical inquiry.

25         Thank you very much, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

74

```
 1            THE COURT:  All right.  Thank you,
 2    Mr. Marcus.
 3            Well, my impression -- and I alluded to
 4    this earlier -- is that there are a lot of facts
 5    here, and I think most of the facts are the other
 6    side saying they're irrelevant, or they're immaterial
 7    to the issues here.  But my impression of what I've
 8    been able to study is that for the most part there is
 9    not going to be a factual issue that keeps the Court
10    from getting to the legal issues here.  So I'm
11    inclined to think that the facts here are largely
12    undisputed, the genuine issues are largely
13    undisputed.  So we can get to the factual issues.
14            I'm not quite understanding -- on the
15    statute of limitations issue, I'm not seeing in my
16    mind how the production of the records is the
17    operative event for the cause of action under the
18    Rehabilitation Act.  So I probably will be reviewing
19    Judge Lynch's decision.  And even if it was my
20    decision, if I had been on the case at the time, I'd
21    be relooking at it on a summary judgment.  So that's
22    not unusual.  But I'm not quite understanding from
23    what I've read so far why the operative date would be
24    the production of the documents.
25            I don't have much of an inclination on the
```

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492
                                                     1-800-669-9492
                                               e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    merits of the condition claim.  I need to study it.

 2    As I said in my questioning to Mr. Marcus, I'm not

 3    quite certain how the department can require

 4    psychological evaluations and then say he's not

 5    disabled.  Maybe they can.  But I need to look at

 6    that a little bit.

 7            I'm not -- I'm leaving the bench not really

 8    thinking that this is going to rise to constructive

 9    discharge.  But let me give that some thought.  Let

10    me review the facts and make sure that I'm

11    considering them all.  But my impression in the past,

12    when I've dealt with the Title VII actions is it's

13    got to be more severe than what I'm seeing or hearing

14    here.  But I'll try to work on this and get you an

15    opinion out as soon as possible.  So I know this will

16    help with the rest of the things that we have to do

17    to get this case on-track.

18            Talk to me a little bit before we plunge

19    into the remaining motions where this case is.  As

20    some of you may know, I've been doing a little bit

21    differently how -- my case management while I've been

22    in these prison gang cases down in Las Cruces.  I've

23    had two seven-week trials here, the first half of the

24    year, and I'm about to go into another four-week

25    trial.  So for the first time in my career I've been
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

```
1    having the magistrate judges handle my scheduling and
2    discovery matters and things like that.  Is this
3    case, does it have -- well, talk to me about where we
4    are.  Where are we on discovery?  We're here on this
5    motion, this hearing today.  Do we have a pretrial
6    conference set up?  Do we have a trial date?  Where
7    are we on those sort of things?
8             MR. NORVELL:  There is no trial setting,
9    Your Honor.  Discovery is over.  We haven't had a
10   pretrial conference.  The pretrial order was
11   submitted and filed by both parties a couple months
12   ago, I think.
13            THE COURT:  So you're past that?
14            MR. NORVELL:  Yes.
15            THE COURT:  So you need a pretrial
16   conference, then you need a trial date?
17            MR. NORVELL:  Yes.
18            THE COURT:  Now, I want to leave a little
19   bit of time for me to work on these motions,
20   particularly given that I'm going into another
21   four-week trial starting July 9.  What are you
22   thinking of, as far as what would the plaintiff want
23   as far as a pretrial conference date and a trial
24   date?
25            MR. NORVELL:  In terms of when it will at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    occur?

2         THE COURT:  Yes.  That will keep my feet to

3    the fire in getting these opinions out, so that you

4    get your case on-track.

5         MR. NORVELL:  Well, I guess it's dependent

6    upon --

7         THE COURT:  Because, normally, I don't, if

8    I'm handling my own case management, have cases that

9    don't have those two dates.  So this one is a little

10   bit different, in the sense that we don't have those

11   established.  Because I guess this is the first time

12   we've all gotten together on this case, if I'm

13   correct.

14        MR. NORVELL:  That is correct.  We've been

15   in front of Judge Yarbrough a few times.

16        THE COURT:  What have you been in front of

17   him on?

18        MR. NORVELL:  Motions to compel.

19        THE COURT:  Discovery issues?  Okay.

20        MR. NORVELL:  Yes, with respect to trial

21   setting, I think where the parties are -- maybe

22   Mr. Marcus can speak to this as well -- is that we,

23   at the behest of Judge Yarbrough, we've exchanged

24   settlement demands, and we're waiting to see the

25   outcome of this particular motion, this set of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    motions, to determine what's next.  When would trial
 2    be possible?  I would think that, you know, 120 days
 3    after ruling on this.  Is that too far out for Your
 4    Honor, or do you typically have a different standard
 5    after a ruling on a motion for summary judgment, we
 6    proceed to trial?
 7             THE COURT:  Yeah, I usually squeeze time
 8    out more than that.  I guess what I would prefer to
 9    do is keep my feet to the fire, is try to get you a
10    ruling as soon as possible.  But I guess I'd like to
11    leave here this morning setting a pretrial conference
12    and a trial date, so that we're all pushing toward
13    that.  I think -- I don't think cases operate very
14    well if they don't have trial dates.
15             MR. NORVELL:  I would agree with that.
16             THE COURT:  So if that's the case, what
17    would you want as far as a pretrial conference and a
18    trial date?  What timeframe?
19             MR. NORVELL:  Well, if we work backwards
20    from a trial date, perhaps -- where are we now?
21    We're in June.  I'm thinking about my schedule six
22    months out.  That puts us into December or January.
23    Are those viable dates for the Court, or are you
24    crunched up there as well?
25             THE COURT:  I don't know.  It seems like I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    have a large trial later this year, about a

2    three-week trial, but it's a bench trial.  But I

3    can't remember.  I think it's the end of October and

4    early November.  That's the Jemez case.  Is that late

5    October, and then the first two weeks in November.

6    So what would be your preference?  When do you want

7    to try this case?

8                MR. NORVELL:  One moment.  Maybe push

9    toward the end of the year December, or the first

10   part of next year, January.

11               THE COURT:  All right.  Does the trial date

12   of, say, putting it early December work for you,

13   Mr. Marcus?

14               MR. MARCUS:  Let me consult with my

15   calendar here.  Your Honor, end of December would

16   work for us.

17               THE COURT:  Okay.  What are we looking at?

18               THE CLERK:  Looks like you have a case on

19   the 10th.

20               THE COURT:  Is that just my trailing

21   docket?

22               THE CLERK:  It's a criminal case:  Baker,

23   two defendants, Your Honor.

24               THE COURT:  Okay.

25               THE CLERK:  The 3rd is clear, as is the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    17th, Your Honor.

2              THE COURT:  So you're pointing to the 10th,

3    is the one --

4              THE CLERK:  That has a setting.

5              THE COURT:  So I'm thinking about how long

6    the trial would last.  How long do you think the

7    trial would last, Mr. Norvell?

8              MR. NORVELL:  I believe we previously said

9    five days.

10             MR. MARCUS:  It was something along those

11   lines, Your Honor.

12             THE COURT:  Why don't I give you the week

13   of the 3rd then.  We'll set aside the week of the

14   3rd.  And then backing up from that, when do you want

15   the pretrial conference, Mr. Norvell?

16             MR. NORVELL:  What would you recommend,

17   Your Honor?

18             THE COURT:  A couple of weeks before --

19   you've already filed motions in limine, which is a

20   little unusual to have your motions in limine so

21   early, but --

22             MR. NORVELL:  They're not all of them, I'm

23   sure.

24             THE COURT:  Yeah, that probably is the

25   case.

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. NORVELL:  That's Thanksgiving time, so
 2    what's the week before Thanksgiving?  Are you in
 3    trial at that time?
 4              THE CLERK:  Looks like your bench trial,
 5    Judge.
 6              THE COURT:  When does that end?
 7              THE CLERK:  It ends on the 16th of
 8    November.  You have Red Hair on the 19th.
 9              THE COURT:  Is that a trial?
10              THE CLERK:  Yes, Your Honor.  Red Hair
11    versus USA.  It's a civil, that's on the 19th.  I'm
12    guessing the 12th is Veterans Day.
13              THE COURT:  Yeah, probably.
14              THE CLERK:  I don't know about the Red Hair
15    trial, but --
16              THE COURT:  Why don't we do this:  I might
17    have to adjust it, but would the 20th work for you?
18              MR. NORVELL:  Sure.
19              MR. MARCUS:  Your Honor, I think that would
20    work.
21              THE COURT:  All right.  So let's do it at
22    8:30 on November 20.  So I'll set the pretrial
23    conference and also set a trial date.
24              Now, with regards to the motion I just
25    heard, because of the age of that, I'm going to try
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   to get that done by the end of September, because

2   otherwise, it's going to start showing up on my six

3   month list.  So I'm going to be motivated highly to

4   get you a ruling.  It may not constitute a full-blown

5   opinion, but I'll try to get you a ruling by the end

6   of September.  So that's kind of a drop-dead deadline

7   for me.  I hope I can work it in and get you a full

8   opinion before that.  But given I'm about to

9   disappear into a four-week trial, everything is going

10  to get a little harder.

11            THE CLERK:  The start time of the trial?

12            THE COURT:  The jury will be 9:00, but

13  everybody else, all of us will be in at 8:30 to see

14  what we need to discuss before the jury comes in.

15            All right.  Shall we go, then, to the

16  motion in limine to exclude complaints against the

17  plaintiff prior to 2006?  Do you want to take that up

18  next, or is there another one that you want to take

19  up?  I believe you've got a couple of motions here,

20  so I'll let you dictate, Mr. Norvell.

21            MR. NORVELL:  We can do that one first.

22  That's fine.

23            THE COURT:  All right.  We'll do that one

24  then.

25            MR. NORVELL:  These are fairly
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    straightforward I think, and the discussion is pretty

2    clear in the briefing.  Dr. Rivero has moved to

3    exclude complaints prior to 2006.  And certainly

4    complaints that are so remote in time as to go back

5    to 1992, we believe they would be unfairly

6    prejudicial, and do not constitute material facts

7    that would be relevant to a jury.

8              In the motion for summary judgment,

9    defendant lays out a series of facts and discusses

10   incidents prior to 2003.  And then at a certain point

11   says, Well, Dr. Rivero was reformed until there were

12   more complaints that came in.  This seems to be an

13   approach that would -- those older complaints would

14   simply prejudice a jury, try to paint Dr. Rivero in a

15   bad light, to cherry-pick and misrepresent Dr.

16   Rivero's conduct long before the material issues that

17   are in front of the Court with respect to the motion

18   for summary judgment and the merits that are going to

19   be discussed at trial.

20             For example, Dr. Rivero was promoted to

21   professor in 2005.  I would argue that any complaints

22   prior to that are not material because he was

23   promoted to professor without any complaints; that

24   there was no discipline or suspension.

25             Now, the defendant claimed that, Well, Dr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Rivero just went into a 10-year acting job and

2    suddenly reverted to form.  There is no basis for

3    that.  As I've said all day there is no basis for the

4    complaints.  But it's preposterous to claim a 10-year

5    acting job of good behavior, and then suddenly say,

6    Oh, he's misbehaving, and go back in time and say,

7    look, this started way back in 1992.  I think it's

8    pretty straightforward.  We could ask that the Court

9    limit any timeframe in discussion of complaints with

10   respect to Dr. Rivero.

11            THE COURT:  So you're making a 403 argument

12   for a cut-off of 2006?

13            MR. NORVELL:  Yes, Your Honor.

14            THE COURT:  All right.  Thank you, Mr.

15   Norvell.

16            Mr. Marcus.

17            MR. MARCUS:  Your Honor, complaints made

18   against Dr. Rivero -- unprofessional behavior on the

19   part of Dr. River prior to 2006 are highly relevant

20   to this case.  First of all, there was a substantial

21   increase in complaints regarding his lack of

22   professionalism as early as 2003.  So anything that

23   happened in 2006 was a continuation of a pattern that

24   began -- that started ramping itself up again in

25   2003.  So certainly anything after 2003 is relevant.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    It's all part of the same pattern, and part of the

2    same rationale for the addendum.

3              Secondly, plaintiff's behavior prior to,

4    let's say, in the 1990s, puts a whole different spin

5    on his behavior in the 2000s.  I'm not saying it's an

6    acting job.  I don't think I ever used that

7    terminology.  But it certainly makes it seem like his

8    period of relative calm in, like, the early 2000s,

9    maybe late '90s, very early 2000s, was more of an

10   anomaly, in that perhaps he was okay then, but he was

11   reverting back to an earlier lack of professionalism.

12   It certainly is something that a finder of fact can

13   consider in determining whether the addendum was

14   relevant.  So it creates -- it puts a whole

15   different -- whether the addendum was appropriate,

16   whether UNM acted appropriately in issuing it and

17   requiring it as a condition of him staying for --

18   sorry, coming back to work full-time.  He had no

19   problem staying at the .05 FTE before coming back.

20             Also, perhaps most importantly, it's not so

21   much what he did in the 1990s, in 1993, 1994, it's

22   how he responded to it when he was questioned about

23   it.  He didn't say, Look, I made some mistakes in the

24   past.  I wasn't so experienced.  I needed to improve

25   my professionalism over the years.  I needed to work

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   on this.  He didn't say that.

2           For instance, there was on issue in 1993,

3   in which he -- there was a letter stating that he

4   unleashed a 10-minute barrage of extreme obscenities

5   to residents.  And he said, Well, that's just locker

6   room talk.  He didn't try to say that he was working

7   on things.  He has no remorse whatsoever.  And lack

8   of remorse, I think, is a major issue in this case.

9   He's showing no intent to improve himself or improve

10  his professionalism.

11          The other issue was that he refused to be

12  tested for MRSA, methicillin resistent staph

13  infections.  He said, Well, they were going to put

14  something up my nose.  He was really offended by

15  that.  In his deposition, in 2017, he said, "I don't

16  want to do that.  There is no reason for me to do

17  that.  It's an invasion of my privacy," in front of

18  the residents.  No, can't do that.  Never mind the

19  fact that resistant infections kill tens of thousands

20  of people in hospitals every single year.  Yet he

21  stood by his decision, rather than say, I made a

22  mistake.  He refuses to admit that he made a mistake.

23  And that is where I think the evidence is most

24  relevant.  Thank you, Your Honor.

25          THE COURT:  All right.  Thank you, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Marcus.

2             Anything else on that motion you want to

3    say, Mr. Norvell?

4             MR. NORVELL:  Real quickly, Your Honor.

5             THE COURT:  Certainly.

6             MR. NORVELL:  The gap in time in UNM's

7    statement of facts in the motion for summary judgment

8    is between 1994 and 2003.  Where is there a pattern

9    when there is a decade of nothing whatsoever?

10            Additionally, the two incidents that

11   Mr. Marcus cited to, again cherry-picked and framed

12   in way that would most benefit UNM and shed the worst

13   light possible on Dr. Rivero, the barrage of

14   obscenities.  That was a disagreement in which two

15   employees certainly admittedly swore at one another.

16   And on the record Dr. Rivero stated, "Yes, we did,

17   but we understood it, and we're friends.  We became

18   friends.  We are good friends to this day."

19            With respect to the refusal to take the

20   MRSA test, the individual administering that

21   interfered with Dr. Rivero's clinical rounds.  In

22   addition, Dr. Rivero has no pattern of MRSA

23   infection.  They barged in, interfered with his work.

24   He had no pattern of MRSA infections, and had a low

25   infection rate overall.  Because Dr. Rivero refused

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                     (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                                                   1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                  e-mail: info@litsupport.com

88

```
1    that, later it was shown that, well, because he has
2    no pattern, we don't need to test him.  He rightfully
3    refused.  If someone were to barge into the courtroom
4    today and attempt to test Your Honor for MRSA, it
5    would seem to be improper.  His reaction to that, I
6    think, was justifiable.
7            These incidents are nonsensical to be
8    brought up from the early '90s.  With respect to the
9    others, it is dubious as to their value prior to
10   2006, which seems to be the time at issue in this
11   case.  And, therefore, anything prior to that would
12   create confusion, undue prejudice, and those other
13   elements in 403.
14           THE COURT:  All right.  Thank you, Mr.
15   Norvell.
16           At the present time, I'm not inclined to
17   keep complaints out.  It seems to me that it would
18   probably be the best for the jury to have a robust
19   record, and y'all explain it to the jury rather than
20   me sort of putting my thumb on the scale and keeping
21   it out.  The defendant's story is that it's this long
22   history of complaints that caused them to do what
23   they did.  And I think for me to chop it up would not
24   necessarily be fair to them.  So I think I'll
25   certainly give it some more thought, and review some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    of the exhibits to make sure I understand all the
 2    complaints.  But at the present time, I'm not
 3    inclined to grant this motion and limit the evidence
 4    that the defendant can put on.
 5          All right.  So the next motion is for
 6    summary judgment as to certain of the defendant's
 7    affirmative defenses.  Mr. Norvell, do you want to
 8    speak to that motion?
 9          MR. NORVELL:  Do we want to tackle the
10    other motion?
11          THE COURT:  You can.  Which one do you want
12    to pick up next?
13          MR. NORVELL:  The use of the term
14    psychological instead of psychiatric.
15          THE COURT:  Okay.
16          MR. NORVELL:  Again, a pretty
17    straightforward piece.  Dr. Rivero would ask that the
18    Court limit and restrict the use of the word
19    psychological in reference to the type of examination
20    that's at issue in this case.  The connotative
21    implications of psychological attempt to mollify the
22    actual facts of this case, which are that UNM
23    presented a psychiatric exam.  Psychiatric differs in
24    connotation from psychological.  It is the word that
25    is used 15 times in the addendum.  There is no use of
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    the term psychological.  Psychiatric, as defendants

 2    admit, gives rise to the implication of a severe

 3    mental disorder.  They wrote the addendum.  They

 4    should stick to what they chose as the wording for

 5    it, and the type of exam.  They're essentially

 6    saying, Well, it's more neutral, therefore, it would

 7    benefit us and represent more of our intent.  Well,

 8    the intent is in the words that were chosen to be

 9    placed in the addendum.  That word was psychiatric,

10    not psychological.  To mollify it is to create

11    confusion and undue influence on the jury when

12    considering the severity and the starkness of the

13    addendum with respect to Dr. Rivero's reaction, and

14    the illegality of the inquiry under the

15    Rehabilitation Act.

16             That's all I have, Your Honor.

17             THE COURT:  All right.  Thank you, Mr.

18    Norvell.

19             Mr. Marcus.

20             MR. MARCUS:  Thank you, Your Honor.

21             The terms psychology and psychiatry in the

22    clinical sense are fairly interchangeable.

23    Psychologists can do almost everything that

24    psychiatrists can do, except prescribe drugs.  And

25    there is no evidence in the -- so there is no
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    evidence in the addendum that UNM thought that the

2    plaintiff needed to start taking medications.  So in

3    terms of psychology versus psychiatry, there is very

4    little distinction in the clinical sense -- sorry, as

5    far as the term of art as it's understood by people

6    in the mental health area.  Psychiatry, psychology,

7    they're very similar.  The main difference is

8    psychiatrists have a medical degree.  That's really

9    the only difference.

10           However, in the connotative sense for lay

11   people, for most of the potential jurors, psychiatry

12   has an extremely powerful connotation that it

13   indicates a severe condition.  This isn't necessarily

14   what it means in the clinical sense.  But among the

15   general public it means a severe condition.  And I

16   think that -- I would argue that UNM has the right to

17   use a more neutral term, if it so chooses to use the

18   term psychology, which has a more neutral

19   connotation.  UNM has the right to use a more neutral

20   term to try to avoid having a jury reach a decision

21   based solely on emotion.  That's the main purpose of

22   403, prevent a jury from reaching a decision just

23   based on emotion.  And UNM's attempt to use a more

24   neutral term like psychology is clearly an attempt to

25   avoid that, to get the jury to think about it in a



SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                        1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

92

1    more reasonable manner.

2            Thank you very much.  That's all I have to

3    say.

4            THE COURT:  Well, is there any evidence

5    that's going to be presented that the department

6    wanted Dr. Rivero to undergo any psychological tests?

7    I mean, the wording of the addendum was a psychiatric

8    evaluation; correct?

9            MR. MARCUS:  Yes.  But it was to be done by

10   a board certified psychiatrist.  But I think UNM -- I

11   don't think there was any real intent behind that,

12   that he needed to have being administered drugs, or

13   anything.  I think it was a board certification

14   psychiatrist that may be more stringent than a

15   psychologist.

16           THE COURT:  It seems to me that if there is

17   no evidence that the defendant was wanting him to

18   undergo psychological evaluation -- if there is some

19   evidence of that, then it seems to me I shouldn't be

20   precluding its use.  But it seems to me that for

21   the -- to allow the university to talk about a

22   psychological evaluation, if there is no evidence of

23   that, would be introducing an issue that could be

24   misleading.  If all the evidence is that they were

25   demanding that he have a psychiatric evaluation,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    seems to me that's what we ought to be talking about.
 2              MR. MARCUS:  Well, but a psychological
 3    evaluation is basically -- they're very similar,
 4    personality test.  But this sort of test can be
 5    conducted by a psychologist or a psychiatrist.  And
 6    UNM chose to have him talk to a psychiatrist.  But
 7    those personality evaluations can be done by either.
 8              THE COURT:  Well, all right.  Thank you,
 9    Mr. Marcus.
10              Mr. Norvell.
11              MR. NORVELL:  Thank you, Your Honor.
12              Your Honor, the addendum does not specify a
13    personality test or anything like that.  It's
14    psychiatric examination by a board certified
15    psychiatrist.  Board certified psychiatrist is
16    necessarily an M.D. or a D.O.  And Dr. Rivero was
17    required to accept the psychiatrist of their choosing
18    and accept the treatment recommendations without
19    complaint.  And part and parcel of it is by changing
20    the wording, it changes the actual meaning of the
21    document itself.
22              How would Dr. Rivero have perceived this
23    document, which is really -- how would anyone
24    objectively perceive this document?  It doesn't say
25    psychological, and there is no implication anywhere
```

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                  201 Third NW, Suite 1630
Santa Fe, NM 87501                          Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                          FAX (505) 843-9492
                                                  1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1    in the record that psychological evaluations would be

2    used, personality tests, anything like that.   There

3    is no specification of a type of exam.   It is a

4    psychiatric or part psychiatric evaluation.

5              THE COURT:   All right.   Thank you, Mr.

6    Norvell.

7              Well, it seems to me that for the defendant

8    to start characterizing the psychiatric evaluation as

9    a psychological exam is a bit argumentative.   I'm not

10   going to preclude the defendant from arguing that, if

11   they want to argue it and explain it to the jury.

12             But I do think that defendant shouldn't in

13   questioning, opening arguments, and things like that,

14   use that word psychological, and replace psychiatric

15   with the word psychological evaluation.   So I think

16   that, at least in openings, and in questioning before

17   the jury we should be using the word "psychiatric."

18             If you want to have a witness explain what

19   you just explained to me, Mr. Marcus, that there is

20   not a great deal of difference, if you want to

21   explain the testing and those sort of things, and

22   explain that it's no different than psychological

23   testing, a psychologist could have done it; the

24   university chose a psychiatrist, I think that's all

25   fair game.   And I think, then, in closing arguments

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                      1-800-669-9492



```
 1    you can call it what you want; that you were really
 2    requiring no more than a psychological evaluation.
 3    But I think that it is a bit argumentative, and it's
 4    not squarely in the facts, given that it looks to me
 5    like the university was requiring a psychiatric.  So
 6    when you use that word, I'll consider it to be
 7    argumentative, and you'll need to use it there.  But
 8    you are the free to explain to the jury, and in
 9    opening.  If you're going to explain it to the jury
10    you can to explain what the evidence will show.
11              Is that sufficiently clear to everybody
12    what I'm requiring there?
13              MR. NORVELL:  Yes, Your Honor.
14              MR. MARCUS:  Yes, Your Honor.
15              THE COURT:  I'll take a look at it, but
16    that's what I'm inclined to rule on that one.
17              All right.  Now, we want to take up your
18    affirmative defense motion, Mr. Norvell?
19              MR. NORVELL:  Yes, Your Honor.  Part and
20    parcel of the motion to strike affirmative defenses
21    relate to the statute of limitations defense.  I
22    think we've discussed that narrowly substantially,
23    so --
24              THE COURT:  You think I can probably rule
25    on that portion of your motion at the same time I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

96

1    rule on the other, and just put those in the same

2    opinion?

3             MR. NORVELL:  Because they constitute

4    essentially cross-motions.

5             THE COURT:  Okay.  All right.

6             MR. NORVELL:  Let's see, I don't want to

7    belabor too much of these particular motions, and

8    more or less stand on the briefing.

9             Perhaps there is some confusion between the

10   defendant and I as to affirmative defenses 1 and 3 as

11   they apply to constructive discharge.  Essentially,

12   the argument is that -- of defense is that plaintiff

13   failed to state a claim with respect to constructive

14   discharge.  And going back to the motion, the claims

15   are barred by the Doctrine of Laches and Waiver.

16   Now, defenses 1, 2, and 3, I applied them generally

17   to the statute of limitations argument.  But also

18   there is the constructive discharge application that

19   the defendant has stated.  While there has been no

20   claim for constructive discharge and they're barred

21   by the Doctrine of Laches and Waiver, my position is

22   that there has been no evidence to show that, and

23   that the motion to dismiss stage, in fact, you know,

24   did say that a claim was adequately stated for

25   constructive discharge.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1          Now, Judge Lynch cited the burden of proof

2     and the level of that burden at that time.  But

3     nonetheless, it never came down.

4          With respect to the statute of limitations

5     and to the constructive discharge claim, I would like

6     to assert that affirmative defense 1 is void and

7     should be stricken.  And with affirmative defense 3

8     plaintiff's claims are barred by the Doctrine of

9     Laches and Waiver.  There is really no evidence or

10    sound argument with respect to that.  So I would ask

11    that the Court consider striking that defense as it

12    applies to constructive discharge.

13         Moving to defense 13, "At all times UNM

14    acted in accordance with its policies and regulations

15    and applied such policies and regulations

16    consistently and fairly."  Dr. Rivero moves to strike

17    that defense because UNM stated that it had no set

18    policy with regard to the administration of the

19    addendum or psychiatric evaluations.

20         They provided a boatload of policies, but

21    they had none that were applied by any administrator

22    with respect to the addendum, and no witness could

23    testify to actually referring to or applying those

24    policies.  And, therefore, I would ask that that

25    defense be stricken.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              With respect to defense 4, "Defendant UNM
2    fulfilled any and all obligations it had to plaintiff
3    under contract or statute."  UNM simply had stated
4    that it would supplement that particular defense and
5    cited to other defenses above.  In my opinion, that's
6    inadequate.  That doesn't fulfill the requirements of
7    giving a fair sense of how that defense applies.
8    And, therefore, I ask that it be stricken.
9              I think defense 15 is off the table because
10   that's really a mere statement of a reservation of
11   right to amend the complaint or to amend the answer
12   to the complaint.  Therefore, it's not really a
13   defense, and I would ask it be stricken as well.
14             I believe that's all I have.  Anything I've
15   missed in the briefing, those are more or less
16   perfunctory things that Mr. Marcus and I have agreed
17   upon, and probably memorialized in the briefing
18   itself.
19             So that's all I've got, Your Honor.
20             THE COURT:  All right.  Thank you, Mr.
21   Norvell.
22             Mr. Marcus -- let me ask Mr. Norvell one
23   question, and I'll be asking Mr. Marcus the same
24   question.
25             MR. NORVELL:  Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  You've got a separate set of

2     facts to start your motion.  And I'll be trying to

3     see if I can get an agreement from the parties here.

4     Can I use all the facts and everything that's alleged

5     in your motion for summary judgment?  Can I just

6     build one statement of the facts for -- and then rule

7     on both motions?  Do you have any objection to that?

8     Sometimes people want to assume certain facts for

9     certain motions, and they don't want to assume for

10     others.  But here I'm not hearing or seeing anything

11     like that.  Do you see any problem with me using all

12     the facts and record that you've submitted with your

13     motion, and just decide the two together, create one

14     sort of statement of facts?

15          MR. NORVELL:  I think I was pretty careful

16     about not making any assumptions or inconsistencies

17     wrongfully with respect to the facts, especially with

18     regard to the statute of limitations argument, which

19     again, you know, it's in the briefing.  I've argued

20     every point that's in my motion, because I

21     incorporate that into my defense, statute of

22     limitations.  I don't believe there are any

23     inconsistencies with my factual statements in this

24     set of briefing versus my response to motion for

25     summary judgment.  So I would not have any issue with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    incorporating all sets of facts.

 2            THE COURT:  So the answer is yes, you think

 3    I can just take the facts from both sets of briefing?

 4            MR. NORVELL:  I apologize for not being

 5    concise, but yeah, that's correct.

 6            THE COURT:  No, that's fine.  I wasn't sure

 7    my question was even clear.  But I think you

 8    understand it.  All right.  Thank you, Mr. Norvell.

 9            Mr. Marcus.

10            MR. MARCUS:  Your Honor, so if I'm

11    understanding you correctly, you're talking about

12    combining both of our facts?

13            THE COURT:  What do you think?  Do you see

14    any problem about that?

15            MR. NORVELL:  No, not if you're going to

16    put everyone's facts, both sides together.

17            THE COURT:  Then just issue an opinion on

18    this -- these two motions for summary judgment at the

19    same time.  Do you see any problem with that?

20            MR. MARCUS:  No, I don't think so.

21            Thank you, Your Honor.

22            All the affirmative defenses except for

23    number 15, which that was just a reservation of

24    rights, so there is no reason -- we don't have any

25    reason for it not to be stricken.  But affirmative

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    defense 1, for instance, that plaintiff has failed to

2    state a claim, we would argue that, at least as far

3    as the constructive discharge is concerned, there

4    were no facts in the complaint that did support a

5    claim for constructive discharge, as we had discussed

6    earlier; that you can't base a claim for constructive

7    discharge on one action.  And the complaint didn't

8    list any sort of harassment or any type of other

9    ground for constructive discharge.

10           So I would still -- we are maintaining our

11   argument that plaintiff did not state a claim for

12   constructive discharge.

13           As far as statute of limitations are

14   concerned, that was covered in our briefing, and I

15   think that was adequately argued and discussed.

16           Regarding the laches and waiver claim,

17   that's similar to my argument about -- UNM's argument

18   regarding the constructive discharge claim, that

19   plaintiff stayed at UNM for three years after he

20   was -- after he received the addendum.  One day a

21   month -- he continued to come to UNM one day a month.

22   No one gave him any problems.  He continued to come

23   and to show up and work under these supposedly

24   intolerable working conditions.

25           And the case law bears this out, at some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    point you are waiving your rights.  You can't just

2    stay in a job indefinitely and then claim

3    constructive discharge.  If conditions are so

4    terrible, you should leave right away.  So that's the

5    basis of our waiver and laches claim.  It's just

6    similar to our argument regarding the constructive

7    discharge.

8           Regarding number 13, is that -- yeah, UNM

9    did act in accordance with policies and regulations.

10   There is no set policy that if a person does this,

11   this, this, and this, the person should be subjected

12   to a psychiatric evaluation.  There is no way you can

13   do that.  You can't do a once size fits all.  This

14   type of thing has to be on a case-by-case basis.  And

15   plaintiff is aware of a number of instances -- we

16   redacted names, but number of instances where other

17   employees have been required to have some sort of

18   psychological or psychiatric evaluation.

19          And UNM has substantial policies regarding

20   professionalism.  And these policies say the highest

21   level of professionalism must be maintained.

22          UNM also has policies regarding disability

23   discrimination.  And UNM acted in accordance with

24   those policies from the beginning, during all

25   relevant times regarding Dr. Rivero.  And plaintiff

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   has not cited any evidence to the contrary, that UNM

2   violated its own policies.

3          Finally, affirmative defense number 14,

4   that's simply that UNM fulfilled any and all

5   obligations it had to plaintiff under contract or

6   statute.  Well, it certainly fulfilled all

7   obligations it had to plaintiff under contract.  The

8   contract was only -- plaintiff left voluntarily in

9   2007, and agreed to come back for one day a month,

10  and that's what his contract said.  UNM wasn't

11  required to raise his full-time equivalent, because

12  under the contract the contract only provided for

13  .05.  The plaintiff was asking for a new contract

14  essentially.  So UNM was in complete compliance with

15  the contract.

16         And as far as statute, the statute is

17  concerned, the relevant statute is the Rehabilitation

18  Act.  And our other affirmative defenses were that,

19  Look, plaintiff, the medical exam, the medical exam,

20  the medical inquiry, the psychiatric evaluation, that

21  that was justified by business necessity and was job

22  related.  And, therefore -- and once the inquiry is

23  justified by business necessity and is job related,

24  then UNM has fulfilled all obligations it had to

25  plaintiff under the Rehabilitation Act.  So that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    affirmative defense certainly has substantial

2    evidence behind it as well.

3              Anyway, I think that's it for the

4    affirmative defenses that plaintiff wishes to be

5    stricken.

6              Thank you very much, Your Honor.

7              THE COURT:  All right.  Thank you,

8    Mr. Marcus.

9              Mr. Norvell, I'll give you the last word on

10   this motion.

11             MR. NORVELL:  Thank you.

12             As to affirmative defense 1, you know, that

13   was failing to state a claim.  It was handled at the

14   motion to dismiss stage.  The defense on the merits

15   is not covered by that particular Rule 12(b)(6)

16   defense.

17             Laches and waiver was also handled by the

18   motion to dismiss.  So I would ask that the Court

19   review and see that the Court overcame that at that

20   stage.

21             As to defense 13, policies and regulations,

22   Dr. Schenck at deposition admitted that he did not

23   apply any policy in presenting the addendum to Dr.

24   Rivero.  There is no evidence of an application of

25   policies.  There is evidence of the existence of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    policies, but not the application of policies.  And

2    that's the issue at hand here.

3            As to defense 14, I don't really have

4    anything additional to add to it, other than a simple

5    reference to other defenses defeats the purpose of

6    fairness with respect to what Dr. Rivero would seek

7    to litigate going forward.

8            Thank you, Your Honor.

9            THE COURT:  All right.  Thank you, Mr.

10   Norvell.

11           Well, I don't have a lot of thoughts on

12   what to do with this.  I am concerned about the

13   statute of limitations issue, so I'm leaving the

14   bench inclined to think that that may present some

15   problems for the condition portion of the plaintiff's

16   claim.

17           And it's very difficult to state a

18   constructive discharge claim, so I may not merge

19   these two motions.  I may just pick up the summary

20   judgment and try to get a ruling on that.  Because,

21   obviously, if I grant the defendant's motion for

22   summary judgment, then a lot of this other is going

23   to be mooted out.  And I do think that right at the

24   moment, the defendant's motion on those two aspects,

25   I'm inclined to think that they should be granted.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    But I have a lot to work to do to try to master the

2    facts before I make a definitive ruling on that.  But

3    those are my inclinations in leaving the bench.

4              MR. NORVELL:  Your Honor?

5              THE COURT:  Yes.

6              MR. NORVELL:  If I may, I would ask that

7    the Court -- because for the sake of efficiency, I

8    incorporated my statute of limitations argument from

9    my motion into my response.  So again, I just want to

10   emphasize, don't forget that they're both there.

11             THE COURT:  Okay.  I will.

12             All right.  Is there anything else we need

13   to discuss while we're together?  Anything else I can

14   do for you?

15             I am, like I said, going to try to get at

16   least a ruling in your hands by the end of September

17   on all these motions.  So I'll try to work that in

18   before the end of September.  You may not get full

19   opinions for a little bit, but I'll try to even do

20   that.  That's my timeframe.  And then, by the time I

21   see y'all again, I should have all my work done.

22             Anything else we need to discuss while

23   we're together?  Anything else I can do for you, Mr.

24   Norvell?

25             MR. NORVELL:  No.  My client would just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  like to emphasize the criticality of the access to

2  the credentialing file as part and parcel of

3  verifying the claim that would give rise to the

4  discrimination claim.

5           THE COURT:  Okay.

6           MR. NORVELL:  Additionally, there is a

7  retaliation claim hanging out there that was not

8  briefed, that I think still exists.  So --

9           THE COURT:  So you think there is another

10  claim out there?

11           MR. NORVELL:  Right.  It was in the

12  complaint.  I made a two-sentence argument that

13  simply was not -- there was no motion by defendant to

14  strike it.  It's still in the complaint.  There was a

15  retaliation claim and, therefore, it should remain

16  within the case itself.

17           THE COURT:  Okay.  All right.

18           MR. MARCUS:  Your Honor, I don't want to

19  belabor this, but I was operating under the way the

20  complaint was -- the structure of the complaint by

21  Judge Lynch, where he divided into two portions

22  appealing the illegal medical inquiry and the

23  constructive discharge.  And there was no notice

24  provided to us regarding the retaliation claim.

25  Plaintiff seems to have pulled that out of thin air

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    in his response to the motion for summary judgment.

2              And, secondly, even if the complaint were

3    interpreted to contain a retaliation claim, that

4    would be clearly time-barred because the likely

5    retaliation, which was the addendum took place April

6    2011, more than five years before plaintiff brought

7    the lawsuit.

8              THE COURT:  What does the pretrial order

9    say?  Does it say that you have a retaliation claim,

10   or is it silent on that?  What do you have on that?

11             MR. NORVELL:  I think it's in dispute.  I

12   think you're seeing a recitation of what's actually

13   in the pretrial order.  I placed it in there.  And

14   Mr. Marcus disputes --

15             THE COURT:  Is there an exception to the

16   pretrial orders?  Y'all went out there with a dispute

17   about what claims are in the case?

18             MR. NORVELL:  It's pending determination by

19   the Court, pursuant to these motions.

20             THE COURT:  Okay.

21             MR. NORVELL:  It's not under the exceptions

22   heading.  It's incorporated within it.

23             THE COURT:  But the pretrial order -- well,

24   the motions today don't deal with the retaliation

25   claim; is that fair to say from both sides?

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                        1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

1          MR. NORVELL:  Except to the extent that I

2    assert that there is one still out there, that's in

3    our brief.

4          MR. MARCUS:  He asserted it in his

5    response, Your Honor.  And we responded and got no

6    reply.  It is mentioned in the brief.

7          THE COURT:  Remind me what you said in your

8    reply.

9          MR. MARCUS:  In the reply I said that Judge

10   Lynch's analysis of the complaint did not include a

11   retaliation claim.  He divided it into two causes of

12   action, and UNM very reasonably operated using that

13   structure.  So we didn't feel the need to put it in

14   the motion.  However, let's assume there was a

15   retaliation claim.  It was very obviously

16   time-barred, because it was more than five years

17   prior to the statute of limitations for that as well.

18         THE COURT:  All right.  Anything else we

19   need to discuss?

20         MR. NORVELL:  Well, my client would like me

21   to once more emphasize the file itself.  And if there

22   had been actual information that supported the basis

23   for the addendum, then how does that relate to the

24   statute of limitations?  It likely -- he needed to

25   know what was there in order to file this claim, you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    know, if there was negative information that would
 2    have supported the psychiatric exam.  So I'm simply
 3    emphasizing that on his behalf.
 4                And I appreciate the Court's time.
 5                THE COURT:  All right.  Thank you, Mr.
 6    Norvell.
 7                Anything further, Mr. Marcus?
 8                MR. MARCUS:  Nothing further, Your Honor.
 9                THE COURT:  All right.  I appreciate
10    y'all's presentations and hard work this morning.
11    I'll try to get some opinions and orders out to you.
12    Y'all have a good day.
13                (The Court stood in recess.)
14
15
16
17
18
19
20
21
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

111

```
1                      C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on July 5, 2018.

15

16

17

18        _____
          Jennifer Bean, FAPR, RMR-RDR-CCR
19        Certified Realtime Reporter
          United States Court Reporter
20        NM CCR #94
          333 Lomas, Northwest
21        Albuquerque, New Mexico 87102
          Phone:  (505) 348-2283
22        Fax:    (505) 843-9492

23

24

25
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com